**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| **RICHARD MARSHALL,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **CIVIL ACTION NO. 2:06-cv-701-ID-CSC** |
| | ) |
| **CHRIS WEST, in his individual capacity,** | ) |
| **LASHUN HUTSON, in his individual** | ) |
| **capacity,** | ) |
| | ) |
| **Defendants.** | ) |

**BRIEF IN SUPPORT OF DEFENDANTS CHRIS WEST AND LASHUN HUTSON'S**
**MOTION TO DISMISS**

COME NOW Lowndes County, Alabama, Sheriff's Deputies Chris West and Lashun Hutson, the Defendants in the above-referenced matter, and submit this brief in support of their Motion to Dismiss filed simultaneously herewith.

**INTRODUCTION**

The Plaintiff Richard Marshall filed his Complaint on August 8, 2006, against Defendants Deputies Chris West and Lashun Hutson alleging violations of his First, Fourth, and Fourteenth Amendment rights to the Constitution of the United States. (See Plaintiff's Complaint, ¶¶ 1, 4, 5, 44, 48, and p. 8 (a)). In Count I of the Plaintiff's Complaint, he alleges that the Defendants subjected him to an unreasonable search of his vehicle, that the Defendants subjected him to excessive force, that he was falsely arrested, and that the Defendants instituted a criminal proceeding against him without probable cause. (Id. at ¶¶ 45, 49, 50, 52, 53, and 54.) The Plaintiff bases his excessive force claims on the Deputies hitting his vehicle as he attempted to elude them, as well as, Deputy West's "warning shot." (Id. at ¶¶ 49 and 50.) The Complaint also includes two counts raising state law claims, (1) Assault and Battery and (2) Conversion. (Id. ¶¶ 57-64.) The Plaintiff seeks a "declaratory judgment that the policies and practices

complained of herein are unlawful and violative of the Fourth and Fourteenth Amendments to

the United States Constitution, as addressed by and through 42 USCA § 1983." (Id. p. 8 (a.)).

The Plaintiff also seeks compensatory and punitive damages, costs, including attorneys' fees,

and equitable relief.  (Id. p. 8 (b-e.))

## ARGUMENT

**I.      DEPUTIES CHRIS WEST AND LASHUN HUTSON ARE ENTITLED TO HAVE THE PLAINTIFF'S § 1983 CLAIMS AGAINST THEM DISMISSED.**

The Plaintiff has failed to state a claim against Deputies West and Hutson in their

individual capacities for two reasons.  First, the Plaintiff's Complaint fails to meet the Eleventh

Circuit's heightened pleading requirement for § 1983 cases involving qualified immunity.  Second,

even if the Plaintiff's Complaint could be construed as meeting the heightened pleading

requirement, Deputies West and Hutson are entitled to qualified immunity because the Plaintiff has

failed to allege a violation of his constitutional rights and has not alleged a violation of clearly

established law.

### A.      THE PLAINTIFF'S COMPLAINT FAILS TO MEET THE ELEVENTH CIRCUIT'S HEIGHTENED PLEADING REQUIREMENT.

The Plaintiff's individual capacity claims against Deputies West and Hutson are due to be

dismissed as the Complaint, on its face, does not meet the Eleventh Circuit's pleading standard for

§ 1983 cases involving qualified immunity.  A plaintiff's pleading standard is "heightened" when

claims are made against government officials in their individual capacities.  See GJR Inv., Inc. v.

County of Escambia, 132 F.3d 1359, 1367 (11th Cir. 1998) ("Accordingly, when reviewing a

district court's disposition of a motion to dismiss a § 1983 claim on qualified immunity grounds,

we are guided both by the regular 12(b)(6) standard and by the heightened pleading

requirement.").  The Plaintiff's Complaint contains little more than conclusory allegations that

cannot survive a motion to dismiss.  See Aquatherm Indus., Inc. v. Fla. Power & Light Co., 145

F.3d 1258, 1261 (11th Cir. 1998) (affirming dismissal and approving the district court's

reasoning that "vague, conclusory allegations are insufficient to state a claim upon which relief

can be granted").

> The Eleventh Circuit pointed out in GJR Inv., Inc. v. County of Escambia, that:
>
> [W]hile Fed. R. Civ. P. 8 allows a plaintiff considerable leeway in framing its
> complaint, this circuit, along with others, has tightened the application of Rule 8
> with respect to § 1983 cases in an effort to weed out nonmeritorious claims,
> requiring that a § 1983 plaintiff allege with some specificity the facts which make
> out its claim.  See Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th
> Cir. 1992) (citing Arnold v. Bd. of Educ., 880 F.2d 305, 309 (11th Cir. 1989)).
> Some factual detail is necessary to the adjudication of § 1983 claims.  This is
> particularly true in cases involving qualified immunity, where we must determine
> whether a defendant's actions violated a clearly established right.

132 F.3d at 1367.  The Plaintiff carries the burden of showing that the federal rights allegedly

violated were clearly established through specific factual pleadings.  See Mitchell v. Forsyth, 472

U.S. 511, 528 (1985).

The Eleventh Circuit has made it clear that it continues to apply a higher pleading

standard for § 1983 cases involving qualified immunity.  Maldonado v. Snead, 168 Fed. Appx.

373, *6 (11th Cir. Feb. 25, 2006) (applying heightened pleading standard to action where

defendant asserted qualified immunity as a defense); Washington v. Bauer, 149 Fed. Appx. 867,

871 (11th Cir. Sep. 2, 2005); Dalrymple v. Reno, 334 F.3d 991, 996 (11th Cir. 2003) ("In

examining the factual allegations of the complaint, we must keep in mind the heightened

pleading requirements for civil rights cases, especially those involving the defense of qualified

immunity."); Cottone v. Jenne, 326 F.3d 1352, 1362, n.7 (11th Cir. 2003) (same); Gonzalez v.

