IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| RICHARD MARSHALL, | * |
| | * |
| v. | *   Civil Case No. 2:06-cv-701-ID |
| | * |
| CHRIS WEST, in his individual capacity, | * |
| LASHUN HUTSON, in his individual capacity | * |
|     Defendants. | * |

### RESPONSE TO MOTION TO DISMISS

COMES NOW Plaintiff Richard Marshall, by and through his attorney, and would show unto the Court as follows:

The defendants have moved this Court to dismiss the complaint against them pursuant to Rule 12(b)(6), F.R.Civ.P., and they have submitted what purport to be reasons why the Court should do so. The defendants' motion should be denied.

The defendants travel under the following theories:

1. Heightened pleading

2. Qualified immunity

3. Failure to allege a violation of Fourth Amendment rights.

4. Failure to allege that the defendants subjected him to an unreasonable search.

5. Search incident to a lawful arrest.

6. Arguable probable cause for the arrest.

7. Plaintiff was dangerous and may gain control of weapons.

8. The force used in seizing Plaintiff's vehicle by smashing into it was reasonable.

9. Firing a weapon in the direction of Plaintiff while he was standing still was reasonable.

10. Failure to allege that the defendants falsely arrested Plaintiff.

11. Failure to allege that the defendants maliciously prosecuted Plaintiff.

12. Failure to allege facts supporting a First Amendment claim.

13. Failure to allege facts supporting a Fourteenth Amendment claim.

14. Sovereign immunity (absolute variety).

15. Equitable and declaratory relief not available.

Plaintiff concedes one point – he has no First Amendment claim, and it was an error that such was alleged in the "Jurisdiction and Venue" portion of his complaint; it should have read "Fourteenth Amendment" as set forth in the *ad damnum* clause. Plaintiff vigorously opposes the remainder of the motion.

Plaintiff properly invoked the Fourth and Fourteenth Amendments as well as 42 U.S.C. § 1983 as the bases for his federal claims and Alabama law as the basis for his state law claims. He has set forth in exhaustive detail sufficient facts to establish each and every claim.

Regarding the "heightened pleading" requirement in the Eleventh Circuit, Plaintiff is not required to publish a book of facts in order to properly plead his case. On page 4 of their brief, the defendants point to a number of facts that they claim might have been alleged, but weren't. A response follows:

1. "Whether the Defendants had reasonable suspicion supporting a *Terry* stop." Not only does Plaintiff not know what was going through the defendants' heads, it would have been the height of folly to speculate as to such. It is sufficient for Plaintiff to claim – as he did in his Complaint – that he was "peacefully and lawfully operating his motor vehicle" at the time of the events giving rise to this action.

2. "Whether the Plaintiff knew that Deputies West and Hutson were law enforcement officers." It is sufficient for Plaintiff to allege **objective**, rather than **subjective**, facts as he did when he claimed in his Complaint that he did not know either of the occupants of the defendants' vehicle, that the defendants were clad, as far as Plaintiff could see in black tee shirts, and that neither defendant identified himself as a law enforcement officer.

3. "Whether [the defendants] had any badges or other law enforcement insignia on their persons or vehicle." Plaintiff described in his Complaint what he could see of West and Hutson – black tee shirts – and the vehicle – a Lincoln Town Car – but failed to specifically note that the vehicle had no law enforcement markings on it. While Plaintiff can amend his Complaint to allege that fact, it is of no great import to this case.

4. "What parts of the Plaintiff's vehicle were searched." This is a completely irrelevant omission, as the fact that it was searched at all was part of the violation alleged. Plaintiff understands that in a lawful, reasonable stop, police may make a limited search for their own safety. This was not a lawful reasonable stop.

5. "Whether the Plaintiff had committed [the offenses alleged] and whether [the defendants] were aware of (sic.) that he had committed these crimes." The legality of the defendants' actions in this case are not dependent on what Plaintiff may or may not have done, but whether the defendants had reasonable suspicion for a *Terry* stop, whether this was the "brief, investigative stop" contemplated by *Terry*, and whether the force used was reasonable and the consequent prosecution supported by probable cause. The defendants are here asking for a pretrial

determination of guilt or innocence, and pretending that it is relevant to the allegations of the Complaint.

