IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| RICHARD MARSHALL, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 2:06-cv-701-ID-CSC |
| | ) |
| CHRIS WEST, in his individual capacity, | ) |
| LASHUN HUTSON, in his individual capacity | ) |
| | ) |
|     Defendants. | ) |

**DEFENDANTS CHRIS WEST AND LASHUN HUTSON'S REPLY TO THE
<u>PLAINTIFF'S RESPONSE TO THEIR MOTION TO DISMISS</u>**

COME NOW Lowndes County, Alabama, Sheriff's Deputies Chris West and Lashun Hutson, the Defendants in the above-referenced matter, and submits their Reply to the Plaintiff's Response to their Motion to Dismiss.

**I.   THE PLAINTIFF HAS FAILED TO SHOW THAT HE HAS MET THE HEIGHTENED PLEADING STANDARD.**

The Plaintiff argues that his deficient Complaint somehow meets the heightened pleading standard by asserting that the facts that the Defendants asserted were left out of the Complaint are not relevant. The Defendants will address each of the Plaintiff's arguments in numbers corresponding to their arguments and show why each of the facts that are missing from the Complaint are completely relevant to the claims presented.

    1.    The Plaintiff failed to allege facts showing that the Defendants did not have reasonable suspicion to stop his vehicle. Although the Plaintiff alleged that he was "peacefully

1

and lawfully" operating his motor vehicle[1], he does not allege that he was not doing something else unlawful or even suspicious as would support a Terry stop. Illegal activity is not required for a Terry stop, only reasonable suspicion. Terry v. Ohio, 392 U.S. 1, 22 (1968)

  2. and 3.  As stated in the Defendants' Brief in support of their Motion to Dismiss, for purposes of the heightened pleading standard, the Plaintiff is required to plead facts within his knowledge and control that bear on the question of qualified immunity. See Williams v. Ala. State Univ., 865 F. Supp. 789, 799 (M.D. Ala. 1994) rev'd on other grounds 102 F.3d 1179 (11th Cir. 1997). The Plaintiff clearly knows whether there were any law enforcement markings on the Defendants or their vehicle and whether he knew that the Defendants were law enforcement officers. Because these facts could bear on the issue of the reasonableness of the Defendants' actions, the Plaintiff is required to plead them.

  4.  "[T]he search of ***the passenger compartment*** of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant'" the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." Michigan v. Long, 463 U.S. 1032, 1049 (1983) (emphasis added). Because the Plaintiff has failed to allege what parts of the automobile were searched, there is no way to determine whether the Defendants were in compliance with this legal standard.

---

[1] "Although the court must take all the factual allegations in the complaint as true for the purposes of this motion to dismiss, the court is not bound to accept as true a legal conclusion couched as a factual allegation." Nicholson v. Moates, 135 F.Supp.2d 1185, 1189 (M.D.Ala. 2001)

5.      The fact of whether the Plaintiff had committed the alleged offenses or whether the Defendants knew that he had committed these crimes has an enormous bearing on whether the Defendants had reasonable suspicion for a Terry stop or even arguable probable cause.

6.      Whether there was a firearm or other weapon in the car, in plain view or otherwise, is relevant to whether the search was lawful. See, e.g., Michigan, 463 U.S. at 1049 ("[T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant'" the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.")

7.      "[N]either handcuffing nor other restraints will automatically convert a Terry stop into a de facto arrest requiring probable cause." U.S. v. Kapperman, 764 F.2d 786, 791 n. 4 (11th Cir. 1985). Therefore, the allegation that Deputy West handcuffed the Plaintiff does not constitute an arrest. The Plaintiff's statement that West's "pretty much qualifies as an arrest" is unsupportable. Who arrested the Plaintiff and transported him to jail is relevant to the determination of who actually arrested the Plaintiff.

8.      Who charged the Plaintiff with possession of controlled substances and carrying a pistol without a license is relevant to whether it was one of the Defendants who allegedly maliciously prosecuted the Plaintiff. The Plaintiff states that his allegation that the Defendants "instituted a legal proceeding against him" is insufficient because it is a mere legal conclusion. See Nicholson, 135 F.Supp.2d at 1189 ("Although the court must take all the factual allegations in the complaint as true for the purposes of this motion to dismiss, the court is not bound to accept as true a legal conclusion couched as a factual allegation.")

