## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| RICHARD MARSHALL, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) CIV. ACT. NO. 2:06cv701-ID |
| v. | )        (WO) |
| | ) |
| CHRIS WEST, et al., | ) |
| | ) |
|     Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

## I.  INTRODUCTION

Plaintiff Richard Marshall ("Plaintiff") brings this civil rights lawsuit against Defendants Chris West and Lashun Hutson, who are sued in their individual capacities for alleged unconstitutional acts occurring within the line and scope of their authority as Alabama deputy sheriffs.[1]  Plaintiff brings constitutional claims against Defendants under the Fourth and Fourteenth amendments to the United States Constitution, as enforced by 42 U.S.C. § 1983, alleging an illegal traffic stop, excessive force, unlawful search, false arrest and malicious prosecution.  Plaintiff also asserts state-law claims of assault and battery and conversion.

This action presently is before the court on Defendants' motion to dismiss.  (Doc. No. 5.)  Plaintiff filed a response in opposition to the motion (Doc. No. 8), to which Defendants filed a reply.  (Doc. No. 9.)  Defendants contend that they are entitled to

---

[1] The court refers to Defendants collectively as "Defendants" and individually as "West" and "Hutson."

dismissal on all the constitutional claims for failure of Plaintiff to plead his claims in

sufficient detail to overcome Defendants' defense of qualified immunity, or, alternatively,

because Plaintiff has failed to plead any specific conduct by Defendants which violated

his clearly-established rights.  After careful consideration of the arguments of counsel and

the applicable law, the court finds that Defendants' motion to dismiss is due to be granted

in part and denied in part.

## II.  JURISDICTION AND VENUE

The court properly exercises subject matter jurisdiction over this action, pursuant

to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1343(a)(3) (civil rights

jurisdiction), and 28 U.S.C. § 1367 (supplemental jurisdiction).  The parties do not

contest personal jurisdiction or venue, and the court finds adequate allegations of both.

## III.  STANDARD OF REVIEW

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant

may move to dismiss a complaint because the plaintiff has failed to state a claim upon

which relief may be granted.  See Fed. R. Civ. P. 12(b)(6).  A Rule 12(b)(6) motion

questions the legal sufficiency of a complaint; therefore, in assessing the merits of a Rule

12(b)(6) motion, the court must assume that all the factual allegations set forth in the

complaint are true.  See, e.g., United States v. Gaubert, 499 U.S. 315, 327 (1991); Powell

v. Lennon, 914 F.2d 1459, 1463 (11th Cir. 1990).  Moreover, all factual allegations are to

be construed in the light most favorable to the plaintiff.  See, e.g., Brower v. County of Inyo, 489 U.S. 593, 598 (1989).

Rule 8(a)(2) of the Federal Rules of Civil Procedure generally sets the benchmark for determining whether a complaint's allegations are sufficient to survive a Rule 12(b)(6) motion.  See Bell Atlantic Corp. v. Twombly, No. 05-1126, ___ S.Ct. ___, 2007 WL 1461066, *8 (May 21, 2007).  In 42 U.S.C. § 1983 actions, however, where government officials sued in their individual capacities may be entitled to qualified immunity, the Eleventh Circuit has "tightened" the pleading requirements.  GJR Investments, Inc. v. County of Escambia, Fla., 132 F.3d 1359, 1367 (11th Cir. 1998); see also Magluta v. Samples, 256 F.3d 1282, 1284 (11th Cir. 2001) (recognizing that, in the Eleventh Circuit, a complaint must be pleaded with "heightened specificity . . . in civil rights actions against public officials who may be entitled to qualified immunity").  Accordingly, in determining whether a plaintiff has stated a § 1983 claim against a defendant in his or her individual capacity, courts must be "guided both by the regular 12(b)(6) standard and by the heightened pleading requirement."  GJR Investments, 132 F.3d at 1367.

Moreover, in the context of a Rule 12(b)(6) assertion of qualified immunity, "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."  Mitchell v. Forsyth, 472 U.S. 511 (1985).  As explained in Marsh v. Butler, "The Supreme Court has urged [courts] to apply the affirmative defense of qualified immunity at the earliest possible stage in litigation because the defense is

3

immunity from suit and not from damages only."  268 F.3d 1014 (11th Cir. 2001),

implicitly modified on other grounds by Hope v. Pelzer, 536 U.S. 730 (2002).  This

circuit, therefore, has recognized that, "[w]hile the defense of qualified immunity is

typically addressed at the summary judgment stage of a case, it may be . . . raised and

considered on a motion to dismiss."  St. George v. Pinellas County, 285 F.3d 1334, 1337

(11th Cir. 2002).


## IV.  FACTS

The facts in the complaint, which are taken as true for present purposes, are as

follows.[2]  On June 28, 2005, Plaintiff was driving a 1971 Chevrolet Nova in which his

cousin was a passenger.  (Compl. ¶ 8.)  Plaintiff "was peacefully and lawfully" driving

his car on a public road in Lowndes County, Alabama, when he observed a Lincoln Town

Car "approaching from the opposite direction at a high rate of speed."  (Compl. ¶¶ 8-9.)

The Lincoln "braked sharply" upon nearing Plaintiff's car, "turned around and began to

follow Plaintiff."  (Id. ¶ 10.)  The Lincoln, which continued to travel at a high rate of

speed, quickly caught up with and "pulled alongside" Plaintiff's vehicle.  (Id. ¶ 12.)

Plaintiff observed in the Lincoln two African-American males both of whom were

"wearing black tee shirts."  (Id. ¶ 13.)  At that time, neither the passenger nor the driver

---

[2]  This statement of facts may not represent the actual facts.  See Cottone v. Jenne, 326 F.3d 1352, 1355 & n.1 (11th Cir. 2003) ("Because we must accept the allegations of plaintiffs' amended complaint as true, what we set out in this opinion as 'the facts' for Rule 12(b)(6) purposes may not be the actual facts.").

"identified himself as a law enforcement officer." (Id. ¶ 15.)  The passenger "produced a semiautomatic pistol, waved it at Plaintiff, and gestured for him to pull over." (Id.)

Plaintiff, however, did not know either individual in the Lincoln Town Car (id. ¶ 13), and he declined "to pull over at the behest of an unknown, pistol-toting male."[3] (Id. ¶ 16.)  Plaintiff, therefore, continued driving, and the Lincoln "fell behind him, following him." (Id. ¶ 17.)

When Plaintiff turned west onto Highway 21, the Lincoln "suddenly sped up and again pulled alongside" Plaintiff. (Id. ¶ 18)  West, whose identity was still unknown to Plaintiff, again "waved his weapon at Plaintiff and gestured for him to pull over." (Id. ¶ 19.)  Because this stretch of highway "was mostly deserted," Plaintiff decided "to keep driving until he could get to a populated area[.]" (Id. ¶ 20.)  At that point, the Lincoln "fell back again, then sped up" and "ram[med] Plaintiff's vehicle in the rear." (Id. ¶ 21)  The driver of the Lincoln, who was Hutson, continued to ram the vehicle "between three and five times." (Id.)  Unsuccessful in stopping Plaintiff's car, Hutson executed a

---

[3] Plaintiff later learned that the driver of the Lincoln was Hutson and that the passenger was West. (Compl. ¶ 13.)  Plaintiff alleges that, "[a]t all times material hereto," Hutson and West were acting in their capacities as "officers, agents, or employees of the Sheriff of Lowndes County, Alabama, and were carrying out state action." (Id. ¶¶ 14, 43.)