Reno, 325 F.3d 1228, 1235 (11th Cir. 2003) (same); Laurie v. Ala. Ct. of Crim. App., 256 F.3d

1266, 1275-76 (11th Cir. 2003); Omar ex rel. Cannon v. Lindsey, 334 F.3d 1246, 1250 (11th Cir.

2003).  In Gonzalez, the Eleventh Circuit explained:

> In examining the factual allegations in the complaint, we must keep in mind the heightened pleading requirements for civil rights cases, especially those involving the defense of qualified immunity.  GJR Inv., Inc. v. County of Escambia, 132 F.3d 1359, 1367 (11th Cir. 1998).  The complaint must allege the relevant facts "with some specificity."  Id.  "[M]ore than mere conclusory notice pleading is required. . . .  [A] complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory."  Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984).  See also Veney v. Hogan, 70 F.3d 917, 922 (6th Cir. 1995) (holding that complaint must "include the specific, non-conclusory allegations of fact that will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity").  Moreover, in reviewing a motion to dismiss, we need only accept "well-pleaded facts" and "reasonable inferences drawn from those facts."  Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992).  "[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal."  Marsh v. Butler County, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001).

325 F.3d at 1235.  Accordingly, it is abundantly evident that a higher pleading standard is alive

and well in Eleventh Circuit qualified immunity jurisprudence.

The Plaintiff has made numerous legal conclusions throughout his Complaint while only

sporadically providing a few factual allegations in an attempt to support these conclusions.

Specifically, the Plaintiff's Complaint fails to sufficiently allege facts regarding the following:

- whether the Defendants had reasonable suspicion supporting a Terry[1] stop;

- whether the Plaintiff knew that Deputies West and Hutson were law enforcement officers;

- whether Deputies West and Hutson had any badges or other law enforcement insignia on their persons or vehicle;

- what parts of the Plaintiff's vehicle were searched;

---

[1] Terry v. Ohio, 392 U.S. 1, 22 (1968).

- whether the Plaintiff had committed the crimes of possession of a controlled substance and carrying a pistol without a license and whether Deputies West and Hutson were aware of that he had committed these crimes;

- whether there was a firearm or other weapon in the car, in plain view or otherwise;

- who arrested the Plaintiff and transported him to the Jail;

- who actually charged the Plaintiff with possession of controlled substances and carrying a pistol without a license;

- who was responsible for not returning the alleged $400.00 the Plaintiff was missing; and

- whether the vehicles were traveling over 35 miles per hour at the time the PIT was executed.

Without these key facts, it is impossible to determine whether the Defendants are entitled to qualified immunity. The doctrine of qualified immunity, designed to avoid the burden of litigation—not just monetary liability—does not allow the Plaintiff to avoid factual specificity in his Complaint just to get to discovery. Mitchell, 472 U.S. at 526. For purposes of the heightened pleading standard, the Plaintiff is required to plead facts within his knowledge and control that bear on the question of qualified immunity. See Williams v. Ala. State Univ., 865 F. Supp. 789, 799 (M.D. Ala. 1994) rev'd on other grounds 102 F.3d 1179 (11th Cir. 1997). Because the Plaintiff has failed to allege with a sufficient degree of particularity or specificity the acts or omissions of Deputies West and Hutson directly affecting him and because the Plaintiff has left out crucial facts within his possession that factor heavily into Defendants Deputies West

and Hutson's entitlement to qualified immunity, the Plaintiff's Complaint is due to be dismissed. Mitchell, 472 U.S. at 528.

### B.   DEPUTIES CHRIS WEST AND LASHUN HUTSON ARE ENTITLED TO QUALIFIED IMMUNITY FROM THE PLAINTIFF'S § 1983 CLAIMS SET FORTH IN COUNT I OF THE PLAINTIFF'S COMPLAINT.

Even if it could be construed as conforming to the Eleventh Circuit's pleading requirements, the Plaintiff's Complaint, on its face, demonstrates that Deputies West and Hutson are entitled to qualified immunity.  Qualified immunity is a protection designed to allow government officials to avoid the expense and disruption of trial.  Ansley v. Heinrich, 925 F.2d 1339, 1345 (11th Cir. 1991). Qualified immunity will be denied to an official only when "[t]he contours of the right [violated are] sufficiently clear that a reasonable official would understand that what he is doing violates that right."  U.S. v. Lanier, 520 U.S. 259, 270 (1997).  In the light of pre-existing law, the unlawfulness must be apparent.  Anderson v. Creighton, 483 U.S. 635, 640 (1987).  The official is entitled to "fair warning" that his conduct would deprive a person of a constitutional right.  Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).

It is clear from the face of the Complaint that Deputies West and Hutson were acting within their discretionary authority as Deputy Sheriffs during all times relevant to Plaintiff's Complaint.  (See Doc. 1, Plaintiff's Complaint, ¶¶ 4-5.)   All actions complained of in the Complaint are law enforcement activities, and law enforcement activities are "a legitimate job-related function" of Deputy Sheriffs.  See, e.g. Holloman ex rel Holloman v. Harland, 370 F.3d 1252, 1267 (11th Cir. 2004).  Once a defendant has asserted the defense of qualified immunity, the threshold inquiry a court must undertake is whether the plaintiff's allegations, if true, establish a constitutional violation.  Saucier v. Katz, 533 U.S. 194, 201 (2001) (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)).  In other words, do the facts as alleged in the Plaintiff's Complaint show

6

that Deputies West and Hutson's conduct violated a constitutional right?  The second inquiry is, if a constitutional violation is stated, was the right "clearly established" to the degree that Deputies West and Hutson had "fair warning" that their conduct violated the Plaintiff's constitutional rights?

"Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."  See Mitchell, 472 U.S. at 526.  The burden is on the Plaintiff to show that Deputies West and Hutson violated clearly established law.  Id.  As the Eleventh Circuit has held:

> Qualified immunity is a doctrine that focuses on the actual, on the specific, on the details of concrete cases.  The most common error we encounter, as a reviewing court, occurs on this point: courts must not permit plaintiffs to discharge their burden by referring to general rules and to the violation of abstract 'rights.'