6. "Whether there was a firearm or other weapon in the car, in plain view or otherwise." Nothing the defendants learned later could be used as justification for ramming Plaintiff's car, sending it spinning into a ditch, firing a weapon in Plaintiff's direction, or assaulting and battering him. This "fact" is simply not relevant to the claims in this case.

7. "Who arrested the Plaintiff and transported him to the Jail." It was clearly set forth in the Complaint that West was the one who assaulted Plaintiff, threw him to the ground and handcuffed him. That pretty much qualifies as an arrest. Plaintiff alleged that he was driven to the jail in "a deputy's car"; more than that is irrelevant, as there is no claim for unlawful transport.

8. "Who actually charged the Plaintiff with possession of controlled substances and carrying a pistol without a license." Again, the issue of who signed the paperwork is irrelevant. While that person may be an additional defendant when his identity is discovered, it is clear from the allegations of the Complaint that West and Hutson "instituted a criminal proceeding" against Plaintiff. (Complaint, ¶ 54.)

9. "Who was responsible for not returning the alleged $400.00 the Plaintiff was missing." The Complaint properly alleges that West took $500.00 from Plaintiff and that Plaintiff was credited at the jail with only $100.00, West having claimed that was all the money that was in the wallet. Plaintiff agrees that some leap is required here. West took $500.00, Plaintiff got back $100.00. A reasonable inference from the facts alleged is that West was responsible for returning the

money. Again, this is all irrelevant; the gravamen of the conversion claim is that the money was unlawfully taken by West and that it was wrongfully kept.

10. "Whether the vehicles were traveling over 35 miles per hour at the time the PIT was executed." That, too, is irrelevant except for the arbitrary determination by most law enforcement agencies that executing a PIT at speeds over 35 mph constitutes deadly force. While Plaintiff can easily amend his Complaint, if granted leave to do so, to allege the approximate speed achieved, there is no question that – whatever the speed – the force used was at least unreasonable, even if not deadly.

The assertion of the defendants that the lack of the above assertions constitutes a violation of the "heightened pleading" requirement is nothing but a red herring, as the complaint is sufficiently specific without any of them.

The defendants' brief then meanders through the general law of qualified immunity for several pages before lighting on they consider to be particularized reasons why this compliant should be dismissed.

The defendants first assert that Plaintiff has failed to allege that the defendants subjected his vehicle to an unreasonable search. If, as the Complaint alleges, Plaintiff was operating his vehicle lawfully, and if the officers failed to identify themselves and merely waved a gun at Plaintiff, and if they slammed into his car spinning it off the road, then there was no lawful arrest and no grounds for a search. Plaintiff has properly alleged that there was no probable cause for the battery of his vehicle or his person ( ¶¶ 45, 48, 52, 53, 54). It is up to the defendants to establish probable cause to counter the objective facts presented by Plaintiff that the fact and manner of the arrest were unreasonable. If there was no probable cause, there was no lawful

arrest. Plaintiff assures the Court that he did fail to pull over after being accosted by two gunslinging persons in black tee shirts driving a Lincoln Town Car. Doubtless the Court would have done the same in the absence of some evidence that the assailants were actually law enforcement officers. Even a misdemeanor requires scienter, some objective reason to believe that Plaintiff knew he was violating the law. Failing to stop for what looked to be highwaymen is not a crime. The Complaint certainly does not "on its face" establish that Plaintiff was guilty of a misdemeanor. The search of the car was not lawful as a search incident to arrest.

The defendants then drop into punt formation by alleging that "the search was based on, at least, probable cause."

There was nothing in the Complaint to indicate that "Plaintiff had attempted to evade the Deputies." The Complaint properly alleges that Plaintiff was not fleeing, but attempting to get to a populated area. (Complaint, ¶ 20). At the time West shot at him, Plaintiff was standing next to his vehicle, dazed from having hit his head, and the shot frightened him into freezing in place. As the Complaint alleged, Plaintiff was simply not moving as quickly as West wanted. Nothing about that brings this case within the scope of *Ray v. U.S.*, 206 F.2d 796 (10th Cir. 1953).