9. Who was responsible for not returning the alleged $400.00 the Plaintiff was missing is a fact relevant to whether one of the Defendants was responsible for conversion. The Plaintiff never alleged that West returned the lesser amount or that West was the only person with access to the money between the time the money was taken and the time it was returned.

10. The Plaintiff argues that it is irrelevant whether the vehicles were traveling over 35 miles per hour at the time the PIT was executed. However, the Plaintiff's own allegations make this fact relevant. The Plaintiff alleges that a PIT maneuver at speeds over 35 miles per hour constitutes deadly force. (Doc. 1, Plaintiff's Complaint, ¶ 23.) This allegation must be accepted as true. See, e.g., Nicholson v. Moates, 135 F.Supp.2d 1185, 1189 (M.D.Ala. 2001). Whether the alleged force used was deadly or not bears on the standard of objective reasonableness, and therefore, this omitted fact is relevant to the issue of qualified immunity.

## II.  THE PLAINTIFF HAS FAILED TO SHOW THAT HE SUFFICIENTLY ALLEGED AN ILLEGAL SEARCH

### A.  The Search was a lawful search incident to a lawful arrest.

The Plaintiff asserts that his subjective knowledge and intentions can somehow affect whether the Defendants had arguable probable cause to arrest him. However, it is of no consequence whether the Plaintiff possessed the scienter required for the commission of a crime. What is relevant is that the objective facts as viewed by the Defendants: The Plaintiff "refused to pull over" after Defendant West "gestured for him to pull over." (Doc. 1, Plaintiff's Complaint, ¶¶ 20 and 19 respectively.) As set forth in the Defendants' brief in support of its Motion to Dismiss, when a person "refuses to bring his vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police vehicle, when given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a misdemeanor." Ala. Code § 32-5A-193(a) (1975).

Considering the objective facts as pled by the Plaintiff, clearly the Defendants had arguable probable cause to arrest him. It is not required that the Plaintiff was actually guilty for the arrest to be lawful. Further, the Plaintiff does not contest that, if the arrest was lawful, the search was lawful as well.

      **B.    The Search was based on, at least, arguable probable cause.**

The Plaintiff has attempted to avoid the consequences of his own Complaint although it is clear that this Court must consider this motion "as if all the allegations contained [in the Complaint] were true." Cottone v. Jenne, 326 F.3d 1352, 1355 (11th Cir. 2003). The Complaint is clear that the Plaintiff did not stop when signaled to do so and that he refused the Defendant's order. (Plaintiff's Complaint, ¶¶ 15, 17, 19, 20, and 26.) The Plaintiff's subjective motivations have no bearing on the issue of objective reasonableness, and there is no allegation showing that the Defendants could have possibly been aware of the Plaintiff's subjective intentions. Clearly, under the facts as alleged the Defendants had probable cause to believe that the automobile contained evidence of a crime. See, e.g., U.S. v. Tankersley, 492 F.2d 962, 968 (7th Cir. 1974) ("[T]he police saw the defendants light something in front of Ryals' home, pursued them on foot, firing shots in the air, and shot out a tire to prevent the defendants' escape. Under these circumstances the police had probable cause to search the vehicle immediately.")

      **C.    The search was reasonable for the officers' safety.**

The Plaintiff notes that the he was in handcuffs by the time that the search took place, but there is no allegation that his passenger was similarly restrained. The passenger had equal opportunity to grab a weapon. As stated above, the Complaint is clear that the Plaintiff did not stop when signaled to do so and that he refused the Defendant's order. (Plaintiff's Complaint, ¶¶ 15, 17, 19, 20, and 26.) These facts "taken together with the rational inferences from those

facts, reasonably warrant the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." Michigan, 463 U.S. at 1049 (internal quotation marks omitted).