"precision immobilization technique," also known as a "pursuit intervention technique" ("PIT").[4]  (Id. ¶ 22.)

The PIT maneuver was successful, causing Plaintiff's car to "spin out of control" and land in a ditch alongside the highway.  (Id. ¶¶ 22, 24.)  As a result of hitting his head on the steering wheel, Plaintiff was "dazed and slightly injured."  (Id. ¶ 25.)  Defendants then "leapt from their vehicle pointing guns at Plaintiff and his cousin, shouting for them to get down on the g[r]ound."  (Id. ¶ 26.)  Plaintiff "offered no resistance," but West nonetheless "discharged his weapon in Plaintiff's general direction, apparently as a warning," and presumably because Plaintiff did not act as "quickly" as West desired. (Id.)  The gunshot "frightened and alarmed Plaintiff[,] and he froze in place, still offering no resistance."  (Id. ¶ 27.)  West then "threw" Plaintiff "to the ground, handcuffed him, and stood him back up against his vehicle."  (Id. ¶ 28.)

West proceeded to "frisk[]" Plaintiff, rifling through his pants pockets and ripping his pants in the process.  (Id. ¶ 29.)  West also examined the contents of Plaintiff's wallet and retrieved from the wallet, among other items, approximately $500.00 in cash. Unknown to Plaintiff at the time, West returned only $100.00 to Plaintiff's wallet.  (Id. ¶¶ 29-30, 35.)  West and Hutson then conducted a warrantless search of Plaintiff's car.

---

[4] Plaintiff describes the PIT as "a maneuver by which the pursuing vehicle speeds up to bring its right front bumper even with the left rear quarter panel of the suspect vehicle."  (Compl. ¶ 22.)  "The pursuer then simultaneously slows and steers to the right, hitting the suspect vehicle and causing it to spin out of control."  (Id.)  "Meanwhile, the slowing pursuer is out of harm's way behind the spinning suspect vehicle."  (Id.) Plaintiff avers that "[t]he use of a PIT at speeds above 35 mph is generally considered by law enforcement agencies to be the application of deadly force."  (Id. ¶ 23.)

(Id. ¶¶ 31-32.)  Plaintiff does not expressly allege whether any incriminating items were found in the search, but he does state that, ultimately, he was charged with "possession of controlled substances and carrying a pistol without a license."  (Id. ¶ 36.)

After being transported to the Lowndes County jail, Plaintiff was "book[ed]."  (Id. ¶¶ 33-35.)  Plaintiff was then held for two days "without being charged" or informed of the basis for his detention.  (Id. ¶ 34.)

Plaintiff remained incarcerated from June 28, 2005, until August 5, 2005, when he was released on a $10,000 bond.  (Id. ¶ 37.)  Plaintiff alleges that he was in jail for this five-week period because the sheriff of Lowndes County refused to approve his aunt's efforts to "put up a property bond to secure his release."  (Id. ¶ 39.)  Plaintiff also alleges that he was "compelled to pay $1,200 as a premium in order to secure his bond."  (Id. ¶ 38.)  In January 2006, Plaintiff appeared in court to answer the charges, and the charges were dismissed.  (Id. ¶ 40.)

Seeking redress under federal and state laws, on August 8, 2006, Plaintiff filed the instant three-count complaint against West and Hutson, alleging violations of his First, Fourth and Fourteenth Amendment rights to the U.S. Constitution, as enforced by 42 U.S.C. § 1983.  (See id. ¶¶ 1, 4, 5, 44, 48, and p. 8 (a).)  West and Hutson are sued in their individual capacities only.  (Id. ¶¶ 4-5.)

In Count I of the complaint, which alleges multiple § 1983 Fourth Amendment claims, Plaintiff avers that there was no "probable cause" or "justification of any sort" for Defendants to use "deadly force" against him by "smashing into [his] vehicle" in order to

effectuate a traffic stop.  (Id. ¶¶ 48-49.)  Plaintiff further alleges that West employed

"deadly force against Plaintiff by aiming a weapon at him and by discharging it [] in his

general direction and in his immediate vicinity," thereby placing Plaintiff "in imminent

fear of his life[.]"  (Id. ¶¶ 49-51.)  Also in Count I, Plaintiff alleges that, because neither

probable cause nor exigent circumstances was present, Defendants conducted an

unreasonable warrantless search of his vehicle; that Defendants falsely arrested him

"without a warrant and without probable cause"; and that Defendants instituted a criminal

proceeding against him without probable cause.  (Id. ¶¶ 45, 52-54.)  In Counts II and III,

Plaintiff sets forth two state-law claims for assault and battery and conversion.  (Id.

¶¶ 57-64.)

        As relief, Plaintiff seeks a "declaratory judgment that the policies and practices

complained of herein are unlawful and violative of the Fourth and Fourteenth

Amendments to the United States Constitution," as enforced by 42 U.S.C. § 1983.  (Id.

at 8.)  Plaintiff also seeks $500,000.00 in compensatory damages, $500,000.00 in

punitive damages, costs to include attorney's fees, and any other equitable relief which

the court deems appropriate.  (Id.)


## V.  DISCUSSION

        As an initial matter, to streamline the issues which truly are controverted, the court

quickly disposes of the First Amendment claim.  Defendants point out that there are no

"facts or circumstances implicating the First Amendment," despite the cursory reference

to this amendment in the "Jurisdiction" section of the complaint.  (Doc. No. 6 at 20.)  In

response, Plaintiff admits that he does not raise a First Amendment claim in this lawsuit

and that the citation to the "First Amendment" in the "Jurisdiction" section of his

complaint is an "error."  (Doc. No. 8 at 2.)  Because Plaintiff disavows reliance on the

First Amendment, the court finds that the pleaded First Amendment claim is due to be

dismissed.  Although conceding this one point, Plaintiff "vigorously opposes the

remainder of the motion" filed by Defendants.  (Id.)

The remainder of Defendants' motion seeks dismissal of all other claims in the

complaint.  Challenging the viability of Count I, which alleges various Fourth

Amendment violations, Defendants assert two overarching grounds for dismissal pursuant

to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  First, Defendants argue that the

complaint fails to satisfy the heightened pleading requirements applicable in § 1983

actions where, as here, qualified immunity is at issue.  (Doc. No. 6 at 2-6); (Doc. No. 9

at 1-4.)  Second, assuming *arguendo* that the allegations are sufficiently specific,

Defendants assert that they are entitled to qualified immunity because Plaintiff has not

alleged conduct which violates the Fourth Amendment or demonstrated a violation of

clearly-established Fourth Amendment law.  (Doc. No. 6 at 6-21); (Doc. No. 9 at 4-11.)

Regarding the state-law claims asserted in Counts II and III, Defendants contend

that, in their individual capacities, they are "absolutely immune" from liability.  (Doc.

No. 6 at 21-22); (Doc. No. 9 at 11-14.)  The court will address each of Defendants'

arguments and Plaintiff's counter-arguments in turn, beginning with the § 1983 Fourth Amendment claims.