Lassiter v. Ala. A&M Univ. Bd. of Trustees, 28 F.3d 1146, 1149-50 (11th Cir. 1994) (en banc).

### 1.    Deputies West and Hutson are entitled to qualified immunity on the Plaintiff's Fourth Amendment claims.

The doctrine of qualified immunity applies in full force to Fourth Amendment claims. Although the word "reasonable" appears in both the context of the qualified immunity test and in the substantive command of the Fourth Amendment, the word serves different purposes and has different meanings in each.  In the Fourth Amendment, it defines the boundary of lawful police conduct; but in qualified immunity, it defines the somewhat broader zone of conduct an officer might have, based on pre-existing law, reasonably believed to be lawful.   Where a law enforcement officer makes a reasonable although mistaken judgment regarding the lawfulness of a search under the Fourth Amendment, the Court held, he should "no more be held personally liable in damages than should officials making analogous determinations in other areas of law." Anderson, 483 U.S. at 643-644.

Anderson makes it clear that, as in other types of cases, the question of qualified immunity in Fourth Amendment cases is distinct from whether there has been a constitutional violation at all.  To decide the constitutional question, this Court must apply its best understanding of current law to determine whether, at bottom, the search or seizure was "unreasonable" within the meaning of the Fourth Amendment.  See U.S. Const. amend. IV; Ohio v. Robinette, 519 U.S. 33, 39 (1996) ("We have long held that the 'touchstone of the Fourth Amendment is reasonableness.'") (quoting Florida v. Jimeno, 500 U.S. 248, 250 (1991)).  The Fourth Amendment reasonableness determination establishes the boundaries of lawful conduct; it represents an assessment of the official action that society is willing to tolerate as constitutionally acceptable.  In contrast, the question for qualified immunity purposes is not Fourth Amendment reasonableness or the legality of the officer's conduct vel non.

The qualified immunity determination thus does not represent a judgment regarding the conduct society is prepared to recognize as constitutionally permissible.  Rather, it represents a judgment that, although the conduct is unconstitutional, the officer should not be held personally liable because the law did not make the illegality of his conduct "obvious" or "apparent" at the time he acted.  See Hunter, 502 U.S. at 227 ("qualified immunity shields agents . . . if 'a reasonable officer could have believed [the seizure] to be lawful, in light of clearly established law and the information the arresting officers possessed.'"); Anderson, 483 U.S. at 641 (officers should be immune where they "reasonably but mistakenly conclude" that the search was lawful).  As the Court explained in Harlow, an officer is entitled to immunity unless any reasonably competent official would "fairly be said to 'know' that the law forbade [the] conduct" in question.  457 U.S. at 818.

8

Finally, in cases where qualified immunity is at issue and where probable cause would otherwise be required, it is only necessary that the officers have "arguable probable cause." As the Eleventh Circuit explained in Montoute v. Carr, 114 F.3d 181, 184 (11th Cir. 1997):

> [T]he question of whether qualified immunity should be held to exist turns upon whether there was "arguable" probable cause, as opposed to probable cause in fact. The standard for arguable probable cause is whether a reasonable officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well-established law.

In light of the allegations of the Plaintiff's Complaint, the Defendants are entitled to qualified immunity on the Plaintiff's claims brought pursuant to 42 U.S.C. § 1983.

### a. The Plaintiff has not sufficiently alleged a violation of his Fourth Amendment rights.

The Plaintiff alleges that the Defendants violated his Fourth Amendment rights in four ways: (1) the Defendants unreasonably searched his vehicle; (2) the Defendants subjected him to excessive force; (3) the Defendants falsely arrested him; and (4) the Defendants instituted a criminal proceeding against him without probable cause. (Id. at ¶¶ 45, 49, 50, 52, 53, and 54.)

### i. The Plaintiff has failed to sufficiently allege that Deputies West and Hutson subjected him to an unreasonable search of his vehicle.

The Plaintiff in Count I alleges that the Defendants searched his vehicle without a warrant, probable cause, or exigent circumstances. (Doc. 1, Plaintiff's Complaint, ¶¶ 45 and 52.) However, the allegations in the Complaint are insufficient to overcome the qualified immunity defense because the alleged search was lawful based on three reasons: (1) The search was a search incident to a lawful arrest; (2) The allegations of the Complaint show that probable cause existed despite the Plaintiff's conclusory statement that no probable cause existed. See Marsh, 268 F.3d at 1036 n.16 (11th Cir. 2001). "[U]nsupported conclusions of law or of mixed fact and

law have long been recognized not to prevent a Rule 12(b)(6) dismissal."); and (3) The search

was lawful based on the Deputies' reasonable belief that the Plaintiff was "dangerous . . . and

may gain immediate control of weapons." <u>Michigan v. Long</u>, 463 U.S. 1032, 1049 (1983).

**(1)    The search was a search incident to a lawful arrest.**

> The Fourth Amendment's guarantee against unreasonable searches and seizures
> encompasses the right to be free from arrest without probable cause.  Probable
> cause is "defined in terms of facts and circumstances sufficient to warrant a
> prudent man in believing that the suspect had committed or was committing an
> offense."

> The issue here, however, is not whether probable cause existed but instead
> whether there was arguable probable cause.  Qualified immunity applies when
> there was arguable probable cause for an arrest even if actual probable cause did
> not exist.  ("Arguable probable cause, not the higher standard of actual probable
> cause, governs the qualified immunity inquiry.").  Arguable probable cause exists
> if, under all of the facts and circumstances, an officer reasonably could—not
> necessarily would—have believed that probable cause was present.  ("Arguable
> probable cause exists when an officer reasonably could have believed that
> probable cause existed, in light of the information the officer possessed."

<u>Crosby v. Monroe County</u>, 394 F.3d 1328, 1332-33 (11th Cir. 2004) (internal citations omitted).

The Plaintiff's Complaint establishes that the Plaintiff was lawfully arrested.  The

Plaintiff alleges that he refused to pull his vehicle over after twice being signaled by a law

enforcement officer to do so.  (Doc. 1, Plaintiff's Complaint, ¶¶ 15 and 19.)