In fact, this case is more akin to the Tenth Circuit case that distinguished *Ray*. As the court said in *Price v. U.S.*:

> When tested for probable cause to justify the making of the search and seizure without a search warrant, the evidence immediately brings, into focus certain significant features of weakness. The evidence relating to appellant's reputation for being a dealer in contraband liquor was scant and somewhat indirect. There was no evidence that he owned or operated a still. There was no evidence that he was a professional liquor runner. There was no direct evidence that he ever sold or agreed to sell contraband liquor. There was no evidence that the automobile had ever been used on previous occasions for the transportation of contraband liquor. There was no evidence that the automobile appeared to be lower at the rear end than at the front. There was no evidence that the road being traveled by appellant was a well-known route from a well-known source of supply to a well-known

source of outlet for contraband liquor. There was no evidence of speeding in an effort to escape. There was evidence of a change in course of the automobile, but that was occasioned to avoid a collision with the car of the investigators. And until appellant's car had been stopped, until the announcement had been made that appellant was under arrest, until an effort had been made to enter appellant's car, and until the window in the car had been broken or was being broken as a part of such effort, none of the investigators saw anything in the car which they identified by color, smell, label, or otherwise as being contraband liquor. These facts and circumstances distinguish the case from the landmark cases of *Carroll v. United States*, supra; and *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879. And similarly, they distinguish the case from *Ray v. United States*, 10 Cir., 206 F.2d 796; *Fowler v. United States*, 10 Cir., 239 F.2d 93; *United States v. McCall*, supra; decided by this court. We think that the facts and circumstances surrounding the search and seizure without a search warrant were not sufficient to constitute probable cause, and that therefore motion to suppress the liquor as evidence should have been sustained.

*Price v. U.S.* 262 F.2d 684, *686 -687 (C.A.10 1959).

There was no arguable probable cause for the arrest. Without arguable probable cause for the arrest, there could have been none for the search.

The defendants then hopefully assert that the search was lawful based on their reasonable belief that Plaintiff was dangerous and could grab a weapon. There are a couple of problems with that. First, there is no question that Plaintiff was already out of the vehicle, flat on the ground, and in handcuffs at the time the search took place. Odds are against his grabbing a weapon. Second, there were no specific and articulable facts from which an inference could be drawn that Plaintiff was dangerous and that he could gain immediate control of weapons. Despite the defendants' attempts to recast the allegations of the Complaint in a light more favorable to them, there is no evidence that "Plaintiff had attempted to evade the deputies" or that he "had refused orders of the deputies to get on the ground." Without those facts, no inference could be drawn as to the dangerousness of Plaintiff.

The Court is asked by the defendants to simultaneously believe (as a result of the their

twisting of the allegations in the Complaint) that the vehicles might not have been traveling as fast as 35 miles per hour **and** that Plaintiff was attempting to "evade" the law enforcement officers by "fleeing."  As set forth above, Plaintiff can amend his Complaint, if granted leave to do so, to clarify those facts.  Generally, a party should be given at least one opportunity to amend before the district court dismisses the complaint with prejudice. *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir.2001).  It should not be necessary, however, as this case turns not on whether the force was "deadly," but on whether it was excessive.

While Plaintiff is still unaware of the probable cause for the defendants' attempt to stop him, it should be clear to any reasonable officer that smashing into Plaintiff's car and then executing a maneuver designed to make him lose control of it and crash is excessive and unreasonable.  Plaintiff, as noted, was operating his vehicle lawfully, and there is no allegation that he ever did otherwise.  What he did was to refuse to stop on a deserted road for two armed men in a civilian-style car[1] who waved guns at him like so many bushrangers.  That does not justify the use of the force employed by the defendants.  As the Supreme Court held in the seminal case of *Tennessee v. Garner*, "The use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable. It is not better that all felony suspects die than that they escape. Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." *Tennessee v. Garner*, 471 U.S. 1, 11, (1985).  Here, there is no evidence that Plaintiff posed a threat to either the officers or to other people.  Sending his vehicle careening out of control was certainly excessive and unreasonable.

---

[1] There may be law enforcement agencies in Lowndes County that utilize Lincoln Town Cars as police cruisers, but Plaintiff's counsel is unaware of any.

The defendants take insubstantial shelter under *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir. 1984), in asserting that warning shots are "not deadly force." A close reading of *Bell*, however, reveals only that the Seventh Circuit refused to craft a rule that warning shots constitute deadly force, *per se* . What the court actually did was to hold that, "[t]he district court did not abuse its discretion in submitting the question of excessive force to the jury, to be resolved in light of all the facts and circumstances." *Id.*, at 1279. Plaintiff would be happy with that result here. Parenthetically, it must be noted that the *Bell* court, cited with seeming approval, Model Penal Code § 3.11(1) (Proposed Official Draft 1962), holding that deadly force can be inferred in the event that one "[p]urposely fire [es] a firearm in the direction of another person or at a vehicle in which another person is believed to be." *Id.*, n. 89.