### III. THE PLAINTIFF HAS FAILED TO SHOW THAT HE SUFFICIENTLY ALLEGED THE USE OF EXCESSIVE FORCE

#### A. The Plaintiff has failed to show that he sufficiently alleged the use of excessive vehicular force.

The Plaintiff cited only one case - Tennessee v. Garner[2] for his position that the Defendants used deadly force, and so that force was unreasonable. The Plaintiff, however, has not sufficiently alleged the use of deadly force. See McCartor v. City of Kent, 2005 WL 2600421, *8 (W.D. Wash. October 12, 2005) (holding that use of PIT was not deadly force). The Plaintiff stated that a PIT maneuver at speeds of over 35 miles per hour is deadly force, but fails to allege that the vehicles were traveling above that speed. Without any factual allegations showing that deadly force was used, the Plaintiff's argument is misplaced.

What the Plaintiff does allege is that he did not stop when signaled to stop by the Deputies. Whether the Plaintiff was subjectively simply attempting to get to a more populated area makes no difference – it is clear that the objective facts (from the Plaintiff's Complaint) were that the Plaintiff did not stop when signed to do so by law enforcement officers. The Defendants had no way of knowing the Plaintiff's subjective thoughts. As set forth in the Defendants' Brief in support of their Motion to Dismiss, the fact that the Plaintiff was objectively attempting to flee, made the vehicular force was objectively reasonable to effectuate a lawful arrest. Lee v. Ferraro, 284 F.3d 1188, 1200 (11th Cir. 2002) (stating that the "*typical* arrest involves some force") Objective reasonableness is the standard (not subjective

---

[2] 471 U.S.1 (1985).

reasonableness). See, e.g., McCartor, 2005 WL at *9 (stating that use of a PIT maneuver to prevent a pursuit in an area where no pedestrians were present was an objectively reasonable use of force).

> **B.  The Plaintiff has failed to show that he sufficiently alleged the use of excessive force with regard to the warning shot.**

The Plaintiff quotes language from Bell v. City of Milwaukee[3] but leaves out the pertinent portion of the quote. In Bell, the court noted:

> Under Model Penal Code § 3.11(1) (Proposed Official Draft 1962), deadly force can be inferred in the event that one "[p]urposely fire [es] a firearm in the direction of another person or at a vehicle in which another person is believed to be" (emphasis added), but "[a] threat to cause death or serious bodily harm by the production of a weapon or otherwise, so long as the actor's purpose is limited to creating an apprehension that he will use deadly force if necessary, does not constitute deadly force."

Bell, 746 F.2d at 1279, n. 89 (modifications in original). The Bell court specifically held that true warning shots were not excessive force. In the Plaintiff's Complaint, the Plaintiff expressly alleges that the shot was a "warning shot." There is no allegation that the Plaintiff was actually shot at by either Defendant. Accordingly, the Plaintiff's argument is without merit in the context of his own pled allegations.

Further, the Plaintiff, in his Response, ignores the fact that the Defendants have cited two cases wherein the issue of excessive force was not left for the jury to decide. See Otey v. Marshall, 121 F.3d 1150, 1156 (8th Cir. 1997) (noting that the officer's "use of warning shots simply did not violate anyone's constitutional rights" and stating that officer was entitled to summary judgment based on qualified immunity); O'Neal v. Ellison, 15 F.3d 1088 (9th Cir. 1994) (affirming summary judgment for corrections officer who fired warning shot). From the allegations of the Complaint, it is clear that the Plaintiff was (objectively) fleeing. Further, from

---

[3] 746 F.2d 1205, 1279 (7th Cir. 1984), *overruled on other grounds*.

the allegations of the Complaint, it is clear that the Plaintiff was (objectively) refusing the Defendants' orders. As noted above, the Defendants had no way of knowing the Plaintiff's subjective thoughts or reasons for his evasive actions. Clearly, based on the applicable law, the force allegedly used was reasonable.

Further, the Plaintiff ignores the Defendants' argument that the force allegedly used in the instant case – even when taken with the other circumstances wherein the Defendants allegedly grabbed the Plaintiff, threw him to the ground, handcuffed him, and ripped his pants off - is clearly de minimus in nature under established Eleventh Circuit precedent. See, e.g., Durruthy, 351 F. 3d 1080, 1080 & 1094 (11th Cir. 2003); Post v. City of Ft. Lauderdale, 7 F.3d 1552, 1556 (11th Cir. 1993) (finding force lawful where officer "spun [plaintiff] around, placed him against a display case, applied a choke hold, and handcuffed him" and, after handcuffing him, pushed him against a wall). Accordingly, the Plaintiff has conceded the Defendants' point. See Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (finding that a party who fails to address an issue has waived it). Accordingly, the Plaintiff's claim that he was subjected to excessive force by the warning shot and the alleged actions of the Defendants in throwing him to the ground, handcuffing him, and ripping his pants off is due to be dismissed.