A.  42 U.S.C. § 1983: Fourth Amendment Claims

1.  *Qualified Immunity and Individual–Capacity Claims*

(a)  Heightened Pleading

As set out in the section titled  "Standard of Review," *supra*, to survive a motion to dismiss on qualified immunity grounds in § 1983 litigation, a plaintiff must comply with "the heightened pleading requirements" in that the facts must contain "'some specificity.'"  Dalrymple v. Reno, 334 F.3d 991, 996 (11th Cir. 2003) (quoting GJR Investments, Inc., 132 F.3d at 1367).  Invoking qualified immunity as a defense, Defendants seek dismissal, contending that Plaintiff has not complied with these more exacting pleading requirements.  Defendants point to various allegations in the complaint, asserting those averments amount to only "legal conclusions."  (Doc. No. 6 at 4.) Although Plaintiff does not dispute Defendants' contention that heightened pleading applies in this circuit where qualified immunity is at stake, Plaintiff contends that he "is not required to publish a book of facts in order to properly plead his case." (Doc. No. 8 at 2.)  He contends that his complaint is "sufficiently specific" under this circuit's standard.  (Id. at 2-5.)

The court is familiar with Defendants' line of argument and with the frustration which accompanies the daunting task of deciphering conclusory and vague complaints.  A

10

recurring problem this court has encountered when examining the sufficiency of a § 1983

complaint's allegations in the context of a Rule 12(b)(6) motion is a plaintiff's failure to

plead averments with minimal clarity and precision so that the court can resolve the issue

of qualified immunity at the earliest practical stage.  See, e.g., Hooper v. City of

Montgomery, ___ F. Supp.2d ___, 2007 WL 858411, *7 (M.D. Ala. 2007); Cobb v.

Marshall, ___ F. Supp.2d ___, 2007 WL 788423, *6-*7 (M.D. Ala. 2007); Walker v. H.

Councill Trenholm State Technical College, Civil Action No. 2:06CV49-ID, 2006 WL

2460592, *2-*3 (M.D. Ala. 2006).  The court, unfortunately, also is all too familiar with

"shotgun" complaints which are exceedingly time-consuming and waste valuable judicial

resources.  See Urbanique Prod. v. City of Montgomery, 428 F. Supp.2d 1193, 1202

(M.D. Ala. 2006) (DeMent, J.).  The problem of vague pleading is not unique to this

court; on multiple occasions, the Eleventh Circuit has voiced its disdain for shotgun

pleadings.  See Magluta v. Samples, 375 F.3d 1269, 1272-73 (11th Cir. 2004) (observing

that it repeatedly has condemned shotgun pleading); Strategic Income Fund, L.L.C. v.

Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1296 n.9 (11th Cir. 2002) ("This court has

addressed the topic of shotgun pleadings on numerous occasions in the past, often at great

length and always with great dismay.") (collecting cases); Cramer v. State of Florida, 117

F.3d 1258, 1263 (11th Cir. 1997) (observing that "[s]hotgun pleadings . . . exact an

intolerable toll on the trial court's docket, lead to unnecessary and unchannelled

discovery, and impose unwarranted expense on the litigants, the court and the court's

parajudicial personnel and resources," and delay justice "for the litigants who are 'standing in line,' waiting for their cases to be heard'") (collecting cases).

Here, however, the court finds that, although not a model complaint,[5] Plaintiff's complaint is not a shotgun pleading. It is not "so disorganized and ambiguous that it is almost impossible to discern precisely what it is [Plaintiff is] claiming." Cramer, 117 F.3d at 1261. Whether the complaint satisfies heightened pleading is a closer call; however, for the reasons articulated more fully in the next subsections, the court is persuaded that, as to all but one of the Fourth Amendment claims (i.e., the § 1983 malicious prosecution claim), the complaint's allegations are sufficiently specific to withstand a motion to dismiss even under this circuit's heightened pleading standard. As to the § 1983 malicious prosecution claim, though, the court finds that in this case dismissal as a first-round defense is too harsh a sanction to impose against Plaintiff. Instead, the court shall invoke its "inherent authority" and permit Plaintiff an opportunity to amend his complaint to allege a Fourth Amendment malicious prosecution claim which complies with the heightened pleading requirements applicable in this § 1983 individual-capacity action. Fikes, 79 F.3d at 1083; Barnett v. Bailey, 956 F.2d 1036, 1043 (11th Cir. 1992) ("[W]here . . . a complaint may not have contained sufficient information to allow a responsive pleading to be framed, 'a district court should give a plaintiff an opportunity

---

[5] The court notes, for example, that Count I contains multiple claims in contravention of the pleading rules set out in the Federal Rules of Civil Procedure. See, e.g., Fikes v. City of Daphne, 79 F.3d 1079, 1082 (11th Cir. 1996) ("By combining several claims for relief in each count, appellant disregarded the rules governing the presentation of claims to a district court.") (citing Fed. R. Civ. P. 8(a)(2), 10(b)).

to amend his complaint rather than dismiss it when it appears that a more carefully

drafted complaint might state a claim upon which relief could be granted.'") (citation

omitted).

### (b)  General Qualified Immunity Principles

A law enforcement officer may raise qualified immunity as an affirmative defense

to a § 1983 individual-capacity lawsuit.  See Wilson v. Strong, 156 F.3d 1131, 1135 (11th

Cir. 1998); see also Hill v. DeKalb Regional Youth Detention Ctr., 40 F.3d 1176, 1184

n.16 (11th Cir. 1994).  The doctrine of qualified immunity generally shields government

officials performing discretionary functions from civil liability when their conduct does

not violate clearly-established constitutional rights which a reasonable person would have

known.  See Hope v. Pelzer, 536 U.S. 730, 739-41 (2002); Harlow v. Fitzgerald, 457 U.S.

800, 818 (1982).  The test for whether a governmental defendant is entitled to qualified

immunity involves a two-step analysis.

Under the first step, the inquiry concerns whether the government official was

engaged in a "discretionary function."  Madiwale v. Savaiko, 117 F.3d 1321, 1324 (11th

Cir. 1997).  This inquiry requires the court to "'ask whether the act complained of, if

done for a proper purpose, would be within, or reasonably related to, the outer perimeter

of an official's discretionary duties.'"  Gray ex rel. Alexander v. Bostic, 458 F.3d 1295,

1303 (11th Cir. 2006) (citation omitted).  It is undisputed, and alleged by Plaintiff, that

Defendants were at all relevant times acting within the scope of their discretionary

authority as deputy sheriffs for the sheriff of Lowndes County, Alabama. (Compl. ¶¶ 4-5, 14); (Doc. No. 6 at 6). Accordingly, the court finds that Defendants have demonstrated their "eligibility for qualified immunity." Mathews v. Crosby, 480 F.3d 1265 (11th Cir. 2007).

After a defendant has demonstrated that he or she is eligible for qualified immunity, the burden shifts to the plaintiff. The qualified immunity test at this second juncture is twofold. As a "threshold question," the court asks, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show [the government official's] conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001). If under Plaintiff's version of the facts, his constitutional rights would have been violated, the court must determine whether those rights were "clearly established." Id. This inquiry focuses on whether the "state of the law" at the time of the alleged violation provided the government officials with "fair warning that their alleged treatment of the [plaintiff] was unconstitutional." Hope, 536 U.S. at 741.

## (c) Fourth Amendment Illegal Traffic Stop Claim

Plaintiff alleges a series of Fourth Amendment violations which he says commenced with an unlawful traffic stop. He says that the traffic stop is unlawful because West and Hutson lacked probable cause or any other justification (i.e., reasonable suspicion) of criminal activity before stopping Plaintiff's vehicle. Proceeding in accordance with the principles espoused in the preceding subsection, the court turns

14

first to whether Plaintiff's allegations, presumed at this stage to be true, establish a Fourth Amendment claim for an illegal traffic stop.