> Any driver of a motor vehicle who willfully fails or refuses to bring his vehicle to a
> stop, or who otherwise flees or attempts to elude a pursuing police vehicle, when
> given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a
> misdemeanor.  The signal given by the police officer may be by hand, voice,
> emergency light or siren.

Ala. Code § 32-5A-193(a) (1975); <u>see also</u> <u>Glass v. Abbo</u>, 284 F. Supp. 2d 700, 706 (E.D. Mich.

2003) (holding there was "probable cause to arrest [the plaintiff] for failing to stop upon a police

signal").

The United States Supreme Court has held that the Fourth Amendment does not forbid law enforcement officers from a executing a warrantless arrest for a misdemeanor.  See Atwater v. City of Lago Vista, 532 U.S. 318, 323 (2001) ("The question is whether the Fourth Amendment forbids a warrantless arrest for a minor criminal offense, such as a misdemeanor seatbelt violation punishable only by a fine.  We hold that it does not.")  Therefore, as the Complaint on its face establishes that the Plaintiff was guilty of a misdemeanor, based on United States Supreme Court precedent, the arrest was lawful.  The United States Supreme Court has also held:  "[W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." New York v. Belton, 453 U.S. 454, 460 (1981) (footnote omitted).  Accordingly, the search of the Plaintiff's car was lawful as a search incident to arrest.

### (2)    The search was based on, at least, arguable probable cause.

"[A] warrantless search of a car is valid if based on probable cause."  Ornelas v. U.S., 517 U.S. 690, (1996); Crosby, 394 F.3d at 1332-33 (internal citations omitted).  ("Arguable probable cause, not the higher standard of actual probable cause, governs the qualified immunity inquiry."); U.S. v. Snowden, 735 F.2d 1310, 1315 (11th Cir. 1984) ("[T]he justification for a warrantless search of an automobile 'does not vanish once the car has been immobilized.'").  "One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects."  United States v. Wright, 588 F.2d 189 (5th Cir. 1979).

In the instant case, it is clear that the Defendants had, at least, arguable probable cause to search the Plaintiff's vehicle.  The Plaintiff had attempted to evade the Deputies – (Doc. 1,

Plaintiff's Complaint, ¶¶ 17 and 20) - and had refused orders of the deputies to get on the ground – (Doc. 1, Plaintiff's Complaint, ¶26), - so it was objectively reasonable for the deputies to believe that the automobile contained evidence of a crime.  Colorado v. Bannister, 449 U.S. 1, 3 (1980) (holding exception to warrant requirement exists when "when an automobile or other vehicle is stopped and the police have probable cause to believe it contains evidence of a crime."); Ray v. U.S., 206 F.2d 796, 797-99 (10th Cir. 1953) (stating that where suspects fled in the automobile and then ultimately abandoned their automobile for pursuit on foot, the search of the vehicle was constitutional and "[t]he flight of the defendant was an additional factor which may be considered to determine if there was probable cause for the search and seizure.") Because the search of the vehicle was, at least, based on arguable probable cause, the Defendants are entitled to qualified immunity.

> **(3)    The search was lawful based on the Deputies' reasonable belief that the Plaintiff was "dangerous . . . and may gain immediate control of weapons."[2]**

"[T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant'" the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons."  Michigan, 463 U.S. at 1049.  Considering the allegations that the Plaintiff had attempted to evade the deputies – (Doc. 1, Plaintiff's Complaint, ¶¶ 16, 17 and 20) - and had refused orders of the deputies to get on the ground – (Doc. 1, Plaintiff's Complaint, ¶26) -,  there was a reasonable inference that the

---

[2] Michigan, 463 U.S. at 1049.

Plaintiff was dangerous and may gain immediate control of weapons.  Therefore, the Defendants

are entitled to qualified immunity.

> ii.    **Plaintiff has failed to sufficiently allege that Deputies West and Hutson subjected him to excessive force.**

The Plaintiff alleges that the Defendants subjected him to excessive force in two ways:

(1) "by smashing into the vehicle he was driving;" and (2) "by [Deputy West's] aiming a weapon

at him and discharging it [sic] weapon in his general direction and in his immediate vicinity."

(Doc. 1, Plaintiff's Complaint, ¶¶ 49 and 50.)

> "The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest."  A court looks to the "totality of circumstances" to determine whether the manner of arrest was reasonable.  "[I]n determining if force was reasonable, courts must examine (1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted."  It is well settled that the right to make an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."

Draper v. Reynolds, 369 F.3d 1270, 1277-78 (11th Cir. 2004) (citations omitted) (footnote

omitted).  "Indeed, 'the *typical* arrest involves some force and injury,' and the use of force is an

expected, necessary part of a law enforcement officer's task of subduing and securing individuals

suspected of committing crimes."   Lee v. Ferraro, 284 F.3d 1188, 1200 (11th Cir. 2002)

(citations omitted); see also Ala. Code § 13A-3-27(a)(1) (1975):

> A peace officer is justified in using that degree of physical force which he reasonably believes to be necessary, upon a person in order . . . To make an arrest for a misdemeanor, violation or violation of a criminal ordinance, or to prevent the escape from custody of a person arrested for a misdemeanor . . .
> The actions of the officers must be reasonable in light of the facts and circumstances

confronting the officer, without regard to his underlying intent or motivation.   Graham v.

Connor, 490 U.S. 386, 397 (1989).  "The 'reasonableness' of a particular use of force must be

judged from the perspective of a reasonable officer on the scene, rather than with the 20/20

vision of hindsight." Graham, 490 U.S. at 396. "The calculus of reasonableness must embody

allowance for the fact that police officers are often forced to make split-second judgments—in

circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is

necessary in a particular situation." Id. at 396-97.