In addition to crashing his car and shooting in his direction, of course, the defendants grabbed Plaintiff, threw him to the ground, handcuffed him, and ripped his pants from his body. The totality of the circumstances – particularly in light of the absence of threat or flight – establish an excessive and unreasonable use of force.

The defendants' arguments that neither of them falsely arrested or maliciously prosecuted Plaintiff deserve scant attention. Any official conduct by which a person is seized by a law enforcement officer constitutes an arrest. No formalities are required. It matters not a whit how or by whom Plaintiff was transported to the jail; he had been arrested at the time the defendants crashed his car and certainly by the time he was handcuffed. An individual has a federally protected right to be free from unlawful arrest and detention resulting in a significant restraint of liberty and violation of this right may be grounds for suit under 42 U.S.C. § 1983. See *Dennis v. Warren*, 779 F.2d 245, 247 (5th Cir. 1985).

With respect to the malicious prosecution claim under § 1983, Plaintiff is required to

prove a violation of his Fourth Amendment right to be free from unreasonable seizures in addition to the elements of the common law tort of malicious prosecution. If that showing is made, malicious prosecution is a violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983. *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003); citing *Uboh v. Reno*, 141 F.3d 1000, 1002-04 (11th Cir. 1998).

The elements of a malicious prosecution claim are: 1) a judicial proceeding initiated by the defendant; 2) the lack of probable cause; 3) malice on the part of the defendant; 4) termination of the proceeding in favor of the plaintiff; and 5) damage to the plaintiff as a result. *Tuscaloosa County v. Teaster*, 1999 WL 13544, * 2 (Ala.Civ.App. 1999); citing *Eubanks v. Hall*, 628 So.2d 773 (Ala.Civ.App. 1993). Probable cause has been defined as "[a] reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offence charged." *Id.*, citing *Eidson v. Olin Corp.*, 527 So.2d 1283, 1285 (Ala. 1988). In actions arising out of prior criminal prosecutions, probable cause is defined as such a state of facts in the mind of a prosecutor as would lead a man of ordinary caution and prudence to believe or entertain an honest and strong suspicion that the person is guilty of the crime charged. *Rhyne v. H & B Motors*, 505 So.2d 307, 310 (Ala. 1987). For a malicious prosecution derived from a criminal case, malicious or evil intent may be implied from circumstances in which a prosecution was begun for any purpose other than a bona fide purpose to bring an accused to punishment as a violator of criminal law. *National Sec. Fire & Cas. Co. v. Bowen*, 447 So.2d 133, 140 (Ala. 1983). The element of malice may be inferred from a lack of probable cause. *Kitchens v. Winn-Dixie Montgomery, Inc.*, 456 So.2d 45 (Ala. 1984). If material facts from which the inference of probable cause may be drawn are in dispute, the issue is a jury question. *Partridge v. Sawyer*, 383 So.2d 184 (Ala.Civ.App.

1980). Certainly, 42 U.S.C. § 1983 is broad enough to cover malicious prosecution

Nor may the defendants hide securely behind their lack of prosecutorial credentials. It is clear that they initiated the criminal action against Plaintiff. As a consequence of their actions in initiating that action, Plaintiff spent five weeks as a guest of Lowndes County before the Sheriff would approve a bond. The case was eventually resolved in his favor, but only after great damage to him. To let the defendants off the legal hook in this case is to ignore the multitudes of cases in which private citizens (all or most of whom also lack prosecutorial credentials) have been successfully sued for malicious prosecution.

The defendants assert, *en passant*, that there is no clearly established law that would provide fair warning that their conduct violated the Fourth Amendment. The Eleventh Circuit would disagree. It is the law of the United States and of the Eleventh Circuit that an arrest without probable cause is presumptively unconstitutional. In *Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998), Judge Tjoflat called it a "clearly established" law ("It is clearly established that an arrest made without probable cause violates the Fourth Amendment. See *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir.1990)").