## IV.  THE PLAINTIFF HAS FAILED TO SHOW THAT HE SUFFICIENTLY ALLEGED AN UNLAWFUL ARREST

As set forth in Section II, Part A, above, the Plaintiff's arrest was legal. However, the Plaintiff has not established that either Defendant was the person who actually arrested him. The Plaintiff's arguments on this point are weak and not supported by case law. He asserts that a seizure is equivalent to an arrest and that handcuffing the Plaintiff constituted an arrest. Neither of these assertions have a basis in the law. In fact, the opposite is true. "[N]either handcuffing

nor other restraints will automatically convert a Terry stop into a de facto arrest requiring probable cause." Kapperman, 764 F.2d at 791 n. 4. For purposes of a case, such as the instant case, where the heightened pleading standard is applicable the Plaintiff must do more than allege that he was handcuffed by *one* of the Defendants to establish that either Defendant arrested him.

V. **THE PLAINTIFF HAS FAILED TO SHOW THAT HE SUFFICIENTLY ALLEGED THAT THE DEFENDANTS MALICIOUSLY PROSECUTED HIM.**

In the Defendants' Brief in support of their Motion to Dismiss, they asserted that, because there is no allegation that the Defendants deceived or otherwise improperly influenced the prosecutor who alleged prosecuted the Plaintiff, the Plaintiff cannot recover against them in a malicious prosecution action. See Barts v. Joyner, 865 F.2d 1187 (11th Cir. 1989); Eubanks v. Gerwen, 40 F.3d 1157, 1160-61 (11th Cir. 1994). The Plaintiff failed to respond to this argument. Therefore, he has conceded the merits of this argument, and the Plaintiff's malicious prosecution claim is due to be dismissed. Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (finding that a party who fails to address an issue has waived it). Further, the Plaintiff has failed to cite any legal authority for his opposition to the Defendants' argument that they lack the power to prosecute the Plaintiff. The Plaintiff's malicious prosecution claim is also due to be dismissed based on the other arguments as set forth in the Defendants' Brief in support of their Motion to Dismiss.

VI. **THE PLAINTIFF HAS FAILED TO REBUT THE DEFENDANTS' ARGUMENT THAT HE HAS FAILED TO STATE A FOURTEENTH AMENDMENT CLAIM.**

The Plaintiff has failed to rebut any of the arguments set forth by the Defendants in support of their position that the Plaintiff's Fourteenth Amendment claims are due to be dismissed. Therefore, he has conceded the merits of this argument, and the Plaintiff's malicious prosecution claim is due to be dismissed. Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570,

1573 n.6 (11th Cir. 1989) (finding that a party who fails to address an issue has waived it).

### VII.   THE PLAINTIFF HAS FAILED TO MEET HIS BURDEN IN OVERCOMING THE DEFENDANTS' QUALIFIED IMMUNITY DEFENSE.

The Plaintiff has failed to meet his burden in showing that his constitutional rights were violated and that the Defendants were on notice that their conduct crossed a bright constitutional line.  Plaintiff relies on Hope v. Pelzer as if it was the death knell for qualified immunity.  536 U.S. 730 (2002).  Nothing could be further from the truth.  "[The Eleventh Circuit] undertake[s the qualified immunity] determination in light of the specific context of the case, not as a broad general proposition, in an effort to ensure that before [public officials] are subjected to suit, [they] are on notice their conduct is unlawful."  Williams v. Consolidated City of Jacksonville, 341 F.3d 1261, 1269-70 (11th Cir. 2003) (some internal citations omitted; internal quotation marks omitted); see also Willingham v. Loughnan, 321 F.3d 1299, 1300 (11th Cir. 2003) ("The Supreme Court decision in [Hope], did not change the preexisting law of the Eleventh Circuit much.").  Plaintiff, even post-Hope, must show that the Defendants were on notice that their conduct crossed a constitutional bright line, which most often requires a pre-existing factually similar case.  321 F.3d at 1303 (holding "preexisting, factually similar cases are--not always, but (in our experience) usually--needed to demonstrate that officials were fairly warned").  The Plaintiff has only cited two cases in support of his position that the Defendants are not entitled to qualified immunity – Redd v. City of Enterprise, 140 F.3d 1378, 1382 (11th Cir. 1998) and Von Stein v. Brescher, 904 F.2d 572, 579 (11th Cir. 1990).  The Plaintiff cites both these cases for the proposition that it is clearly established that an arrest without probable cause is unconstitutional.  The problem with the Plaintiff's assertion is that this statement is "a broad general proposition" that is inapplicable in the qualified immunity analysis.  Williams , 341 F.3d at 1269-70.  Further,