Defendants say that Plaintiff has not stated such a claim for two primary reasons. First, Defendants contend that the complaint fails to sufficiently plead the absence of arguable reasonable suspicion. Second, and alternatively, Defendants argue that, even assuming that initially there was no basis to stop Plaintiff's vehicle, Plaintiff's refusal to pull over at their behest presents a new crime which provided an independent basis for the stop.

Confined to the allegations of the complaint, the court disagrees with Defendants on both points. First, in light of the specific circumstances of this case, because the information which prompted and preceded the traffic stop rests within the control of Defendants, the court finds that Plaintiff has carried his burden under the intertwined Rule 12(b)(6) and heightened pleading standards applicable in this action. See GJR Investments, 132 F.3d at 1367. Hence, the court finds that Defendants have not presented a valid argument for dismissing the Fourth Amendment illegal traffic stop claim for failure of Plaintiff to satisfy the heightened pleadings requirements. Second, the court finds that the facts do not support a finding at this stage that Plaintiff committed a new offense. After setting out the general Fourth Amendment principles applicable to traffic stop, the court explains its reasoning.

*(i)  Fourth Amendment Law Applicable to Traffic Stops*

The Fourth Amendment provides, in pertinent part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  U.S. Const. amend. IV.  The Fourth Amendment is applicable to the states through the Fourteenth Amendment.[6]  See Michigan v. Summers, 452 U.S. 692, 694 n.2 (1981).

A traffic stop is a seizure under the Fourth Amendment.  See United States v. Ramirez, 476 F.3d 1231, 1236 (11th Cir. 2007) (quoting Delaware v. Prouse, 440 U.S. 648, 653 (1979)).  Under the Fourth Amendment, "law enforcement may stop a vehicle when there is probable cause to believe that the driver is violating any one of the multitude of applicable traffic and equipment regulations relating to the operation of motor vehicles."  United States v. Cooper, 133 F.3d 1394, 1398 (11th Cir. 1998)

---

[6] In his complaint, Plaintiff does not recite any particular clause of the Fourteenth Amendment; however, Defendants move for dismissal of the Fourteenth Amendment claim to the extent that Plaintiff seeks to invoke a substantive due process claim, contending that the Fourth Amendment, not the Fourteenth Amendment, "'provides an explicit textual source of constitutional protection.'"  (Doc. No. 6 at 20-21 (quoting Albright v. Oliver, 510 U.S. 266, 273 (1994)); see also United States v. Lanier, 520 U.S. 259, 272 (1997) ("[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.").  In his response, Plaintiff did not specifically address Defendants' argument, stating only that he [Plaintiff] "properly invoked the Fourth and Fourteenth Amendments[.]" (Doc. No. 8 at 2.)  Given the absence of any discussion by Plaintiff of an independent substantive Fourteenth Amendment claim and finding none in the complaint, the court finds that Plaintiff has not raised a separate Fourteenth Amendment claim.  Rather, the court finds that Plaintiff has cited the Fourteenth Amendment because the Fourth Amendment is applicable to the states through the Fourteenth Amendment.

(quotation and citation omitted); Whren v. United States, 517 U.S. 806, 810 (1996) ("[a]s a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred," no matter how minor a violation it is).  Probable cause exists when "'the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed or is about to commit an offense.'"  Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir. 1998) (quoting Williamson v. Mills, 65 F.3d 155, 158 (11th Cir. 1995)). Hence, "[w]hether probable cause exists is 'viewed from the standpoint of an objectively reasonable police officer[.]'"  United States v. Chanthasouxat, 342 F.3d 1271, 1276 (11th Cir. 2003).

A traffic stop also comports with the Fourth Amendment when a law enforcement officer has "reasonable suspicion" to believe that criminal activity "may be afoot"; in these instances, the validity of a traffic stop is analyzed under the reasonable suspicion standard articulated in Terry v. Ohio, 392 U.S. 1 (1968).  See United States v. Arvizu, 534 U.S. 266, 273 (2002).  "[T]he police may stop and briefly detain a person to investigate a reasonable suspicion that he is involved in criminal activity, even though probable cause is lacking."  United States v. Williams, 876 F.2d 1521, 1523 (11th Cir. 1989); see Berkemer v. McCarty, 468 U.S. 420, 439 (1984) ("a policeman who lacks probable cause but whose observations lead him reasonably to suspect that a particular person has committed, is committing, or is about to commit a crime, may detain that

17

person briefly in order to investigate the circumstances that provoke that suspicion."). "[R]easonable suspicion is determined from the totality of the circumstances and from the collective knowledge of the officers involved in the stop." Williams, 876 F.2d at 1523; United States v. Tapia, 912 F.2d 1367, 1370 (11th Cir. 1990).  Furthermore, "[w]hile 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." Illinois v. Wardlow, 528 U.S. 119, 123 (2000) (citing Terry, 392 U.S. at 30).  In sum, "a traffic stop is a constitutional detention if it is justified by reasonable suspicion under Terry or probable cause to believe a traffic violation has occurred under Whren," *supra*. Chanthasouxat, 342 F.3d at 1275.

Moreover, in the context of the Fourth Amendment, when a defendant raises the defense of qualified immunity, the standard is not actual probable cause or actual reasonable suspicion, but "arguable" probable cause/reasonable suspicion.  Madiwale, 117 F.3d at 1324 (discussing arguable probable cause); Jackson v. Sauls, 206 F.3d 1156, 1165-66 (11th Cir. 2000) (discussing arguable reasonable suspicion).  Under the qualified immunity inquiry, the issue for determining whether Plaintiff has alleged a Fourth Amendment violation is whether an objectively reasonable officer in the same circumstances and possessing the same information as the defendant *could have believed* that probable cause or reasonable suspicion existed.  See Crosby v. Monroe County, 394 F.3d 1328, 1332-33 (11th Cir. 2004) (arguable probable cause exists "if, under all of the

18

facts and circumstances, an officer reasonably could – not necessarily would – have believed that probable cause was present"); <u>Jackson</u>, 206 F.3d at 1165-66.

### (ii)  Application of the Law to the Facts

#### a.  The Initial Basis for the Stop

As alleged in the complaint, Plaintiff's and Defendants' paths crossed only briefly during the minutes immediately preceding the traffic stop, as Plaintiff and Defendants were traveling in opposite directions on the road.  When finally their paths converged, and Defendants turned around and followed Plaintiff, Plaintiff avers that he was (and had been for the duration of his travels that day) driving "peacefully" and "lawfully," and that, therefore, neither West nor Hutson observed Plaintiff violate the law at that time. (Compl. ¶¶ 8-10.)

Defendants have not argued that, by these averments, arguable (or for that matter actual) probable cause or reasonable suspicion existed for Defendants to stop Plaintiff for a traffic violation.  Rather, Defendants state that a law enforcement officer may conduct a <u>Terry</u> stop based upon a suspect's conduct which falls short of unlawful activity.  To this end, Defendants contend that Plaintiff's averments do not preclude the possibility that Plaintiff was engaging in activities, which although seemingly innocent on their face, nonetheless gave rise to arguable reasonable suspicion to support the traffic stop or that Defendants "were aware" that Plaintiff had committed a crime.  (Doc. No. 6 at 4-5); (Doc. No. 9 at 1-2.)