> In making an excessive force inquiry, we are not to view the matter as judges
> from the comfort and safety of our chambers, fearful of nothing more threatening
> than the occasional paper cut as we read a cold record accounting of what turned
> out to be the facts, we must see the situation through the eyes of the officer on the
> scene who is hampered by incomplete information and forced to make a split-
> second decision between action and inaction in circumstances where inaction
> could prove fatal.

Crosby v. Monroe Co., 394 F.3d 1328, 1334-35 (11th Cir. 2004), citing Graham, 490 U.S. at

396-97.

The Fourth Amendment provides individuals the right to be free from the use of

excessive force during an arrest. Durruthy v. Pastor, 351 F. 3d 1080, 1093 (11th Cir. 2003). The

proper inquiry then becomes "'whether the officer's conduct [was] objectively reasonable in

light of the facts confronting the officer.'" Id. (quoting Vinyard, 311 F.3d 1340, 1347 (11th Cir.

2002)). The Eleventh Circuit "recognize[s] that the typical arrest involves some force and

injury." Rodriguez v. Farrell, 280 F.3d 1341, 1351 (11th Cir. 2002). In evaluating the force

used in such circumstances, courts look at "the severity of the crime at issue, whether the suspect

pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively

resisting arrest or attempting to evade arrest by flight." Durruthy, 351 F.3d at 1094 (internal

quotations and citation omitted). "Some use of force by a police officer when making a custodial

arrest is necessary and altogether lawful, regardless of the severity of the alleged offense . . ."

Durruthy, 351 F. 3d at 1080; see also Graham, 490 U.S. at 396 (1989) (The right to make an

arrest carries with it the right to use some degree of physical coercion or threat thereof to effect it.).

### (1)    The vehicular force was reasonable.

The Plaintiff alleges that use of a "PIT" maneuver is considered deadly force at speeds of 35 miles per hour or more.  (Doc. 1, Plaintiff's Complaint, ¶ 23.)  However, there is no allegation that either vehicle was traveling 35 miles per hour or over.  (See, generally, Doc. 1, Plaintiff's Complaint.)  Therefore, the Complaint does not establish any use of deadly force.  See McCartor v. City of Kent, 2005 WL 2600421, *8 (W.D. Wash. October 12, 2005) (holding that use of PIT was not deadly force).[3]  The Plaintiff admits that he was fleeing and that he did not comply with Deputies West and Hutson's orders.[4]  (Doc. 1, Plaintiff's Complaint, ¶¶ 16, 17, 20, 26 & 27.)  Therefore, the Plaintiff was posing an immediate threat to the safety of the Deputies and others.  See Durruthy, 351 F.3d at 1094.  Further, it is clear that the Plaintiff was "attempting to evade arrest by flight."  See Id.  Therefore, based on the facts as set forth in Durruthy, the Defendants were justified in using force to effectuate a lawful arrest.  See McCartor, 2005 WL at *9 (stating that use of a PIT maneuver to prevent a pursuit in an area where no pedestrians were present was an objectively reasonable use of force).

### (2)    The "warning shot" was reasonable.

"The Fourth Amendment does not require officers to use the least intrusive or even less intrusive alternatives in search and seizure cases.  The only test is whether what the police officers actually did was reasonable."  Menuel v. City of Atlanta, 25 F.3d 990, 995-97 (11th Cir. 1994).  The "warning shot" in this case was clearly reasonable in light of the circumstances

---

[3] Further, the Court in McCartor referred to PIT use at speeds of less than *40* miles per hour.  2005 WL at *8

[4] There is no allegation that the Plaintiff did not know that the Deputies were, in fact, law enforcement officers or that there were no badges or other law enforcement insignia present on their persons or vehicle.  (See, generally, Doc. 1, Plaintiff's Complaint.)

alleged in the Plaintiff's Complaint. After leading Deputies West and Hutson on a chase, the Plaintiff failed to get on ground after being ordered to do so. (Doc. 1, Plaintiff's Complaint, ¶¶ 16, 17, 20, 26 & 27.) The Plaintiff alleges that the shot was a warning shot and does not plead that Defendant West intended to harm him. (Doc. 1, Plaintiff's Complaint, ¶ 26.) According to the relevant case law, a true warning shot in this situation is constitutional and was not deadly force as asserted by the Plaintiff. See Bell v. City of Milwaukee, 746 F.2d 1205, 1279 (7th Cir. 1984), *overruled on other grounds* (affirming jury verdict in favor of defendant officers where warning shots were fired after officers' orders were ignored and the shots were "truly warning shots."); Otey v. Marshall, 121 F.3d 1150, 1156 (8th Cir. 1997) (noting that the officer's "use of warning shots simply did not violate anyone's constitutional rights"); O'Neal v. Ellison, 15 F.3d 1088 (9th Cir. 1994) (affirming summary judgment for corrections officer who fired warning shot); Garcia v. U.S., 826 F.2d 806, 811 (9th Cir. 1987) ("A warning shot itself is not deadly force.").

Furthermore, the "warning shot" clearly falls into the category of "de minimus" force. [The] application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." Durruthy, 351 F. 3d at 1080.

In Durruthy, the Eleventh Circuit held that the officer's force in effecting the arrest of Plaintiff, even if unnecessary, was not unlawful. The Court pointed out that it had found that force was lawful in cases where the force used was far more than that used by the defendant in that case. See Durruthy, at 351 F.3d. at 1094:

> ("In fact, the quantum of force used here was far less than our Court has sustained in other contexts. See Nolin v. Isbell, 207 F.3d 1253, 1255 (11th Cir.2000) (finding force to be de minimus where an officer grabbed the plaintiff "from behind by the shoulder and wrist, threw him against a van three or four feet away, kneed him in the back and pushed his head into the side of the van, searched his

16

> groin area in an uncomfortable manner, and handcuffed him"); <u>see also</u> <u>Jones v. City of Dothan</u>, 121 F.3d 1456, 1460 (11th Cir.1997) (finding the force used to be minor where officers slammed the plaintiff against a wall, kicked his legs apart, required him to put his arms above his head, and pulled his wallet from his pants pocket).")