It is also unnecessary, after *Hope v. Pelzer*, 122 S.Ct. 2508 (2002), to show an identical case in which the actions of the defendants have been found unlawful. Fair warning is all that is required, and it would be risible for the defendants to claim that they had no clue that ramming their car into that of a citizen, purposefully causing him to crash, and firing a handgun in his general direction might be a bit unlawful, absent probable cause to do so.

The defendants claim what amounts to absolute sovereign immunity from all state law claims. However, the Alabama Supreme Court has stated that sheriffs do not have absolute immunity in all circumstances. See *Coleman v. City of Dothan*, 598 So.2d 873, 875 n. 2

(Ala.1992) ("We are careful to point out ... that a sheriff is not entitled to absolute immunity in all situations."); *White v. Birchfield*, 582 So.2d 1085, 1088 (Ala.1991) ( "[B]y this opinion, we are not to be understood as granting absolute immunity to a sheriff in all situations."). Sovereign immunity, it would seem, is not so absolute as the defendants would have the Court believe.

The Alabama Supreme Court has recognized that a state officer or employee may not escape individual tort liability by arguing that his mere status as a state official cloaks him with the state's constitutional immunity. *Phillips v. Thomas*, 555 So. 2d 81, 83 (Ala. 1989) (quotations omitted) (quoting *Barnes v. Dale,* 530 So.2d 770, 781 (Ala.1988)). "Clearly, a state officer or employee is not protected by § 14 [of the Constitution of Alabama] when he acts willfully, maliciously, illegally, fraudulently, in bad faith, beyond his authority, or under a mistaken interpretation of the law." See *Lumpkin v. Cofield,* 536 So.2d 62, 65 (Ala.1988); *Barnes,* 530 So.2d at 782; *DeStafney v. University of Alabama,* 413 So.2d 391, 393 (Ala.1981); *Gill v. Sewell,* 356 So.2d 1196, 1198 (Ala.1978); *Unzicker v. State,* 346 So.2d 931, 933 (Ala.1977); and *St. Clair County v. Town of Riverside,* 272 Ala. 294, 296, 128 So.2d 333, 334 (1961)." *Id* at 83.

It is clear from the facts alleged that a jury could find that the defendants acted "willfully, maliciously, illegally, fraudulently, in bad faith, beyond [their] authority, or under a mistaken interpretation of the law." In a motion to dismiss under 12(b)(6), the defendants must prove that under no conceivable set of facts could Plaintiff prevail. It is clear here, with nothing more, that he could.

They have not briefed this point, but to complete the immunity circle as to discretionary function immunity, the Alabama Supreme Court has noted that Ala. Code § 6-5-338(a) "extends discretionary function immunity to municipal police officers . . . unless the officer's conduct is so

egregious as to amount to willful or malicious conduct or conduct engaged in bad faith." *Couch v. City of Sheffield,* 708 So.2d 144, 153 (Ala. 1998).

Declaratory relief is certainly within the ambit of the District Court, with or without injunctive relief attached. The Court is free to craft such injunctive relief as would pretermit further violations of Plaintiff's rights, by way of retaliation or otherwise. Plaintiff agrees that, absent retaliation, he is unlikely to be subject to the defendants' tender ministrations in the future.

RESPECTFULLY SUBMITTED on this the __19th__ day of September, 2006.

/s/ JAY LEWIS
JAY LEWIS
Attorney for Plaintiff
Law Offices of Jay Lewis, LLC
P.O. Box 5059
Montgomery, AL 36103
(334) 263-7733 (Voice)
(334) 832-4390 (Fax)
J-Lewis@JayLewisLaw.com
ASB-2014-E66J

**CERTIFICATE OF SERVICE**

  I hereby certify that I have served a copy of the foregoing on the following attorneys or parties by filing the same with the Clerk by CM/ECF, by hand delivery, or by placing a copy of the same in the United States mail, first-class postage prepaid and properly addressed on this ___19th___ day of September, 2006.

Daryl L. Masters
Amanda Kay Morgan
Webb & Eley
P.O. Box 240909
Montgomery, AL  36124

            /s/ JAY LEWIS
            JAY LEWIS
            Law Offices of Jay Lewis, LLC
            P.O. Box 5059
            Montgomery, AL 36103
            (334) 263-7733 (Voice)
            (334) 832-4390 (Fax)
            J-Lewis@JayLewisLaw.com