as set forth above, there are insufficient allegations showing that the Defendants actually arrested the Plaintiff or that there was a lack of arguable probable cause for the arrest. Accordingly, the Plaintiff has failed to meet his burden in defeating the qualified immunity defense with regard to the unlawful arrest claim.

The Plaintiff does not even attempt to meet his burden in overcoming the qualified immunity defense with regard to his unreasonable search, excessive force, and malicious prosecution claims. Therefore, he has conceded the merits of the qualified immunity defense with regard to these claims, and they are therefore due to be dismissed. Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (finding that a party who fails to address an issue has waived it).

## VIII. THE PLAINTIFF'S OPPOSITION TO THE DEFENDANTS' ABSOLUTE IMMUNITY DEFENSE IS BASED ON AN ERRONEOUS PRESENTATION OF THE LAW.

The Defendants based their Motion to Dismiss the Plaintiff's state law claims on their entitlement to absolute immunity. In their Brief in support of their Motion to Dismiss, the Defendants presented law conclusively establishing that they – as executive officers of the state - are entitled to absolute immunity from suit whether sued in their official or individual capacities even for their intentional acts. See, e.g., Ex parte Purvis, 689 So. 2d 794, 795-96 (Ala. 1996) (granting petition for writ of mandamus directing the trial court to dismiss complaint against sheriff and deputy sheriff based on sovereign immunity where it was undisputed that they were working in the line and scope of their employment").[4]

---

[4] As pointed out in the Defendants' Brief in support of their Motion to Dismiss, the Plaintiff has alleged that the Deputies were acting within the line and scope of their duties as Deputy Sheriffs. (See Doc. 1, Complaint, ¶¶ 4, 5, 43.)

The Plaintiff asserts that the Defendants are not entitled to absolute immunity where it is alleged that they "act[ed] willfully, maliciously, illegally, fraudulently, in bad faith, beyond [their] authority, or under a mistaken interpretation of the law." However, the Alabama Supreme Court rejected this argument in Ex parte Purvis, 689 So.2d at 795-96. In Ex parte Purvis, the Court stated that such an exception was not applicable to claims against sheriffs and deputy sheriffs but instead applied only to lower level state employees. Id. The court went on to grant the sheriff and deputy sheriff absolute immunity even where the Complaint alleged *intentional* wrongdoing. All the cases relied upon by the Plaintiff were decided prior to the Supreme Court's decision in Ex parte Purvis. Since the Supreme Court's clear mandate regarding *absolute* immunity for sheriffs and deputy sheriffs, neither the Supreme Court nor the Court of Civil Appeals have applied this exception to sheriffs and their deputies. Because the law upon which the Plaintiff relies is superseded by the Supreme Court's decision in Ex parte Purvis, the Defendants are entitled to absolute immunity as set forth in their Brief in Support of their Motion to Dismiss.

The Plaintiff also mentions discretionary function immunity. However, the Defendants did not assert discretionary function immunity because they are entitled to absolute immunity. The Supreme Court has bifurcated state law immunity into two types: absolute sovereign immunity afforded constitutional officers and a more limited "state-agent immunity" for lower level state employees. See Purvis, 689 So. 2d at 795-96 ("In the first place, [cases limiting immunity] did not deal with claims against a sheriff and a deputy sheriff or other constitutional officer, but instead dealt with 'intentional wrongful conduct' . . . involving state employees.") (internal citations omitted); Sheth v. Webster, 145 F.3d 1231, 1236 (11th Cir. 1998) ("Alabama law recognizes at least two types of immunity from suit or liability for the individual executive