Plaintiff, on the other hand, contends that the principal focus of the probable cause/reasonable suspicion inquiry turns on the information known to Defendants at the time of the stop and that he should not be required to speculate as to any alleged facts known to Defendants. (Doc. No. 8 at 2.) For the reasons to follow, the court agrees with Plaintiff that, in this case and on this claim, the issue of qualified immunity cannot be resolved at the motion to dismiss stage.[7]

Initially, the court observes that Defendants are correct that "'[a] reasonable suspicion of criminal activity may be formed by observing exclusively legal activity,' . . . even if such activity is 'seemingly innocuous to the ordinary citizen.'" United States v. Lindsey, 482 F.3d 1285, 1290 (11th Cir. 2007) (citations omitted). The specific question of whether Plaintiff's conduct, although innocent on its face, gave rise to reasonable suspicion to a trained law enforcement eye and the overall reasonableness inquiry under the Fourth Amendment focus on the facts known to West and Hutson and whether those known facts would support a reasonable officer's belief that arguable reasonable suspicion existed to make a traffic stop. In other words, the critical question is whether West and/or Hutson were aware of facts which arguably would have justified a

---

[7] The court emphasizes that it expresses no opinion as to whether after consideration of evidence on summary judgment Defendants will be entitled to qualified immunity. See St. George, 285 F.3d at 1336 n.3.

reasonable suspicion of illegal activity.[8]    Plaintiff essentially has argued that, without the

benefit of discovery, it is impossible for him to allege those facts because he does not

know what, if any, information Defendants possessed when they initiated the traffic stop.[9]

Obviously, Plaintiff cannot be required to plead facts of which he is unaware.    See

Hollingsworth v. Edgar, Civ. A. No. 2:04cv935-WKW, 2006 WL 2009104, *7 (M.D.

Ala. July 18, 2006) ("No plaintiff could be expected to allege facts of which only the

defendants have knowledge and control.").

    Given the unique circumstances of this case, the court finds that it is appropriate to

deny the motion to dismiss because the qualified immunity inquiry turns on facts which

---

[8] Cf. Anderson, 483 U.S. at 641 ("[T]he determination whether it was objectively legally reasonable to conclude that a given search was supported by probable cause or exigent circumstances will often require examination of the information possessed by the searching officials."); Gomez v. Toledo, 446 U.S. 635, 640 (1980) (recognizing that frequently whether qualified immunity "has been established depends on facts peculiarly within the knowledge and control of the defendant," and unknown to the plaintiff); U.S. v. Tinkle, 655 F.2d 617, 621 (5th Cir. 1981) ("in analyzing whether probable cause exists we must consider all of the relevant factors viewed from the perspective of the arresting officer"); Beaulah v. Muscogee County Sheriff's Deputies, 447 F. Supp.2d 1342, 1361 (M.D. Ga. 2006) (observing that the answer to the question of whether the law enforcement officials had arguable reasonable suspicion to direct a traffic stop "depends upon what information [the officers] had available to them at the time that they ordered the stop").

[9] The averments in the complaint are not inconsistent with Plaintiff's argument. For example, in some instances, an officer will communicate the reason for the stop to the suspect, and, when that reason is undisputed, a motion to dismiss presents a proper procedural device to assess an officer's entitlement to qualified immunity.    See Wilson v. Dep't of Public Safety, 66 Fed. Appx. 791, *3 (10th Cir. 2003).  Here, though, Plaintiff alleges that he was arrested and detained for two days "without being charged and without being informed of any reason for his [detention]."  (Compl. ¶ 34.)  Construing all inferences in favor of Plaintiff, the court finds that it is reasonable to infer from paragraph 34 of the complaint that Defendants did not inform Plaintiff of any reason for the stop.

are within the knowledge and control of Defendants.  The facts surrounding the

information *known to Defendants* through their investigation and observations and the

inferences and deductions to be drawn from those facts, therefore, are not contained in

the complaint.  No proper purpose would be served by penalizing Plaintiff and dismissing

his claim prior to discovery because he failed to plead facts of which he says he is

unaware.  As recited in the margin, other courts have denied qualified immunity at the

Rule 12(b)(6) stage on similar grounds.[10]

---

[10] See Velez v. Levy, 401 F.3d 75, 101 (2d Cir. 2005) (while defendant is not entitled to qualified immunity on motion to dismiss, the "factual basis for qualified immunity may arise as the proceedings develop"); Taylor v. Vermont Dep't of Educ., 313 F.3d 768, 793-94 (2d Cir. 2002) (ruling on qualified immunity defense premature because "[t]he qualified immunity issue . . . turns on factual questions that cannot be resolved at this stage of the proceedings;" for instance, "[t]he objective reasonableness of [the defendants'] acts depends in part on what information they had at the time"); Day v. Morgenthau, 909 F.2d 75, 78 (2nd Cir. 1990) (denying qualified immunity on motion to dismiss Fourth Amendment false arrest and unreasonable search claims "because the complaint does not identify what facts were known to [defendants] at the time of the arrest and search"); Bame v. Clark, 466 F. Supp.2d 105, 110 (D.D.C.  2006) (denying qualified immunity on motion to dismiss "[g]iven that the constitutionality of the strip searches depends, *inter alia*, upon what facts were known to and considered by the officers who conducted the searches"); Holmes v. Artuz, 95 Civ. 2309, 1995 WL 634995, *2 (S.D.N.Y. Oct. 27, 1995) (denying qualified immunity defense on a Rule 12(b)(6) motion due to sparse factual record before the court); cf. Freedman v. City of Allentown, 853 F.2d 1111, 1114 (3d Cir. 1988) ("when the lack of factual specificity is fairly attributable to defendant's control of required information, we have permitted the action to proceed to 'a reasonable amount of discovery to help [plaintiff] make the necessary showing to prove her case'"); Dockery v. Tucker, 73 F. Supp.2d 224, 240 n.13 (E.D.N.Y. 1998) (denying summary judgment because qualified immunity "depends on the information possessed by the particular law enforcement officer" and no such evidence had been presented).

b.  New and Independent Crime

Defendants argue that the traffic stop was nonetheless justified on an alternative ground.  Defendants aver that, even assuming *arguendo* that there was no arguable reasonable suspicion to initially make a traffic stop, the complaint demonstrates that Plaintiff committed a new crime by refusing to pull over when directed to by a law enforcement official.  They assert that this new crime justifies the stop, the level of force used to effectuate the stop, the warrantless arrest and the contemporaneous search of Plaintiff's vehicle.  (See Doc. No. 6 at 10-16.)  Defendants cite the Code of Alabama, § 32-5A-193(a) (1975), as the law which Plaintiff broke in refusing to obey their directives to pull over.  This Alabama statutory provision provides that

> [a]ny driver of a motor vehicle who willfully fails or refuses to bring his vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police vehicle, when given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a misdemeanor.  The signal given by the police officer may be by hand, voice, emergency light or siren.

Ala. Code § 32-5A-193(a) (1975).

There is authority to support the legal underpinning of Defendants' argument.  In this circuit, if a suspect's reaction to an illegal traffic stop "is itself a new, distinct crime, then the police constitutionally may arrest the [suspect] for that crime."  United States v. Bailey, 691 F.2d 1009, 1017 (11th Cir. 1982).  The Bailey court opined that "[a] contrary rule would virtually immunize a defendant from prosecution for all crimes he might commit that have a sufficient causal connection to the police misconduct."  Id.