<u>Id.</u>; <u>see also</u> <u>Post v. City of Ft. Lauderdale</u>, 7 F.3d 1552, 1556 (11th Cir. 1993) (finding force lawful where officer "spun [plaintiff] around, placed him against a display case, applied a choke hold, and handcuffed him" and, after handcuffing him, pushed him against a wall).

Based on Eleventh Circuit precedent, in the present case, the absence of *any* physical injury, and the negligible force used, all compel the conclusion that any force used was de minimus. In fact, the Plaintiff cannot show that any excessive force was used. As a result, these Defendants did not violate the Plaintiff's constitutional rights. Furthermore, the Plaintiff cannot show a violation of clearly established law, and the Defendants are accordingly entitled to qualified immunity.

### iii. The Plaintiff has failed to sufficiently allege that Deputies West and Hutson falsely arrested him.

The lawfulness of the Plaintiff's arrest is addressed in Section I(B)(1)(a)(i) above. Therefore, the Defendants hereby adopt and incorporate as if fully set forth herein the arguments contained in that section. Further, the Plaintiff did not sufficiently allege that either Deputy West or Hutson actually arrested him. He stated in his Complaint that he "was transported to the Lowndes County Jail in a deputy's car." (Doc. 1, Plaintiff's Complaint ¶ 33.) However, the Plaintiff never alleged who handcuffed him and transported him to jail. (See, generally, Doc. 1, Plaintiff's Complaint.) Accordingly, the Plaintiff's false arrest claim is due to be dismissed.

### iv.    The Plaintiff has failed to sufficiently allege that Deputies West and Hutson maliciously prosecuted him.

> To establish a federal malicious prosecution claim under § 1983, the plaintiff must prove a violation of his Fourth Amendment right to be free from unreasonable *seizures* in addition to the elements of the common law tort of malicious prosecution.  As to the constituent elements of the common law tort of malicious prosecution, this Court has looked to both federal and state law and determined how those elements have historically developed.   For example, in Uboh, this Court examined both federal law and Georgia law and indicated that, for purposes of a § 1983 malicious prosecution claim, the constituent elements of the common law tort of malicious prosecution included: (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused.  We note that these are also the same elements required under Alabama law for the tort of malicious prosecution.

Wood v. Kesler, 323 F.3d 872, 881 (11th Cir. 2003). (internal citations omitted).  As set forth above, the Plaintiff has not alleged "a violation of his Fourth Amendment right to be free from unreasonable *seizures*."   Id.   Neither has the Plaintiff sufficiently alleged that "a criminal prosecution was instituted or continued" *by Defendants West and Hutson* "with malice or without [arguable] probable cause."   Wood, 323 F.3d at 881; Urbanique Production v. City of Montgomery, 428 F. Supp. 2d 1193 (M.D. Ala. 2006) (holding that finding of arguable probable cause is sufficient to defeat a malicious prosecution claim based on the defense of qualified immunity).

As a matter of law, these law enforcement Defendants do not have the duty or power to prosecute violations of the Alabama Criminal Code.  Alabama law states clearly that the power to prosecute violations of the Criminal Code rests with the district attorney and his assistants.  Ala. Code 1975, § 12-17-84.  The duty of Alabama sheriffs and deputy sheriffs is limited, in this regard, to "ferret out crime [and] to apprehend and arrest criminals . . . ."  Ala. Code 1975, § 36-22-3(4) (1991 replacement volume).  In addition, in Barts v. Joyner, 865 F.2d 1187 (11th Cir.

1989), the Eleventh Circuit Court of Appeals found that a plaintiff could not recover damages from law enforcement officials where intervening parties (i.e., the prosecutor) broke the chain of causation, absent proof of deception.    There is no allegation of deception in the instant Complaint.  (See generally, Doc. 1, Plaintiff's Complaint.)  A prosecutor's decision to bring or not to bring an action against the Plaintiff in this matter is such an intervening cause.

There are insufficient allegations that the Defendants prosecuted the Plaintiff or who even actually charged the Plaintiff with possession of controlled substances and carrying a pistol without a license.  Further there are insufficient allegations concerning whether the Plaintiff had committed the crimes of possession of controlled substances and carrying a pistol without a license and whether Deputies West and Hutson were aware of that he had committed these crimes.  In Eubanks v. Gerwen, the Eleventh Circuit held that the defendant police officers and police chief "did not make the decision as to whether or not to prosecute [the plaintiff]; nor did they act in such a way as improperly to influence the decision by the State Attorney in that regard."  40 F.3d 1157, 1160-61 (11th Cir. 1994).  As a matter of Alabama law - they have no authority to prosecute violations of the Criminal Code.  The Defendants in this case in no way participated – and under Alabama law could not have participated – in any alleged prosecution, and the Plaintiff has failed to sufficiently allege that the Defendants participated in any alleged prosecution.

Because the Plaintiff has failed to allege facts supporting the elements of a malicious prosecution claim, this claim is due to be dismissed.

**b.    Deputies West and Hutson's alleged actions did not violate clearly established law with regard to the Fourth Amendment.**

Under the facts as pled, there is no clearly established law that would provide fair warning to Deputies West and Hutson that their conduct violated the Fourth Amendment.  Therefore, the Defendants are entitled to qualified immunity on the Plaintiff's Fourth Amendment claims.

**2.    The Defendants are entitled to qualified immunity on the Plaintiff's First Amendment claims because Plaintiff has failed to allege any facts supporting a First Amendment claim.**

The Plaintiff purports to allege a violation of his First Amendment rights, but never alleges any facts or circumstances implicating the First Amendment.  Certainly, the Plaintiff has failed to allege a violation of his First Amendment rights.  Further, it is evident that no clearly established law would give the Defendants fair warning that their conduct violated the First Amendment.