acts of public officers[:]. . . absolute "sovereign" immunity, except for injunctive relief, afforded to certain state constitutional officers, including sheriffs and deputy sheriffs . . . [and] a form of immunity, not absolute, to state, as opposed to municipal and county, executive officers who do not hold constitutional offices"). The Defendants in the instant case are entitled to the more potent absolute immunity which is designed to protect executive officers of the state instead of the more exception-ridden state employee immunity provided for lower level state agents as described in Ex parte Cranman, 792 So. 2d 392 (Ala. 2000) and adopted in Ex parte Butts, 775 So. 2d 173, 178 (Ala. 2000).

Ex parte Cranman modified *only* the immunity granted state employees in general. It did not affect the pervasive absolute sovereign immunity given constitutional officers or other function-based categories of defendants:

> In Cranman, although we restated the rule governing state-agent immunity, we did not address the state immunity afforded to sheriffs and deputy sheriffs for actions taken while working in the line and scope of their employment, and we did not overrule Ex parte Purvis, 689 So. 2d 794 (Ala. 1996).

Ex parte Haralson, 853 So. 2d 928, 931 (Ala. 2003) (emphasis added). As stated above, the Cranman opinion itself explicitly exempted several types of absolute immunity (including that of sheriffs and deputies) from the reach of the Cranman reformulation:

> We do not deal here with the absolute immunity of witnesses, judges, prosecutors, and legislators, nor do we overrule Purvis, 689 So. 2d at 795 (Ala. 1996) [describing the absolute immunity of sheriffs and deputies]."

792 So. 2d at 396 n.2.

Discretionary function immunity protects lower-level state employees – not executive officers of the state such as the Defendants in this case. The case cited by the Plaintiff regarding discretionary function immunity does not involve immunity as applied to an executive

officer of the state such as a sheriff or deputy sheriff, but instead involved a *city* official. Couch v. City of Sheffield, 708 So.2d 144 (Ala. 1998).

The Plaintiff has missed the entire point of the Defendants' Argument in relying on the discretionary function immunity – a concept that is inapplicable in the instant case – to defeat the Defendants' Argument that they are entitled to absolute immunity. Because the Plaintiff has failed to rebut the Defendants' showing that they are entitled to absolute immunity, it is conclusively established that the Defendants' Motion to Dismiss the Plaintiff's state law claims is due to be granted.

> IX. **THE PLAINTIFF HAS FAILED TO SHOW THAT THEIR CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF ARE NOT DUE TO BE DISMISSED.**

The Plaintiff concedes that: "absent retaliation, he is unlikely to be subject to" any alleged unlawful acts in the future. (Doc. 8, Plaintiff's Response, p. 13.) Because the Plaintiff has not alleged any facts showing that he is in imminent danger of retaliation, his claims for declaratory and injunctive relief are due to be dismissed. Further, the Plaintiff has failed to respond to the Defendants' argument that Deputies West and Hutson in their individual capacities are not proper parties against whom claims for declaratory and injunctive relief may be brought. Therefore, the Plaintiff has conceded the merits of this argument, and the Plaintiff's claims for declaratory and injunctive relief are due to be dismissed. Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (finding that a party who fails to address an issue has waived it)

Based on the foregoing as well as the arguments set forth in their Motion to Dismiss, the Defendants Chris West and Lashun Hutson request that this Honorable Court enter an order dismissing all claims against them in this action.

**RESPECTFULLY SUBMITTED** this the 27th day of September, 2006.

          s/Daryl L. Masters
          DARYL L. MASTERS Bar No.  MAS018
          AMANDA KAY MORGAN Bar No. ALL079
          Attorneys for Defendants
          WEBB & ELEY, P.C.
          7475 Halcyon Pointe Drive (36117)
          P.O. Box 240909
          Montgomery, Alabama  36124
          Telephone:  (334) 262-1850
          Fax:  (334) 262-1889
          E-mail:  rrobertson@webbeley.com

### CERTIFICATE OF SERVICE

     I hereby certify that on **September 27, 2005**, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:  **Jay Lewis, Esq.**

          s/Daryl L. Masters
          **OF COUNSEL**