For Plaintiff to have committed a new criminal act by resisting Defendants' efforts to effectuate a traffic stop, in violation of § 32-5A-193(a), however, the facts must demonstrate that Plaintiff knew that he was eluding or refusing to heed a law enforcement officer's signal to stop. Defendants recognize this "knowledge" prerequisite by arguing that the complaint fails to sufficiently allege that Plaintiff did not know that "West and Hutson were law enforcement officers." (Doc. No. 6 at 4.) Defendants also contend that the complaint is deficient because there are no allegations establishing that West and Hutson did not have "any badges or other law enforcement insignia on their person or vehicle." (Doc. No. 6 at 4.); (Doc. No. 9 at 2.)

Having considered Defendants' argument and Plaintiff's response, the court finds, first, that it logically may be inferred that the Lincoln Town Car did not bear resemblance to the typical marked law enforcement vehicle, and, for present purposes, the court accepts the representation of Plaintiff's counsel on this point. (See Doc. No. 8 at 3 (¶¶ 2-3), 6 and Fed. R. Civ. P. 11(b)(3).) Second, Plaintiff has alleged that he did not know either West or Hutson, that Defendants were in plain clothes (i.e., black tee shirts), and that West, without identifying himself as a law enforcement officer, pointed a pistol out the window directly at Plaintiff. (See Compl. ¶¶ 13, 15-16, 19.) The court finds that these allegations support the inference that Plaintiff believed that he was being directed to pull over in a threatening manner by two men in street clothes, not by law enforcement officers. The court, therefore, rejects Defendants' argument that there are facts presently from which it can be determined that Defendants had arguable reasonable suspicion or probable cause to believe that Plaintiff had violated § 32-5A-193(a) of the Code of

Alabama.  Cf. Jackson, 206 F.3d at 1166 (finding under summary judgment standard that, if a jury credited plaintiffs' version of facts, no arguable reasonable suspicion existed for the officers' investigative stop where evidence showed, among other things, that plaintiffs were in compliance with all traffic laws and that plaintiffs believed that undercover, plain-clothed officers were "armed robbers about to harm them").  Accordingly, the court finds that West and Hutson are not entitled to qualified immunity at this stage of the proceedings on Plaintiff's Fourth Amendment illegal stop claim.

(d)  Fourth Amendment False Arrest and Unlawful Search Claims

Plaintiff also alleges Fourth Amendment false arrest and unlawful search claims in Count I.  The viability of Defendants' substantive arguments seeking dismissal of these two claims hinges on the existence of a legal traffic stop.  (See, e.g., Doc. No. 6 at 9-12.) Having found that Plaintiff has sufficiently alleged an unlawful traffic stop, the court also finds that the § 1983 false arrest and unlawful search claims survive the instant motion to dismiss.

In addition to proffering substantive arguments, Defendants also complain of pleading deficiencies.  Defendants contend that Plaintiff has not "sufficiently allege[d]" that either West or Hutson is the individual who "actually arrested him."  (Doc. No. 6 at 17); (Doc. No. 9 at 3.)  The court finds that it matters not which officer officially informed Plaintiff that he was under arrest prior to Plaintiff being transported to the jail. For present purposes, the court finds that Defendants' presence at the scene (see Compl.

¶¶ 22, 24, 26, 28-31) is sufficient for Plaintiff's § 1983 false arrest claim to survive scrutiny on a motion to dismiss because if a law enforcement officer "'whether supervisory or not, fails or refuses to intervene when a constitutional violation . . . takes place in his presence, the officer is directly liable under Section 1983.'" Ensley v. Soper, 142 F.3d 1402, 1407 (11th Cir. 1998) (quoting Byrd v. Clark, 783 F.2d 1002, 1007 (11th Cir. 1986)); see also Genia v. New York State Troopers, No. 03-CV-0870, 2007 WL 869594, *5 (E.D.N.Y. March 20, 2007) ("an officer who merely observes or assists in an arrest, even if he is not the 'arresting officer' may be liable for failing to intercede to prevent an arrest without probable cause"). Accordingly, the court finds that Defendants' motion to dismiss the § 1983 false arrest and unlawful search claims is due to be denied.

### (e) Fourth Amendment Excessive Force Claims

Count I also contains allegations of excessive force. Defendants' arguments for dismissal as to this claim fail on two grounds. First, Defendants' arguments are predicated upon facts which cannot be inferred from the complaint. (Doc. No. 6 at 13-17.) For example, urging dismissal, Defendants argue that the level of force used to effectuate the traffic stop was reasonable under the circumstances because Plaintiff was evading arrest by flight and posed "an immediate threat to the safety of [Hutson and West]." (Id. at 15.) The facts in the complaint, as discussed in other parts of this opinion, however, do not support a finding that Plaintiff knew he was fleeing a law enforcement officer or that, either before or after Defendants pulled alongside Plaintiff's

26

vehicle, the manner in which Plaintiff was driving put in danger the lives of Defendants, pedestrians or civilian motorists.  There are no facts from which it can be inferred that Plaintiff was driving unlawfully, recklessly or at a high speed.  Cf. Scott v. Harris, 127 S.Ct. 1769, 2007 WL 1237851, *5-*7 (April 30, 2007) (holding that "[a] police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death").

Second, in order to resolve Defendants' arguments in their favor, the court must make the assumption that the traffic stop and the arrest were lawful, but the court finds that Plaintiff has not made these alternative assumptions in pleading his claims.  The Eleventh Circuit's opinion in Gray illustrates the court's point.

In Gray, a § 1983 lawsuit, a student alleged that a deputy sheriff, who also worked as a school resource officer at the student's elementary school, employed excessive force by handcuffing her arms behind her back "because he lacked a right to detain her at all." 458 F.3d at 1304.  The Eleventh Circuit held that the student's allegations of excessive force did not present an independent Fourth Amendment claim, but rather were subsumed into her illegal seizure claim.  Id. (citing Bashir v. Rockdale County, 445 F.3d 1323, 1331 (11th Cir. 2006) ("[u]nder this Circuit's law . . . a claim that any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim" (quotation marks omitted)).  The Eleventh Circuit noted, as further explanation of its holding, that the student had "not argued that the handcuffing

27

constituted excessive force even if [the deputy sheriff's] stop was supported by
reasonable suspicion." Id. at 1304 n.6.

Applying Gray to the facts in the complaint in this case, Plaintiff has not alleged
(or argued) that Defendants' use of the PIT maneuver or the manner in which West
employed his weapon constitute excessive force even if the seizures at issue (i.e., the
traffic stop and the arrest) were lawful.[11]  Rather, Plaintiff has alleged that he was driving
"lawfully" and that there was no "probable cause" or "justification of any sort" for
Defendants to "aim[] a weapon" and "smash[]" into Plaintiff's vehicle in order to
effectuate a traffic stop or to aim and "discharg[e] [a] weapon" at him in order to
effectuate an arrest.  (Compl. ¶¶ 15, 19, 26, 48-50); (see also Doc. No. 8 at 5-6.)  In other
words, Plaintiff alleges that any force in effectuating the stop or arrest was
unconstitutional because Defendants had no legal basis to stop or arrest him in the first
place.  Consequently, pursuant to Gray, the court finds that Plaintiff's § 1983 excessive
force allegations merge into the § 1983 illegal stop and unlawful arrest claims and do not

---

[11] It is worth reiterating that Plaintiff's complaint is not a model of clarity,
particularly regarding Count I which lumps together all Fourth Amendment claims.
Hence, Defendants' argument is understandable.

present an independent claim for relief.[12]  Defendants' arguments urging dismissal of an

independent excessive force claim, therefore, essentially are moot.