**3.    The Defendants are entitled to qualified immunity on the Plaintiff's Fourteenth Amendment claims because has failed to allege any facts supporting a Fourteenth Amendment claim.**

"[W]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" Albright v. Oliver, 510 U.S. 266, 273 (1994) (citation omitted).  In Albright, the Court specifically held that the proper claim in an unreasonable seizure or arrest case is a Fourth Amendment claim and not a Fourteenth Amendment Substantive Due Process Claim.  "The Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it."  510 U.S. at 274.  Accordingly, as the Fourth Amendment explicitly governs the Plaintiffs' claims, their substantive due process Fourteenth Amendment claims

20

against these Defendants fail as a matter of law.  Further, the Plaintiff can point to no clearly

established law that a claim which can be addressed under the Fourth Amendment could also

violate the Fourteenth Amendment.  Therefore, even if the Fourteenth Amendment were

implicated, the Defendants would be entitled to qualified immunity on this claim.

## II.    DEPUTIES CHRIS WEST AND LASHUN HUTSON ARE ENTITLED TO ABSOLUTE SOVEREIGN IMMUNITY ON ALL THE PLAINTIFF'S STATE LAW CLAIMS SET FORTH IN COUNTS II AND III OF THE PLAINTIFF'S COMPLAINT.

Deputies West and Hutson, in their individual capacities, are absolutely immune to the

Plaintiff's state law claims of Assault and Battery and Conversion.  Under Alabama law, each

county sheriff is an executive officer of the State.  See Article V, § 112 of the Alabama

Constitution; McMillian v. Monroe County, 520 U.S. 781, 793 (1997) (holding that an Alabama

sheriff represents the State of Alabama when executing law enforcement duties).  Deputy sheriffs

are legally extensions of the sheriff and are likewise considered officers of the State of Alabama.

See Hereford v. Jefferson County, 586 So. 2d 209, 210 (Ala. 1991) (holding that a deputy is

legally an extension of the sheriff).  As executive branch, constitutional officers of the State,

Deputies West and Hutson are immune from suit under Article I, § 14 of the Alabama

Constitution of 1901.  This section immunizes Deputies West and Hutson from *all* state law

claims even though sued in their individual capacities.  Tinney v. Shores, 77 F.3d 378, 383 (11th

Cir. 1996) (holding sheriff and deputy sheriff were entitled to state sovereign immunity); Ex

parte Davis, 930 So. 2d 497, 501-02 (Ala. 2005) (granting petition for writ of mandamus

directing trial court to dismiss complaint against deputy sheriff in his individual capacity based

on his entitlement to state immunity); Hereford v. Jefferson County, 586 So. 2d at 210; King v.

Colbert County, 620 So. 2d 623, 626 (Ala. 1993); Carr, 916 F.2d at 1525-26; Ex parte Purvis,

689 So. 2d 794 (Ala. 1996) (holding sheriff and deputy were entitled to sovereign immunity in both their individual and official capacities); Ex parte Purvis, 689 So. 2d 794, 795-96 (granting petition for writ of mandamus directing the trial court to dismiss complaint against sheriff and deputy sheriff based on sovereign immunity where it was undisputed that they were working in the line and scope of their employment"); Ex parte Haralson, 871 So. 2d 802, 807 (Ala. 2003) (holding deputy sheriff entitled to sovereign immunity); Ex parte McWhorter, 880 So. 2d 1116, 1117 (Ala. 2003) (holding deputy sheriff entitled to sovereign immunity).

In the instant Complaint, it is alleged that the Deputies were acting within the line and scope of their duties as Deputy Sheriffs.  (See Doc. 1, Complaint, ¶¶ 4, 5, 43.)  Consequently, all of the Plaintiff's state law claims against Deputies West and Hutson are due to be dismissed.

### III.    THE PLAINTIFF'S CLAIMS FOR EQUITABLE AND DECLARATORY RELIEF ARE DUE TO BE DISMISSED.

Initially, the claims for equitable relief and declaratory relief are due to be dismissed because the Plaintiff has failed to establish a constitutional violation or a violation of state law. Further, the claims for equitable and declaratory relief are due to be dismissed for the reasons set forth below.

#### A.    DEPUTIES WEST AND HUTSON IN THEIR INDIVIDUAL CAPACITIES ARE NOT PROPER PARTIES AGAINST WHOM SUCH CLAIMS MAY BE BROUGHT.

The Plaintiff has sued the Defendants in their individual capacities only.  (See Plaintiff's Complaint, ¶¶ 4 & 5.)  Deputies West and Hutson, in their individual capacities have no authority to grant any equitable relief to the Plaintiff.  See Edwards v. Alabama Dep't of Corrections, 81 F. Supp. 2d 1242, 1252, n.3 (M.D. Ala. 2000) ("[I]n their individual capacities, the defendants are not in a position to afford any other type of relief; only in his or her official capacity can a governmental

22

official give equitable relief."); Rogers v. Haley, 421 F. Supp. 2d 1361, 1364 (M.D. Ala. 2006) ("[T]he requested [injunctive] relief can be provided by the defendants in their official capacities only.")   Further, Deputies West and Hutson individually are not properly the subject of any declaratory relief.  See Price v. Univ. of Alabama, 318 F. Supp. 2d 1084, 1094-95 (N.D. Ala. 2003) (dismissing individual capacity claims for declaratory relief because if the defendant was "properly the subject of such relief at all it would only be in his official capacity").   Accordingly, the Plaintiff's claims for equitable and declaratory relief are due to be dismissed.

**B.     THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THE PLAINTIFF'S CLAIMS FOR EQUITABLE AND DECLARATORY RELIEF.**

Subject matter jurisdiction is a "threshold issue" which the Plaintiff must establish to the Court's satisfaction before he may prevail on any of his claims.  See generally, Rosado v. Wyman, 397 U.S. 397, 402 (1970); Ellis v. Gen'l Motors Acceptance Corp., 160 F.3d 703, 706 (11th Cir. 1998).