### (f)  Fourth Amendment Malicious Prosecution Claim

Plaintiff also brings a § 1983 malicious prosecution claim against Defendants.

Plaintiff alleges that he was "charged with possession of controlled substances and

carrying a pistol without a licence," but that these charges subsequently were dismissed

in court on his first appearance.  (Compl. ¶¶ 36, 40.)  Consequently, Plaintiff avers that

"Defendants instituted a criminal proceeding [against] Plaintiff without probable cause."

(Id. ¶ 54.)  Defendants move for dismissal of this claim, contending in part that the

---

[12] The court's finding that the foregoing allegations of excessive force are inseparable from the illegal stop and unlawful arrest claims does not mean that Plaintiff is precluded from recovering damages for excessive force, if ultimately he prevails on the illegal stop and unlawful arrest claims.  In Bashir, supra, which pronounced that "an excessive force claim . . . predicated solely on allegations the arresting officer lacked the power to make an arrest . . . is subsumed within . . . the unlawful arrest claim," the Eleventh Circuit explained:

> [T]he damages recoverable on an unlawful arrest claim "include damages suffered because of the use of force in effecting the arrest." . . . Motes v. Myers, 810 F.2d 1055, 1059 (11th Cir. 1987) (stating that "[i]t is obvious that if the jury finds the arrest unconstitutional, the use of force and the search were unconstitutional and they become elements of damages for the § 1983 violation").  But, to permit a jury to award damages on Bashir's excessive force and unlawful arrest claims individually "would allow [him] to receive double the award for essentially the same claims."  Cortez v. McCauley, 438 F.3d 980, 996 (10th Cir. 2006).

445 F.3d at 1332.

factual predicate of his § 1983 malicious prosecution claim is too sparse to satisfy the

heightened pleading requirements and that, therefore, the claim is subject to dismissal.

For the reasons to follow, the court agrees with Defendants that Plaintiff's averments are

conclusory; the court, however, will provide Plaintiff an opportunity to rectify the

deficiencies.

The Fourth Amendment protects individuals from malicious prosecutions.  See

Wood v. Kesler, 323 F.3d 872, 881 (11th Cir. 2003) ("Our Court has identified malicious

prosecution as a violation of the Fourth Amendment and a viable constitutional tort

cognizable under § 1983."); Uboh v. Reno, 141 F.3d 1000, 1002-03 (11th Cir. 1998)

(addressing § 1983 malicious prosecution claims); see also Whiting v. Traylor, 85 F.3d

581, 584 & n.4 (11th Cir. 1996) (holding that the "right" to be free from malicious

prosecution "is actually a description of the right to be free from an unlawful seizure

which is part of a prosecution").  A Fourth Amendment malicious prosecution claim

requires a plaintiff to prove "a violation of his Fourth Amendment right to be free from

unreasonable *seizures*, in addition to the elements of the common law tort of malicious

prosecution."  Wood, 323 F.3d at 881.  Under Alabama law, the common law tort of

malicious prosecution requires a plaintiff to show the following:  "(1) a prior judicial

proceeding was instituted by the defendant . . .; (2) the defendant acted without probable

cause in the prior proceeding; (3) the defendant acted with malice in instituting the prior

proceeding; (4) the prior proceeding ended in favor of the plaintiff; and (5) the plaintiff was damaged." U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1289-90 (11th Cir. 2001).

Defendants argue that Plaintiff has not adequately alleged common-law elements (1), (2) and (3). (Doc. No. 6 at 18-19.) The court summarily rejects Defendants' argument pertaining to elements (2) and (3). Namely, based on the discussion in the preceding subsections, Defendants cannot prevail at this stage of the litigation on their arguments that the existence of arguable probable cause for Plaintiff's arrest defeats Plaintiff's malicious prosecution claim because probable cause is lacking on the face of the complaint. (See Doc. No. 6 at 18.) Moreover, regarding Defendants' argument that Plaintiff has not sufficiently alleged that Defendants acted with malice, the alleged complete absence of probable cause for the arrest provides a basis from which malice may be inferred. See Delchamps, Inc. v. Bryant, 738 So.2d 824, 833 (Ala. 1999); Nesmith v. Alford, 318 F.2d 110, 123 (5th Cir. 1963).[13]

Defendants' final argument for dismissal, however, warrants more discussion. West and Hutson contend that, even assuming that arguable probable cause for Plaintiff's arrest was wholly lacking, Plaintiff has not sufficiently alleged that the criminal prosecution was instituted or continued "*by Defendants West and Hutson*," as required under the first common-law element. (Doc. No. 6 at 18 (emphasis in Defendants' brief));

---

[13] In Bonner v. City of Prichard, the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981. See 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

31

(Doc. No. 9 at 3.)  Specifically, Defendants argue that, absent a showing of deception, which they say is patently lacking on the face of the complaint, Plaintiff cannot recover on a § 1983 malicious prosecution claim against them because the prosecutor is an intervening party who breaks the chain of causation.  (Id. at 19.)

In support of their argument, Defendants rely upon Eubanks v. Gerwen, 40 F.3d 1157, 1161 (11th Cir. 1994), and Barts v. Joyner, 865 F.2d 1187, 1195 (11th Cir. 1989). In Eubanks, the plaintiff (Eubanks) alleged, among other claims, a § 1983 malicious prosecution claim against a police chief and two police detectives.  See 40 F.3d at 1159, 1160.  Holding that the defendants were entitled to summary judgment on this claim, the Eleventh Circuit reasoned:

> The evidence in the record reveals that none of the defendants had anything to do with the decision whether or not to prosecute Eubanks.  Thus the defendants herein are not proper targets of such a claim.  In the within case, if the entire sequence of events, including those relevant to the arrest, is examined, it becomes clear that none of the defendants were responsible for the decision to prosecute, and that none of them improperly influenced the decision to prosecute.  They did fully apprise the State Attorney of all relevant information known to them, including that which weighed for and against Eubanks' guilt.

Id. at 1160-61 (internal citations omitted); see also Reed v. City of Chicago, 77 F.3d 1049, 1053 (7th Cir. 1996) (observing "the State's Attorney, not the police, prosecutes a criminal action").

In Eubanks, the court cited its prior opinion in Barts, *supra*.  In Barts, discussing the measure of damages to which the plaintiff would be entitled on her Fourth

32

Amendment unreasonable seizure claim against two deputy sheriffs, the Eleventh Circuit

held as follows:  "The intervening acts of the prosecutor, grand jury, judge and

jury–assuming that these court officials acted without malice that caused them to abuse

their powers–each break the chain of causation unless plaintiff can show that these

intervening acts were the result of deception or undue pressure by the defendant

policemen."  865 F.2d at 1195.  Similarly, in <u>Whiting</u>, which cites <u>Eubanks</u>, *supra*, with

approval, the Eleventh Circuit noted that

> [r]ecovery of damages is limited to those injuries proved to be caused by
> the defendants.  This lawsuit is against arresting officers.  In many cases,
> arresting officers will not be responsible for the continuation of the
> prosecution because the prosecutor (or some other factor) will break the
> causal link between defendants' conduct and plaintiff's injury.