**1.     The Plaintiff lacks standing to bring his claims for equitable relief and declaratory relief.**

**a.     The Plaintiff lacks standing to bring claims for equitable relief and declaratory relief under federal law.**

A plaintiff seeking the jurisdiction of the federal courts must show a personal stake in the outcome.  Baker v. Carr, 369 U.S. 186, 204 (1962).  The plaintiff must have sustained, or be about to sustain, some direct injury.  Golden v. Zwickler, 394 U.S. 103, 109-10 (1969).  Of direct relevance to the present case, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."  O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974).

In <u>City of Los Angeles v. Lyons</u>, the plaintiff alleged that he had been subjected to a chokehold by arresting officers in violation of his federally protected rights.  461 U.S. 95, 97 (1983).  The plaintiff sought an injunction barring the future use of police chokeholds.  461 U.S. at 98.  After the Ninth Circuit affirmed the district court's grant of a preliminary injunction, the United States Supreme Court reversed, holding that the plaintiff lacked standing.  461 U.S. at 99-100.  The Court also stated:  "Lyons' assertion that he may again be subject to an illegal chokehold does not create the actual controversy that must exist for a declaratory judgment to be entered."  <u>Id.</u> at 104.  The Court opined that the plaintiff's standing rested solely on pure speculation that he *might* be stopped by the police, *might* be arrested, and *might* again create a disturbance in the jail and *might* be subjected to another chokehold.  <u>Id.</u> 461 U.S. at 108.  The court noted that five months had elapsed between the choking incident and the filing of the complaint and the plaintiff was not subjected to another chokehold.  <u>Id.</u>

Here, any injunctive relief is equally speculative.  There is no allegation of any danger of future exposure to allegedly illegal conduct.  The Plaintiff's claim is, in essence, that he *might* be stopped by the Defendants, *might* be searched, *might* be subjected to force, and that he *might* be prosecuted.  Such speculation into future conduct does not grant the Plaintiff standing on his claims for injunctive or declaratory relief.  <u>See, e.g.</u>, <u>Lyons</u>, 461 U.S. at 108.

> **b.    The Plaintiff lacks standing to bring claims for equitable relief under state law.[5]**

The Plaintiff lacks standing because he cannot show that he "will suffer immediate harm if the requested relief is not granted."  <u>Ex parte Alabama Dep't of Mental Health and Retardation</u>, 837 So. 2d 808, 811 (Ala. 2002).  ""Injunctive relief is extraordinary relief; it will not be granted 'merely to allay an apprehension of a possible injury; the injury must be imminent and irreparable in

---

[5] The Plaintiff does not seek declaratory relief under state law. (Doc. 1, Plaintiff's Complaint, p. 8 (a.)).

an action at law.'"  Id.  In the Plaintiff's Complaint, he makes no allegation that he is in danger of imminent injury if equitable relief is not granted.  (See generally, Doc. 1, Plaintiff's Complaint.)  Therefore, he is not entitled to any equitable relief for any state law claims due to lack of standing.

### 2.    The Plaintiff's claims for equitable and declaratory relief are moot.

#### a.    The Plaintiff's claims for equitable and declaratory relief are moot under federal law.

In the instant case, the Plaintiff cannot overcome his initial hurdle of subject matter jurisdiction with regard to his claim for injunctive relief because his claims for injunctive relief are moot.  "[A] moot suit 'cannot present an Article III case or controversy and the federal courts lack subject matter jurisdiction to entertain it.'"  National Advertising Co. v. City of Miami, 402 F.3d 1329, 1332 (11th Cir. 2005).  "Past exposure to illegal conduct does not constitute a present case or controversy involving injunctive relief if unaccompanied by any continuing, present adverse effects."  O'Shea, 414 U.S. at 495-96; see also Malowney v. Federal Collection Deposit Group, 193 F.3d 1342, 1347 (11th Cir. 1999) (holding that a speculative threat of future injury is insufficient to satisfy the case and controversy requirement of the declaratory judgment act and dismissing complaint where allegations did not show that the plaintiffs were "likely to be subject to future injury.")  In the Complaint, all the allegations involve past conduct.  (See generally, Doc. 1, Plaintiff's Complaint.)  There is no allegation that any continuing violation is occurring or that the Plaintiff is "likely to be subject to future injury."  (Id.)  Accordingly, the Plaintiff's Complaint is due to be dismissed as moot.

**b.    The Plaintiff's claims for equitable relief are moot under state law.**[6]

An injunction is to be issued only to prevent substantial injury where no adequate remedy at law is available; courts will not exercise the extraordinary power of injunction merely to allay apprehension of injury-the injury must be both imminent and irreparable in a court at law.

United Services Auto. Ass'n v. Allen, 519 So. 2d 506, 508 (Ala. 1988) (internal citations omitted); see also Ormco Corp. v. Johns, 869 So. 2d 1109, 1110 (Ala. 2003). "[I]f the relief sought is preventive, there must be a state of affairs which actually threatens such right and calls for present relief." American Federation of State, County and Municipal Emp. v. Dawkins, 104 So. 2d 827, 830 (Ala. 1958). The alleged harm in this case is alleged to have already occurred. The Plaintiff cannot make a showing that there is any threat of imminent and irreparable future harm. Therefore, injunctive relief is unavailable for the Plaintiff in this case.

## CONCLUSION

Based on the foregoing, Defendants Chris West and Lashun Hutson request that this Honorable Court enter an order dismissing all claims against them in this action.

Respectfully submitted this the 5th day of September, 2006.

s/Daryl L. Masters
DARYL L. MASTERS Bar No. MAS018
AMANDA KAY MORGAN Bar No. ALL079
Attorneys for Defendants
WEBB & ELEY, P.C.
7475 Halcyon Pointe Drive (36117)
P.O. Box 240909
Montgomery, Alabama 36124
Telephone: (334) 262-1850
Fax: (334) 262-1889
E-mail: rrobertson@webbeley.com

---

[6] The Plaintiff does not seek declaratory relief under state law. (Doc. 1, Plaintiff's Complaint, p. 8 (a.)).

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on **September 5, 2005**, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:  **Jay Lewis, Esq.**

**s/Daryl L. Masters**
OF COUNSEL