85 F.3d at 586 n.10.

Although <u>Eubanks</u>, <u>Barts</u> and <u>Whiting</u> were decided in different contexts than the

instant case,[14] the court finds that the legal principles espoused in these cases are

instructive.  The court, though, is mindful that, in applying those principles to the facts at

hand, it must be guided by the standard of review applicable on motions to dismiss where

qualified immunity is at issue.  With that said, it is doubtful that it is sufficient even under

notice pleading for Plaintiff to allege, as he has, that West and Hutson "instituted"

criminal proceedings against him.  See <u>Bell</u>, ___ S.Ct. at ___, 2007 WL 1461066, *8

("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

---

[14] <u>Eubanks</u> was decided under the summary judgment standard, and the principles
espoused in <u>Barts</u> and <u>Whiting</u> were discussed in the context of damages and causation.

factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."). It, though, is clear that, under the applicable heightened pleading rules, the lone averment "instituted" does not permit the court to make an informed decision as to whether Hutson and West are "proper targets" of a § 1983 malicious prosecution claim. Eubanks, 40 F.3d at 1160.

Applying Eubanks, Barts and Whiting, there are no allegations in the complaint suggesting that Defendants hid pertinent information from any judicial officer or prosecuting official, falsified any facts or otherwise "improperly influenced" the State's ultimate decision to pursue charges against Plaintiff. In this regard, the court observes that the fact that Plaintiff alleges he was booked and eventually released on bond suggests that a judge or magistrate found probable cause for the arrest. The judicial decision of probable cause would constitute an intervening cause, absent undue pressure or deception on the part of Defendants. Plaintiff simply has failed to allege how West and Hutson tainted any judicial or prosecutorial decision.

Without citing any authority, Plaintiff argues that Defendants cannot "hide securely behind their lack of prosecutorial credentials" to avoid liability when Defendants' actions of arresting him without probable cause resulted in Plaintiff spending five weeks in jail before the sheriff approved his bond. (Doc. No. 8 at 11.) It is true that West and Hutson started the chain of events which led to formal charges being brought

34

against Plaintiff. The "but for" causation test, however, is not the standard under Eubanks, *supra*. The court must determine whether any judicial, prosecutorial or other act broke that chain.

In short, the court disagrees with Plaintiff that all of Defendants' arguments challenging the validity of his § 1983 malicious prosecution claim "deserve scant attention." (Doc. No. 8 at 9.) Rather, the court agrees with Defendants that Plaintiff's allegation that Defendants "instituted" a criminal proceeding against Plaintiff is insufficient under the circuit's heightened pleading requirements to state a § 1983 malicious prosecution claim. The court, however, finds that the proper remedy is to "call[] [Plaintiff's] counsel to task" and direct counsel to remedy the deficient § 1983 claim, rather than to dismiss the claim at this time. See Fikes, 79 F.3d at 1084. Accordingly, based on the foregoing, the court will grant Plaintiff leave to amend his complaint to allege more specific facts as to his § 1983 Fourth Amendment malicious prosecution claim. Plaintiff is forewarned, however, that if only conclusory allegations are provided, the court will entertain and grant a motion to dismiss, if filed.

(g) Summary of Disposition of Fourth Amendment Claims

In Count I, Plaintiff has alleged multiple Fourth Amendment claims against West and Hutson in their individual capacities. The court finds that, at this stage of the litigation, Defendants are not entitled to dismissal of that count on the basis of qualified

35

immunity on the Fourth Amendment claims alleging an illegal traffic stop, a false arrest, and an unlawful search. The court further finds that the Fourth Amendment excessive force allegations are subsumed within the Fourth Amendment claims alleging an illegal traffic stop and a false arrest. Defendants may again raise the defense of qualified immunity at the summary judgment stage, at which time Plaintiff will be required to submit evidence in support of his allegations. There may be evidentiary facts existing which are not contained in Plaintiff's complaint and which would entitle Defendants to the defense of qualified immunity.

The court, however, finds that Plaintiff has failed to comply with the heightened pleading requirements in alleging his Fourth Amendment § 1983 malicious prosecution claims against West and Hutson. Rather than dismiss this claim as urged by Defendants, the court will permit Plaintiff to amend his complaint to allege a factual basis of this claim.

### B.  State-Law Claims

In Counts II and III, Plaintiff brings state law claims for assault and battery and conversion against Defendants in their individual capacities, seeking monetary damages. (See Compl. at 7-8.) Defendants argue that under Alabama law, as deputy sheriffs, they are entitled to absolute immunity. The court agrees. The court's recent ruling in Cobb, directly applies to Plaintiff's state-law claims here and forecloses relief. See ___ F.

Supp.2d at ___, 2007 WL 788423, *6-*7 (discussing an Alabama deputy sheriff's

immunity from suit in federal court for violations of state law) (citing, among other

opinions, <u>Tinney v. Shores</u>, 77 F.3d 378 (11th Cir. 1996)).  Accordingly, the court finds

that Defendants' motion to dismiss Counts II and III is due to be granted and that these

counts are due to be dismissed with prejudice.


    C.  <u>Declaratory and Other Equitable Relief against West and Hutson, Individually</u>

        As a final matter, Defendants argue that, in their individual capacities, West and

Hutson are not proper parties for purposes of seeking declaratory or other equitable relief.

(Doc. No. 6 at 22-23.)  Based upon the authority submitted by Defendants, which has not

been contradicted by Plaintiff (<u>see</u> Doc. No. 8 at 13), the court agrees with Defendants

that Plaintiff's requests for declaratory and equitable relief are due to be dismissed

because Plaintiff brings individual-capacity claims against Defendants, not official-

capacity claims.  <u>See</u> <u>Edwards v. Alabama Dept. of Corrections</u>, 81 F. Supp.2d 1242,

1251 & n.3 (M.D. Ala. 2000) (observing that "only in his or her official capacity can a

governmental official give equitable relief"); <u>Price v. Univ. of Alabama</u>, 318 F. Supp.2d

1084, 1094-95 (N.D. Ala. 2003) (declining to entertain individual-capacity claim for

declaratory relief because if the government official was "properly the subject of such

relief at all it would only be in his official capacity").

## VI.  ORDER

For the reasons asserted herein, it is CONSIDERED and ORDERED that Defendants' motion to dismiss be and the same is hereby GRANTED in part and DENIED in part as follows:

(1)  Defendants' motion to dismiss the § 1983 First Amendment claim is hereby GRANTED and the claim is hereby DISMISSED with prejudice.

(2)  Defendants' motion to dismiss the § 1983 Fourth Amendment claims alleging an illegal traffic stop, false arrest, and unlawful search is hereby DENIED.

(3)  Defendants' motion to dismiss the § 1983 Fourth Amendment claim alleging malicious prosecution is hereby DENIED at this time.  Plaintiff is granted leave until June 1, 2007, to move to amend his complaint to allege a § 1983 Fourth Amendment malicious prosecution claim which complies with the applicable heightened pleading requirements.  Any amended complaint shall be accompanied by a motion for leave to amend, shall comply with this District's local rules for the filing of amendments,[15] and shall not restate claims which have been dismissed by the terms of this order.  Failure to move to amend the complaint by the date above shall result in dismissal with prejudice of said claim.

(4)  Defendants' motion to dismiss the state-law claims in Counts II and III is hereby GRANTED and said claims are hereby DISMISSED with prejudice.

---

[15] See M.D. ALA. L.R. 15.1 ("Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must, except by leave of court, reproduce the entire pleading as amended, and may not incorporate any prior pleading by reference.").

(5) Defendants' motion to dismiss Plaintiff's requests for injunctive and declaratory relief is hereby GRANTED.

DONE this 24th day of May, 2007.

/s/ Ira DeMent
SENIOR UNITED STATES DISTRICT JUDGE