**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| **RICHARD MARSHALL,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **CIVIL ACTION NO. 2:06-cv-701-ID-CSC** |
| | ) |
| **CHRIS WEST, in his individual capacity,** | ) |
| **LASHUN HUTSON, in his individual** | ) |
| **capacity,** | ) |
| | ) |
| **Defendants.** | ) |

**MEMORANDUM BRIEF IN SUPPORT OF DEFENDANT CHRIS WEST'S**
**MOTION FOR SUMMARY JUDGMENT**

COMES NOW Lowndes County, Alabama, Deputy Sheriff Chris West, a Defendant in the above-referenced matter, and submits this Memorandum Brief in support of his contemporaneously filed Motion for Summary Judgment.

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ........................................................................2

TABLE OF AUTHORITIES ..................................................................3

INTRODUCTION...................................................................................7

FACTS ....................................................................................................7

ARGUMENT.........................................................................................16

     I.    LT. WEST ACTED WITHIN HIS DISCRETIONARY AUTHORITY...................................................................21

     II.    LT. WEST DID NOT VIOLATE ANY OF THE PLAINTIFF'S FEDERALLY PROTECTED RIGHTS. ...................................22

          A.    The Traffic Stop Was Lawful. ....................................22

          B.    The Plaintiff Was Lawfully Arrested. .........................24

          C.    The Plaintiff's Person and Car Were Lawfully Searched........27

          D.    Lt. West Did Not Use Excessive Force as a Matter of Law......28

               1.    The use of the PIT maneuver to end the Plaintiff's flight was reasonable. ........................................ 31

               2.    Firing a warning shot is not excessive force. ................... 33

               3.    Lt. West used only the force necessary to secure the Plaintiff and overcome his refusal to obey the Agents' instructions. ........................................ 33

          E.    The Plaintiff Was Lawfully Prosecuted. .....................34

     III.    NO CLEARLY ESTABLISHED LAW PROVIDED LT. WEST WITH "FAIR WARNING" THAT HIS CONDUCT WAS UNLAWFUL. ....................................................................37

CONCLUSION ......................................................................................38

CERTIFICATE OF SERVICE .............................................................38

## **TABLE OF AUTHORITIES**

*Cases*

Albright v. Oliver, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) ................................. 34

Anderson v. Creighton, 483 U.S. 635 (1987) ......................................................................... 20

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ............................................................ 18

Atwater v. City of Lago Vista, 532 U.S. 318 (2001) ................................................................ 26

Barker v. Norman, 651 F.2d 1107 (5th Cir. 1981) .................................................................. 21

Barts v. Joyner, 865 F.2d 1187 (11th Cir. 1989) .................................................................... 36

Carr v. Tatangelo, 338 F.3d 1259 (11th Cir. 2003) ................................................................ 29

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ................................................................. 17, 18

Chimel v. California, 395 U.S. 752 (1969) ............................................................................. 27

Colorado v. Bertine, 479 U.S. 367 (1987) ............................................................................. 27

Craig v. Krzeminski, 764 F.Supp. 248 (D.Conn., 1991) .......................................................... 25

Crosby v. Monroe County, 394 F.3d 1328 (11th Cir. 2004) ..................................................... 29

Draper v. Reynolds, 369 F.3d 1270 (11th Cir. 2004) ............................................................. 22

Elliott v. Leavitt, 99 F.3d 640 (4th Cir. 1996) ....................................................................... 30

Eubanks v. Gerwen, 40 F.3d 1157 (11th Cir. 1994) ............................................................... 36

Florida v. Wells, 495 U.S. 1 (1990) ...................................................................................... 27

Garrett v. Athens-Clarke County, 378 F.3d 1274 (11th Cir. 2004) ........................................... 29

Godby v. Montgomery County Bd. of Educ., 996 F. Supp. 1390 (M.D. Ala. 1999) .................... 22

Graham v. Connor, 490 U.S. 386 (1989) ............................................................................... 28

Greason v. Kemp, 891 F.2d 829 (11th Cir. 1990) ................................................................... 17

Harbert Intern., Inc. v. James, 157 F.3d 1271 (11th Cir. 1998) ............................................... 21

Hill v. State, 665 So. 2d 1024 (Ala. Crim. App. 1995)...................................................... 24, 25, 27

Jenkins v. Talladega Bd. of Educ., 115 F.3d 821 (11th Cir. 1997) ............................................ 21

Jones v. Cannon, 174 F. 3d 1271 (11th Cir. 1999) ...................................................................... 25

Jordan v. Doe, 38 F.3d 1559 (11th Cir. 1994) ............................................................................ 21

Lancaster v. Monroe County, 116 F.3d 1419 (11th Cir. 1998) .................................................... 21

Leslie v. Ingram, 786 F.2d 1533 (11th Cir.1986) ....................................................................... 28

Marsh v. Butler County, 268 F.3d 1014 (11th Cir. 2001) ..................................................... 18, 29

Marx v. Gumbinner, 905 F.2d 1503 (11th Cir. 1990) ........................................................ 23, 24, 27

Massachusetts School of Law v. American Bar, 142 F.3d 261st Cir. 1998) .............................. 18

Massey v. Deslauriers, 2005 WL 2043006, *6 (D.Vt., 2005) ..................................................... 25

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986)................................... 17

Michigan v. Summers, 452 U.S. 692 (1981) ........................................................................ 30, 33

Morales-Arcadio v. Shannon Produce Farms, Inc. 2007 WL 2106188, *9 (S.D. Ga. 2007) ....... 20

New York v. Belton, 453 U.S. 454 (1981) ................................................................................... 27

Otey v. Marshall, 121 F.3d 1150 (8th Cir. 1997) ...................................................................... 33

Post v. City of Fort Lauderdale, 7 F.3d 1552 (11th Cir.1993)................................................... 28

Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000)........................................ 18

Rich v. Dollar, 841 F.2d 1558 (11th Cir. 1988).......................................................................... 21

Rodgers v. Horsley, 39 F.3d 308 (11th Cir. 1994)..................................................................... 20

Saucier v. Katz, 533 U.S. 194 (2001) ........................................................................................ 20

Scott v. Harris, 127 S. Ct. 1769 (2007)........................................................................ 19, 30, 32

Skylstad v. Reynolds, 2007 WL 2766436 at *2 (9th Cir. 2007)................................................. 19

Smith v. Freland, 954 F.2d 343 (6th Cir. 1992)........................................................................ 30

4

Storck v. City of Coral Springs, 354 F.3d 1307 (11th Cir. 2003)................................... 37

Strength v. Hubert, 854 F.2d 421 (11th Cir. 1988).......................................................... 34

Thomas v. Drochner, 1994 WL 803263, *12 (N.D.Ill.,1994) ........................................ 25

Thornton v. U.S., 541 U.S. 615 (2004)............................................................................ 27

U.S. Steel, L.L.C. v. Tieco, Inc., 261 F.3d 1275 (11th Cir. 2001).................................. 35

United States v. Chanthasouxat, 342 F.3d 1271 (11th Cir. 2003) ................................... 23

United States v. Holloman, 113 F.3d 192 (11th Cir. 1997)............................................. 22

Usher v. Los Angeles, 828 F.2d 556 (9th Cir. 1987)....................................................... 35

Vinyard v. Wilson, 311 F.3d 1340 (11th Cir. 2002) ....................................................... 37

Wallace v. Kato, 127 S.Ct. 1091 (2007) ......................................................................... 34

Whiting v. Traylor, 85 F.3d 581 (11th Cir. 1996) .......................................................... 34

Whren v. United States, 517 U.S. 806 (1996) ................................................................. 22

Williams v. Martin, 2007 WL 4139476 (N.D. Ga. Oct 29, 2007)................................... 20

Willingham v. Loughnan, 321 F.3d 1299 (11th Cir. 2003) ....................................... 20, 37

Wood v. Kesler, 323 F.3d 872 (11th Cir. 2003) .............................................................. 34

***Statutes***

18 U.S.C. § 922(g)(9) ...................................................................................................... 24

Ala. Code § 13A-11-73..................................................................................................... 25

Ala. Code § 13A-11-74..................................................................................................... 25

Ala. Code § 13A-12-231 ................................................................................................... 31

Ala. Code § 32-5B-4(a)..................................................................................................... 23

Ala. Code § 32-5B-4(b)(5)................................................................................................ 23

Ala. Code 13A-12-212...................................................................................................... 31

***Other Authorities***

9A C. Wright & A. Miller, Federal Practice and Procedure § 2529 ............................................ 18

Fed. R. Civ. P. 56(c) ........................................................................................... 17

Fed. R. Civ. P. 56(e) ........................................................................................... 17

## INTRODUCTION

Following the Court's May 24, 2007 Order, the Plaintiff has five remaining Fourth Amendment claims against the Defendants in their individual capacities: (1) illegal traffic stop; (2) false arrest; (3) unlawful search; (4) excessive force[1] and (5) malicious prosecution. (Doc. 12 at p. 38.)[2] The parties have engaged in discovery and have since discovered that the facts were not as pled in the Complaint or Amended Complaint. Taken in the light most favorable to the Plaintiff, the facts in the record demonstrate that Deputy West is entitled to qualified immunity and judgment in his favor as a matter of law.

## FACTS

Chris West is a lieutenant with the Lowndes County Sheriff's Department and the Commander of the Second Judicial Drug Task Force (hereinafter "DTF"). (Exhibit A, Deposition of Chris West, "West dep.", at 5:14-6:1; 6:7-7:14.)[3] Lt. West has approximately 12 years with the Lowndes County Sheriff's Department. Id. at 5:16-18. He is a graduate of the ten-week FBI Academy. Id. at 11:7-10. In total, Lt. West has 17 years experience in narcotics investigations, the last seven of which have been as the DTF Commander. (Exhibit B, Declaration of Chris West, "West dec.", at ¶ 5.) He has made hundreds of drug cases during that time. Id. Lt. West's experience has taught him the methods by which drug dealers and users store and transport illicit substances. Id.

At the time of the incident underlying the Plaintiff's Amended Complaint, Lashun Hutson was a police officer with the City of Hayneville serving on the DTF. (Exhibit C,

---

[1] As discussed in the excessive force section below, the Plaintiff may not have a separate excessive force claim at this stage of the litigation. (See also Doc. 12 at pp. 27-29, 38-39.)
[2] The Court ordered the Plaintiff to file an Amended Complaint restating the malicious prosecution claim with more specificity. (Doc. 12 at p. 38.)
[3] In citing to depositions, this brief will use the convention "p:l-l", where "p" is the page number and "l" is the line number.

Deposition of Lashun Hutson, "Hutson dep.", at 5:15-20.)   Since the events underlying the Plaintiff's lawsuit, Agent Hutson has become a deputy with the Lowndes County Sheriff's Department.  Id. at 5:9-23.

Sometime prior to June 28, 2005, the Defendants received information that the Plaintiff was selling crack cocaine and marijuana at his residence and other locations.  (West dep. at 14:1-14; Hutson dep. at 14:13-19.)  Lt. West received this information on more than one occasion.  Id. at 17:7-15.  As a result, on June 28, 2005, Lt. West and Agent Hutson (hereinafter collectively referred to as "the Agents") went to the Plaintiff's home off of Highway 21 to do a "knock-and-talk".  Id. at 14:15-22.  Lt. West was driving.  Id. at 12:21-23.

The Agents drove to the Plaintiff's home in an unmarked Lincoln Town Car.  (West dep. at 13:1-6; 21:10-15.)  The Town Car was equipped with a blue and white warning light that plugged into the cigarette lighter adapter.  Id. at 19:22-20:22.  When the Agents got to the Plaintiff's home, they knocked on the door but no one answered.  Id. 16:2-5.  The Agents got back into their car and began driving towards the Casey Community.  Id. at 16:7-16.

The Agents also had information that the Plaintiff owned an older blue Chevrolet Nova. (West dep. at 17:1-6.)  After the Agents turned on to Lowndes County Road 7, they saw the Plaintiff in a blue Chevrolet Nova coming towards them.  Id. at 19:6:15.  Lt. West turned his vehicle around and headed back down County Road 7 towards Highway 21.  Id. at 19:15-18.

Coming up behind the Plaintiff's car, Lt. West saw that the Plaintiff and his passenger did not have on their seatbelts.  (West dep. at 19:20, Ex. 6 at p.1.)  The Plaintiff, in fact, was not wearing his seatbelt even though his car was equipped with them.  (Exhibit D, Plaintiff's Responses to Defendants' Requests for Admission, "RFA", at ¶ 6; Exhibit E, Deposition of

Richard Marshall, "Marshall dep." at 28:20-23.)    The Plaintiff's one passenger, Kelvin Carmichael, was also not wearing his seatbelt.  (Marshall dep. at 29:1-2.)

Because the Plaintiff was not wearing his seatbelt, Lt. West determined that he had probable cause to stop the vehicle.  (West dep. at 56:17-22.)  At Lt. West's direction, Agent Hutson activated the car's blue and white strobe and placed it on the dashboard in an attempt to initiate a traffic stop.  Id. at 19:20-20:4; Hutson dep. at 18:1-16.  The lights were working at the time and emitted blue and white flashes of light.  (West dep. at 20:18-21:2.)

The Plaintiff did not stop.  (West dep. at 20:5-7.)  Lt. West next tried blowing his horn and flashing his headlights – all without effect.  Id. at 21:6-18.  The Plaintiff testified that he saw the Town Car veer off the road in his rearview mirror, but did not see it again until it pulled alongside of his car.  (Marshall dep. at 43:13-19.)  Lt. West did pull alongside the Plaintiff's car when the Plaintiff failed to stop.  (West dep. at 21:6-21; Marshall dep. at 44:6-8.)  The windows were down in both cars.  (West dep. at 21:21-22:1; Marshall dep. at 45:10-11; Hutson dep. at 19:1-9.)  Agent Hutson produced his badge and told the Plaintiff to pull over.  (Hutson dep. at 19:5-7.)

According to the Plaintiff, in a "brief glance" all he saw were two black males in black T-shirts "trying to flag me to pull over".  (Marshall dep. at 44:8-23, 46:9-11.)  He had a car stereo with amplifiers blaring so he was unable to hear what Agent Hutson said to him.  Id. at 45:21-46:11.)  Nonetheless, he also testified that he asked Agent Hutson "What the fuck y'all want?"  Id. at 50:1; West dep. 22:16-19.)

The Plaintiff's car also contained a loaded .357 magnum revolver on the front seat right beside the Plaintiff.  ("Marshall dep." at 30:7-14, 62:17-23, Ex. 3; Exhibit F, Drug Task Force Case File for Case No: 05-06-011, "Case File", Alabama Uniform Incident/Offense Report, Case

9

No. 05-06-011, "I/O rep." at p. 1; Exhibit G, Case File, 2nd Judicial Drug Task Force Drug Agent Statement Form of Lt. West, "West stmt.", at p. 1.; Exhibit H, Case File, 2nd Judicial Drug Task Force Drug Agent Statement Form of Agent Hutson, "Hutson stmt.", at p. 2; Exhibit I, Case File, Interview Sheet of Kelvin Carmichael, "Carmichael inter."; Exhibit J, Case File, Warrant Deposition, "Warrant dep.", at p. 1; RFAs at ¶¶ 1-3.)  There was extra ammunition in the ashtray and seat of the car.  (Marshall dep. at 21:19-22:15, Exs. 3 and 4.)  According to the Plaintiff, the gun belonged to D.C. McWilliams who had left the gun and ammunition in the Plaintiff's car three to four days earlier.  Id. at 30:10-31:10.  The Plaintiff did not have a pistol permit.  Id. at 33:8-11.

When the Agents efforts proved futile, Lt. West fell back behind the Plaintiff's car. (West dep. 22:20-23; Hutson dep. at 19:11-14; Marshall dep. at 48:18-23.)  The Plaintiff testified that he did not pull over because he had been robbed once before – although not while he was in his car – and thought the two men might be trying to rob him.[4]  (Marshall dep. at 46:12-47:6.) The Agents followed the Plaintiff to the Highway 21 intersection where the Plaintiff ran the stop sign and turned right heading away from the City of Hayneville and towards Wilcox County. (West dep. 23:13-23; Hutson dep. at 15-21; Marshall dep. at 50:23-51:11, 52:4-13.)  While there were gas stations and stores along Highway 21 going toward Hayneville, there were none in the direction the Plaintiff turned.  (Marshall dep. at 76:18-77:11.)

Approximately 50 to 75 yards out on Highway 21, a plastic baggy containing a white powder hit the Town Car's windshield.  (West dep. at 24:1-6; Hutson dep. at 22:20-23:5.)  The Plaintiff testified that he did not throw a baggy out of his car, but may have thrown a cigarette out of his window.  (Marshall dep. at 74:15-75:2.)  Lt. West made a mental note of the location

---

[4] There is no evidence in the record that the Plaintiff's thought that the Agents were not police officers was ever communicated to either Lt. West or Agent Hutson.

because in his experience, drugs were kept in baggies like the one that hit his windshield and he believed that the baggy came from the Plaintiff's car. (West dep. 24:4-9, 31:8-17; West dec. at ¶¶ 6-8.)

Lt. West later recovered a baggy containing residue near where his car was hit. Id. at 40:15-22. He submitted the baggy to the Department of Public Safety (hereinafter "DPS") for fingerprint testing and later to the Department of Forensic Sciences (hereinafter "DFS") for drug testing. Id. at 40:23-41:12, Ex. 1. However, on August 25, 2005, DPS returned the evidence with a letter indicating that no fingerprints were found. Id. at 41:4-8, Ex. 1, 8/25/05 Letter from DPS. DFS subsequently returned the evidence with a letter dated February 2, 2006, indicating that the baggy did not contain a controlled substance. Id. at 41:9-12, Ex. 1, 2/2/06 Certificate of Analysis from DFS.

The Agents continued to pursue the Plaintiff's car after being struck by the baggy. Lt. West pulled his vehicle up alongside the Plaintiff's car for a second time on Highway 21 in an attempt to get him to stop. (West dep. at 24:11-18; Hutson dep. at 20:5-16; Marshall dep. at 52:23-53:1.) Agent Hutson held his badge up and told the Plaintiff to pull over. (Hutson dep. at 20:8-9.) Lt. West had his badge up and was yelling for the Plaintiff to pull over as well. Id. at 20:11-13.

The Plaintiff testified that his radio was still going so he could not hear Agent Hutson, or tell what Lt. West was doing at all. (Marshall dep. at 54:16-18, 55:8-21.) He also testified that in another "glance" he thought he saw a gun in Agent Hutson's hand. Id. at 54:22-55:2, 56:5-14. Agent Hutson gestured with the "gun" for the Plaintiff to pull over. Id. at 56:15-18. The Plaintiff again refused and the Agents pulled back behind the Plaintiff's car. (West dep. at 24:19; Hutson dep. at 21:2-7; Marshall dep. at 59:23-60:4.)

The Agents followed the Plaintiff for another 1 1/2 to 2 miles. (Marshall dep. at 60:2-3.) During this time Lt. West observed the Plaintiff moving around in his seat and looking down. (West dep. 24:19-23.) The Plaintiff testified that he did not look in the rearview mirror during this time and had no idea what the Agents did. (Marshall dep. at 60:5-14.)

Lt. West's next course of action was to attempt to "bump" the Plaintiff's car in an attempt to get him to pull over. (West dep. at 25:3-5.) The parties appear to be in agreement that Lt. West bumped the Nova with his Town Car approximately two times before a final hit put the Nova against an embankment. Id.; Marshall dep. 65:5-11.

The first bump came as the cars were traveling between 45 to 55 mph. (Marshall dep. at 65:19-22.) According to the Plaintiff, the Town Car could not have been traveling much faster than his Nova because Lt. West was "riding [the Plaintiff's] bumper". Id. at 68:4-12. After this bump, the Plaintiff still refused to pull over but slowed down to between 30 and 35 mph. Id. at 67:3-11.

The Plaintiff testified that the impact of the second bump was about the same. (Marshall dep. at 68:13-17, 69:13-15.) According to the Plaintiff, because he was traveling at a slower speed, "the car just like jerked". Id. at 70:14-16.

Lt. West then executed a Pursuit Intervention Technique (hereinafter "PIT"). (West dep. at 29:3-14.) To execute a PIT maneuver, the police vehicle pulls up next to the fleeing suspect's car so that his front fender is next to the suspect's rear fender. The officer then slows down and simultaneously turns into the suspect's car. Id. at 29:15-21. This was the maneuver that Lt. West performed on the Plaintiff's car to bring the pursuit to an end. Id. at 29:22:30:1.

There was no traffic around the parties' vehicles when Lt. West performed the PIT maneuver, or at any time during the pursuit. (Marshall dep. at 74:7-14.) The Plaintiff's car was

12

traveling at approximately 35 mph immediately prior to the PIT.  Id. at 70:8-10.  After the third

contact, the Plaintiff's Nova crossed over Highway 21 and slid to a stop on an embankment

facing in the opposite direction.  Id. at 71:22-72:7, 78:23-79:4, Ex. 2.  The Plaintiff's car did not

hit anything on its way to its final resting place, because there was nothing around for it to hit.

Id. 78:18-22; West dep. 25:9-16.

    After striking the Plaintiff's car the final time, Lt. West backed up and brought his car to

a stop so that it was facing the driver's side front quarter panel of the Plaintiff's Nova.  (West

dep. at 25:16-21; Marshall dep. at 80:18-81:13, Exs. 7 and 8.)  Using their doors for protection,

the two Agents got out of their car with their weapons drawn and pointing at the Plaintiff and his

passenger.  Lt. West covered the Plaintiff while Agent Hutson covered Mr. Carmichael.  (West

dep. at 25:22-26:1; Hutson dep. at 24:4-10; Marshall dep. at 82:23-83:4, 85:19-21.)  At this time

the Plaintiff was able to see a badge hanging around Lt. West's neck and knew they were law

enforcement officers.  (Marshall dep. at 83:9-22, 87:18-23.)

    Despite the Plaintiff's claims that he believed he was being robbed prior to this time, at

no point did he pick up the pistol he had beside him or try to use it against the Agents.  (Marshall

dep. at 73:4-6.)  The Plaintiff had a cellular telephone with him.  Id. at 73:7-8.  However, he did

not use it to report that he was being chased by "robbers", in the entire 5 to 10 minute period of

the pursuit.  Id. at 73:7-74:2.

    Lt. West ordered the Plaintiff to get out of the car and get on the ground.  (West dep. at

26:1-2, Marshall dep. at 86:3-8.)  The Plaintiff responded by cursing.  (West dep. at 31:1-7;

Hutson dep. at 25:4-5.)  He did get out of the car, but refused Lt. West's commands to get on the

ground.  (West dep. at 32:11-16; Hutson dep. at 25:6-13; Marshall dep. at 87:2-11, 112:13-

113:11.)  The Plaintiff testified that he refused because he was "agitated" and "just didn't feel

like getting on the ground at the time." (Marshall dep. at 87:5-11.) He remained standing between the driver's door of the Nova and the body of the car. Id. at 86:8-9. The .357 magnum revolver remained lying on the front passenger seat within feet of the Plaintiff. Id. at 86:20-87:1, Ex. 3.

Lt. West ordered the Plaintiff to get on the ground "several" more times, and the Plaintiff refused. (West dep. at 32:14-18; Hutson dep. at 25:9-12; Marshall dep. at 86:8-13.) Consequently, Lt. West fired his weapon into the ground six to eight feet from the Plaintiff. (West dep. at 32:16-21.)[5] Lt. West did so because as a plain clothes officer, he did not have any other less than lethal or non-lethal force options available to him. (West dec., at ¶¶ 11-13.)

The Plaintiff froze when Lt. West fired the warning shot. (West dep. at 32:22-33:1; Hutson dep. at 26:2-11.) Lt. West approached the Plaintiff still commanding him to get on the ground, and the Plaintiff still refused. (Marshall dep. at 114:10-115:1.) Lt. West reached the Plaintiff, put him on the ground with a foot sweep, and placed him in handcuffs. Id. at 89:17-90:11. After the Plaintiff was in cuffs on the ground, Agent Hutson ordered Mr. Carmichael out of the car and placed him in handcuffs as well. Id. at 94:16-95:17, Exs. 7 and 8.

After securing the Plaintiff, Lt. West looked into the car and saw the revolver. (West dep. at 33:15-22. Consequently, Lt. West conducted a pat down search of the Plaintiff. Id. at 34:3-4. According to the Plaintiff, Lt. West also went through his pockets and removed his wallet. (Marshall dep. at 96:7-11.) The Plaintiff testified that he did not see Lt. West take out his money. Id. at 96:21-22, 97:5-8. Lt. West also searched the Plaintiff's waist band area of the Plaintiff's pants. Id. at 97:16-20. The entire search of the Plaintiff's person took "a couple of

---

[5] The Plaintiff testified that he heard the shot and knew it hit the ground but could not say exactly where the bullet struck. (Marshall dep. at 113:12-114:7.) At his deposition the Plaintiff completely described what happened to him on the side of Highway 21, and curiously "forgot to mention" the warning shot. Id. at 69:18-109:8. It was only after a lunch break with his attorneys that his memory of the incident returned. Id. at 109:6-111:15.

minutes". Id. at 98:2-11.  Lt. West then searched/inventoried the Plaintiff's car for approximately eight more minutes. Id. at 97:22-98:11.  The Plaintiff's car was impounded and inventoried pursuant to DTF policy.  (West dec. at ¶¶ 17-18.)

Afterward, Lt. West placed the Plaintiff in the backseat of the Nova.  (West dep. at 34:6-19; Marshall dep. at 99:10-100:1.)[6]  The Plaintiff refused and fought against Lt. West's efforts to put him in the Nova.  (West dep. at 34:11-16; Marshall dep. at 99:15-19, 101:19-102:10.)  Lt. West used a "full nelson choke" for five to ten seconds to obtain the Plaintiff's compliance. (Marshall dep. at 102:10-20, 103:16-22.)  Lt. West released the hold when the Plaintiff "gave up" and said he would get in the car. Id. at 103:7-15.

The Plaintiff admitted during his deposition testimony that the Agents had a light in their car.  After he was placed in the Nova, the Plaintiff testified that Lt. West went to the Town Car, got the light, and put it on top of the Town Car.  According to the Plaintiff, Lt. West had to "beat" on the light to get it to start flashing.  (Marshall dep. at 100:5-22.)

Subsequently, Lt. West called for a marked patrol car.  (West dep. at 34:23-35:1.)  While waiting for the patrol car, Lt. West took photographs of the scene that are Exhibits 2-4, 7, 8, 10 and 11 of the Plaintiff's deposition.  (West dep. at 35:2.)  The marked unit, driven by Deputy Phil Harding, arrived and the Plaintiff was moved to the patrol car.  (Marshall dep. at 117:7-8; West dep. at 37:3-11.)  Mr. Carmichael was placed in the front seat of the Town Car.  (Marshall dep. at 117:8-10.)  Agent Hutson drove the Plaintiff's car from the scene. Id. at 117:9-10.

The Agents and the deputy drove to the point on Highway 21 where the baggy hit the Agent's windshield.  (West dep. 39:16-40:6; Hutson dep. at 31:17-32:4; Marshall dep. at 118:3-

---

[6] The Parties differ sharply on when the Plaintiff's shorts came off.  Officer West testified that it was when he was trying to take the Plaintiff to the ground.  (West dep. at 34:5-10.)  The Plaintiff testified they came off as Lt. West was trying to get him to go into the back seat of the Nova.  (Marshall dep. at 99:10-100:1.)  For purposes of summary judgment only, the Plaintiff's version of the event is accepted.

10, 119:20-18.)  Lt. West found the baggy containing what he believed to be drug residue.  (West dep. at 40:21-22.

After one more stop to change a flat tire on the marked patrol car, the Plaintiff was transported to the Lowndes County Detention facility.  (Marshall dep. at 120:3-121:20.)  At the Detention Facility, the Plaintiff was booked into the jail by the jail staff.  Id. at 122:6-10, 122:21-125:11.  The Plaintiff claims that he told the booking officer that Lt. West took $400.00 from him.  Id. at 126:11-14.  However, he never made a written statement, filed a grievance, told the Sheriff of Lowndes County, or made a report with any police agency.  Id. at 126:15-127:2.  Of course, as noted earlier, the Plaintiff also testified that he never saw Lt. West take his money.

Lt. West charged the Plaintiff on June 28, 2005, with carrying a pistol without a permit and possession of a controlled substance.  (West dep. at 38:18-22.)  When DFS informed Lt. West that the baggy did not contain a controlled substance, he informed the prosecutor and that charge was dismissed against the Plaintiff.  (West dec. at ¶ 13; Marshall dep. at 138:10-139:17.)  The weapons charge was dismissed in favor of a federal prosecution that is apparently still pending presentment to a grand jury when it was learned that the Plaintiff had a domestic violence conviction.  (West dec. at ¶¶ 14-16; Exhibit K, Case File, Documents submitted to and received from BATFE.)[7]

## ARGUMENT

Federal Rule of Civil Procedure 56 governs motions for summary judgment: "A party against whom a claim . . . is asserted . . . may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

---

[7] The remainder of the case file not identified as a separate exhibit is attached as Exhibit L.

any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c).

"The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Fed. R. Civ. P. 56(e).

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

> Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

Celotex, 477 U.S. at 327.

On a motion for summary judgment, the court should view the evidence in the light most favorable to the non-movant. Greason v. Kemp, 891 F.2d 829, 831 (11th Cir. 1990). However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Only

17

reasonable inferences with a foundation in the record inure to the non-movant's benefit.  Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 151 (2000).  "[T]he court should give credence to the evidence favoring the non-movant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'"  Id. (quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299).[8]  The Court "need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'"  Marsh v. Butler County, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc) (quoting Massachusetts School of Law v. American Bar, 142 F.3d 26, 40 (1st Cir. 1998)).

Last year the United States Supreme Court, in a qualified immunity case, revisited the standard of review in the context of a motion for summary judgment emphasizing the "reasonable jury" aspect of the standard:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. Fed. Rule Civ. Proc. 56(c). As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.*

---

[8] Although Reeves was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review, relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'"  Reeves, 530 U.S. at 150, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Scott v. Harris, 127 S. Ct. 1769, 1776 (2007) (Emphasis added).

In Scott, the Supreme Court rejected the reading of the record by the district court and the Eleventh Circuit Court of Appeals which had, in an effort to view the evidence in a light most favorable to the plaintiff, credited the plaintiff's deposition testimony.  In his deposition, Harris swore that "[he had] remained in control of his vehicle, slowed for turns and intersections, and typically used his indicators for turns.  He did not run any motorists off the road.  Nor was he a threat to pedestrians in the shopping center parking lot, which was free from pedestrian and vehicular traffic as the center was closed." Id. at 1775.  Yet the plaintiff's words were flatly contradicted by other more credible aspects of the record, particularly a videotape showing driving in an extremely reckless manner: "The videotape tells quite a different story." Id.

Nothing in the Scott opinion, however, limited its application to cases where the plaintiff's testimony is pitted against videotape.  The Ninth Circuit in Skylstad v. Reynolds, 2007 WL 2766436 at *2 (9th Cir. 2007), relying on Scott's broadening of the motion for summary judgment standard, rejected the plaintiff's version of the facts *even without a videotape disputing it*.

> Skylstad disputes that he actively resisted arrest. Declarations from officers on the scene unanimously state that Skylstad refused to exit the car and violently resisted arrest. Skylstad states that he voluntarily surrendered, that the officers unnecessarily used a K-9 dog to repeatedly bite and attack him, and that the officers smashed his head against the car and cut his arms open at the scene to take his blood. Skylstad offers the declarations of his wife and two other witnesses to support his version of events. The medical evidence, however, directly contradicts Skylstad's version of events. Although the dog bite was serious and required medical attention, there is no medical evidence of multiple dog bites, head injury, or cuts on the arms. . . . In summary, Skylstad failed to raise a triable issue for a jury on his claim of excessive force.

Skylstad, 2007 WL 2766436 at *2 - *3.

19

Similarly, the Northern District of Georgia granted summary judgment on an excessive force claim, citing Scott v. Harris's standard and concluding that "the evidence supporting Williams's claim that Hatcher used unconstitutionally excessive force is exceptionally weak." Williams v. Martin, 2007 WL 4139476 (N.D. Ga. Oct 29, 2007); see Morales-Arcadio v. Shannon Produce Farms, Inc. 2007 WL 2106188, *9 (S.D. Ga. 2007) ("There thus is no genuine issue of fact that the checks face-dated 8/11/04 were printed and given to the workers in late September or early October 2004. Though Shannon would like to take a position without evidentiary support other than the user-selected face date on the check, that 'position is so utterly discredited by the record that no reasonable jury could . . . believe [ ]' it." (quoting Scott v. Harris, 550 U.S. ---, 127 S. Ct. 1769, 1776 (2007)).

Lt. West is entitled to judgment in his favor as a matter of law because he is entitled to qualified immunity. Once a defendant has asserted the defense of qualified immunity and demonstrated that he was acting within his discretionary authority, the burden shifts to the Plaintiff who must first demonstrate from the record that the defendant official violated his federally protected rights. Saucier v. Katz, 533 U.S. 194, 201 (2001). However, even if the Plaintiff successfully makes such a showing, he must also point the Court to clearly established law that provided "fair warning" that the conduct of the Defendants was illegal. Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003). In making an assessment of whether the particular conduct of Lt. West was clearly established as being violative of constitutional dictates, the reviewing court must examine the state of law at the time the alleged deprivation occurred. See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994). A constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987); Lancaster v. Monroe

County, 116 F.3d 1419, 1424 (11th Cir. 1998).  "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Jenkins v. Talladega Bd. of Educ., 115 F.3d 821, 827 (11th Cir. 1997) (en banc) (citations omitted).

Lt. West is entitled to qualified immunity for three reasons.  First, he was acting within his discretionary authority.  Second, the evidence in the record would not convince a reasonable jury that Lt. West violated any of the Plaintiff's federally protected rights.  Finally, no clearly established law gave Lt. West "fair warning" that his conduct was illegal.

## I.    LT. WEST ACTED WITHIN HIS DISCRETIONARY AUTHORITY.

Once a public official has asserted the defense of qualified immunity, he bears the burden of proving that he was acting within his discretionary capacity.  Rich v. Dollar, 841 F.2d 1558, 1563 (11th Cir. 1988).  In order to establish that he is acting within his discretionary capacity, a public official asserting qualified immunity need only show "objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." Id. at 1564 (quoting Barker v. Norman, 651 F.2d 1107, 1121 (5th Cir. 1981)).  Courts should not be "overly narrow" in interpreting this requirement. Jordan v. Doe, 38 F.3d 1559, 1566 (11th Cir. 1994).  To determine this question "a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." Harbert Intern., Inc. v. James, 157 F.3d 1271, 1282 (11th Cir. 1998) (citation omitted).  As one district court observed, "the determination that an officer was acting within his discretionary authority is quite a low

21

hurdle to clear."  Godby v. Montgomery County Bd. of Educ., 996 F. Supp. 1390, 1401 (M.D. Ala. 1999).

As noted by the Court at the motion to dismiss stage, it was "undisputed, ***and alleged***, by the Plaintiff, that the Defendants were at all relevant times acting within the scope of their discretionary authority".  (Doc. 12 at pp. 13-14, citing Doc. 1 at ¶¶ 4-5, 14 (emphasis added).) Even without the allegations, the facts in the summary judgment record show that Lt. West was on duty and performing his functions as commander of the DTF.  Consequently, as Lt. West easily meets his burden in the qualified immunity analysis, the burden shifts to the Plaintiff to demonstrate the existence of a constitutional violation and clearly established law.

## II.    LT. WEST DID NOT VIOLATE ANY OF THE PLAINTIFF'S FEDERALLY PROTECTED RIGHTS.

As noted previously, the Plaintiff alleges five violations of his Fourth Amendment rights: (1) illegal traffic stop; (2) false arrest; (3) unlawful search; (4) excessive force and (5) malicious prosecution.  (Doc. 12 at p. 38.)  The Plaintiff's claims survived Lt. West's 12(b)(6) motion on the basis of allegations in the Complaint that subsequent discovery has revealed to be untrue and, in at least one important aspect, a misrepresentation to the Court.  As set forth more fully below, no reasonable jury could conclude from the evidence in the record that Lt. West violated any of the Plaintiff's federally protected rights.

### A.    The Traffic Stop Was Lawful.

The only question for purposes of determining the constitutionality of a traffic stop is: "Did [the officer] have probable cause to believe that a traffic violation had occurred?"  Draper v. Reynolds, 369 F.3d 1270, 1275 (11th Cir. 2004).  The subjective intent of the officer is utterly irrelevant.  Id. citing Wren v. United States, 517 U.S. 806, 812-13 (1996); United States v. Holloman, 113 F.3d 192, 194 (11th Cir. 1997).  Instead, "[w]hether probable cause exists is

'viewed from the standpoint of an objectively reasonable police officer.'"  (Doc. 12 at p. 17

quoting  United States v. Chanthasouxat, 342 F.3d 1271, 1276 (11th Cir. 2003).)  The Eleventh

Circuit has held that "probable cause" exists where:

> 'the facts and circumstances within [the officers]' knowledge and of which they had
> reasonably trustworthy information [are] sufficient in themselves to warrant a man
> of reasonable caution in the belief that' an offense has been or is being committed.
> Brinegar v. United States, 338 U.S. 160, 175-76, 69 S.Ct. 1302, 1310-11, 93 L.Ed.
> 1879 (1949)(brackets in original) (citing Carroll v. United States, 267 U.S. 132, 162,
> 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925)); Wilson v. Attaway, 757 F.2d 1227, 1235
> (11th Cir. 1985).    Probable cause does not require overwhelmingly convincing
> evidence, but only "reasonably trustworthy information," Beck v. Ohio, 379 U.S. 89,
> 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964), and probable cause "must be judged
> not with clinical detachment but with a common sense view to the realities of normal
> life."  Wilson, 757 F.2d at 1235.  When the facts are not in dispute, whether probable
> cause existed is a question of law, and summary judgment is appropriate.  See White
> v. Pierce County, 797 F.2d 812, 815 (9th Cir. 1986); Wille v. Raymond, 487 So.2d
> 1211, 1214 (Fla.App.1986).

Marx v. Gumbinner, 905 F.2d 1503, 1506 (11th Cir. 1990).

Alabama law mandates that all front seat passengers use seatbelts.  Ala. Code § 32-5B-

4(a).  This requirement does not apply to the occupants of cars manufactured *prior* to 1965.  Ala.

Code § 32-5B-4(b)(5).  The Plaintiff alleged in his Amended Complaint that he was "lawfully

operating his motor vehicle, a 1971 Chevrolet Nova, on a public road in Lowndes County."

(Doc. 16 at ¶ 8.)  This was a clear misrepresentation to the Court.  The Plaintiff admitted in

responses to requests for admission and in his deposition that his car was equipped with seatbelts

but that neither he nor his passenger were using them at the time the Agents attempted to stop

them.  Moreover, on the date of the Plaintiff's arrest, he signed a written "courtesy warning" for

attempting to elude and "no seat belt".   (Exhibit M, Case File, Courtesy Warning.)[9]

---

[9] The Plaintiff's signature on warning casts strong doubt on the validity of his earlier argument that he could not
know what information the Defendants had when they initiated the traffic stop – he signed a document informing
him of the basis for the stop.  While the undersigned has no doubt that Plaintiff's counsel was unaware of this
document prior to filing the Amended Complaint, there is likewise no doubt that the Plaintiff was aware of it.

23

Consequently, the Plaintiff had to be aware when he filed his Complaint and his Amended

Complaint that he was ***not*** operating his car lawfully at the relevant time on June 28, 2005.[10]

In his contemporaneously prepared statement, Lt. West noted that he saw that the

Plaintiff and Mr. Carmichael were not wearing their seatbelts.  (West stmt. at p. 1.)  Lt. West

specifically testified in his deposition that his probable cause for the traffic stop was the Plaintiff

and his passenger's failure to wear their seatbelts.  (West dep. at 56:17-22.)  The Plaintiff's car

was made within the timeframe that Alabama law requires the use of seatbelts.  The Plaintiff

admits his car was equipped with seatbelts and he was not wearing his.  Therefore, probable

cause existed for the traffic stop.

### B.    The Plaintiff Was Lawfully Arrested.

The existence of probable cause is an absolute bar to a 42 U.S.C. § 1983 false arrest claim.

Gumbinner, 905 F.2d at 1505-06.  Where a police officer has probable cause to arrest for "***any***

***chargeable offense***, then the probable cause element is satisfied."  Hill v. State, 665 So. 2d 1024,

1026 (Ala. Crim. App. 1995) (emphasis added).  The same principle described in Hill has been

recognized in a number of federal jurisdictions:

> Even assuming that statement is not sufficient probable cause for the assault
> citation, several courts have held that the existence of probable cause to make an
> arrest on one charge is sufficient to refute a charge of unlawful arrest on another,
> related charge. See, e.g., Rowe v. City of Rochester, 2002 U.S. Dist. LEXIS
> 25519, *32-*33 (W.D.N.Y.2002); Lieberman v. Dudley, 1998 U.S. Dist. LEXIS
> 16809, *5 n. 1 (D.Conn., Jul. 27, 1998); Luthe v. City of Cape May, 49 F.Supp.2d
> 380, 390-91 (D.N.J.1999). These cases reason that "probable cause requires only
> a probability or substantial chance of criminal activity. But a finding of probable
> cause is not contingent on whether the officer articulated the correct basis for the

---

(Compare with Doc. 12 at p. 21 noting that the Plaintiff could not be required to plead facts of which he was unaware.)  The Plaintiff's failure to plead facts of which he was aware deprived the Defendants of an earlier favorable resolution of the qualified immunity issue – and therefore stripped them of its benefits.

[10] And, of course, the Plaintiff neglected to plead that he did not have a permit for the gun in his car or that he was prohibited under federal law from possessing a gun due to his domestic violence conviction.  18 U.S.C. § 922(g)(9).  The Plaintiff, therefore, was hardly "peacefully" and "lawfully" operating his vehicle on June 28, 2005, as the Court was forced to conclude in ruling on the Defendants Rule 12(b)(6) motion.  (Doc. 12 at p. 19.)

arrest." *Rowe,* 2002 U.S. Dist. LEXIS at *33 (quoting *Lieberman,* 1998 U.S. Dist. LEXIS at *5 n. 1). This reasoning is persuasive, and I therefore recommend that this Court grant the city defendants' motion for summary judgment as to Count 1.

Massey v. Deslauriers, 2005 WL 2043006, *6 (D.Vt., 2005); see also Thomas v. Drochner, 1994 WL 803263, *12 (N.D.Ill.,1994) (explaining that, "[w]hen an individual is arrested under one charge when probable cause for arrest exists under another charge, the arrestee has suffered no Fourth Amendment injury sufficient for a § 1983 cause of action."); Craig v. Krzeminski, 764 F.Supp. 248, 250 (D.Conn., 1991) (reasoning that "if probable cause existed to arrest plaintiff for any crime, the arrest is valid.").

When qualified immunity is at issue, the burden becomes even more strenuous requiring a plaintiff to show the absence of even ***arguable*** probable cause. Jones v. Cannon, 174 F. 3d 1271, 1283 (11th Cir. 1999). Here, there was, at minimum, ***actual*** probable cause to arrest the Plaintiff for possession of a concealed weapon and ***arguable*** probable cause to arrest the Plaintiff for possession of a controlled substance.

The Plaintiff was clearly lawfully arrested. As alleged in the Amended Complaint and as demonstrated by the undisputed evidence in the record, the Plaintiff was arrested for, and charged with, possession of a controlled substance and possessing a pistol without a license. To defeat Lt. West's entitlement to qualified immunity, the Plaintiff must show the absence of even arguable cause to arrest on ***any*** charge. Hill, 665 So. 2d at 1026. With the evidence in the record, he cannot do so.

Under Alabama law, it is unlawful to carry a loaded pistol in a car without a license. Ala. Code §§ 13A-11-73, 13A-11-74. It is admitted by the Plaintiff in his responses to the Defendants' Requests for Production and deposition testimony that there was a loaded .357 magnum on the front seat next to him while he was driving his car. It is admitted by the Plaintiff

that he did not have a pistol license. The Plaintiff's admissions go far beyond establishing mere arguable probable cause to arrest him for the offense of carrying a concealed weapon – they are a complete confession to the crime. Consequently, the Plaintiff's arrest was lawful based on nothing more than the weapons charge.

To be sure, the Plaintiff has not confessed to possessing a controlled substance, but the facts known to Lt. West at the time would have convinced a reasonable officer that probable cause existed to arrest the Plaintiff for the crime. The following facts are demonstrated in the record and were known to Lt. West:

- The DTF had received information that the Plaintiff was selling drugs.

- The Plaintiff fled when the Agents attempted to stop them.

- During the chase, a baggy with a white powdery substance struck their windshield.

- A baggy with residue was subsequently found near the location where the baggy hit the Agents' windshield.

- In Lt. West's experience, drug sellers and users carried drugs in baggies like the one that was recovered.

These facts easily establish at least *arguable* probable cause and, in fact, support full probable cause.

As a final note on the Plaintiff's false arrest claim, there were other offenses committed by the Plaintiff for which, under federal law, he could have been arrested. A police officer may make an arrest for a traffic violation. Atwater v. City of Lago Vista, 532 U.S. 318, 323 (2001) ("The question is whether the Fourth Amendment forbids a warrantless arrest for a minor criminal offense, such as a misdemeanor seatbelt violation punishable only by a fine. We hold that it does not.") As discussed previously, the Plaintiff committed a seatbelt violation by his

own admission.  By his own admission, the Plaintiff also ran a stop sign.  (Marshall dep. at 52:4-13.)  Under Atwater, Lt. West could have arrested the Plaintiff for either of these charges for which, by the Plaintiff's own admission, probable cause existed.  See also Hill, 665 So. 2d at 1026.  The existence of probable cause to arrest for these offenses negates any possibility of recovery for false arrest.  Gumbinner, 905 F.2d at 1505-06.

####        C.    The Plaintiff's Person and Car Were Lawfully Searched.

With the evidence in the record clearly establishing probable cause for both stopping the Plaintiff and arresting him, the search of his person and car was lawful.   It has been long settled that a law enforcement officer may search a person for weapons and contraband incident to the person's arrest.  Chimel v. California, 395 U.S. 752, 762-763 (1969).  An officer may also search the passenger compartment of a vehicle following an occupant's arrest.  New York v. Belton, 453 U.S. 454, 460-61 (1981).  Such a search is valid even if the person was outside of the vehicle when the officer makes contact with the arrestee.  Thornton v. U.S., 541 U.S. 615, 617 (2004).  Where a car is impounded, the entire vehicle can be examined and inventoried.  Colorado v. Bertine, 479 U.S. 367, 374 (1987); Florida v. Wells, 495 U.S. 1, 4-5 (1990).

As discussed previously, Lt. West conducted a lawful traffic stop.  The Plaintiff was lawfully arrested.  As a result of the lawful arrest of the Plaintiff, both he and his car were properly searched.  Chimel, 395 U.S. 762-63; Belton, 453 U.S. at 460-61.  The car was impounded and inventoried according to DTF procedure.  (West dec. at ¶ 17-18; Hutson dep. at 32:21-33:1.) Consequently, the Agents were justified in examining the entire car.  Bertine, 479 U.S. at 374; Wells, 495 U.S. at 4-5.

**D.      Lt. West Did Not Use Excessive Force as a Matter of Law.**

At the motion to dismiss stage, the Court ruled that the Plaintiff's excessive force claim merged into the illegal traffic stop and unlawful arrest claims.  (Doc. 12 at pp. 27-29.)  As a result, the Court found the Defendants' dismissal arguments for the excessive force claim to be moot.  Id.  Summing up its decision, the Court's Order is notable for not including an excessive force claim.  Id. at pp. 38-39.

The basis for this ruling, however, was the possibility that there were no grounds for a stop at all, and therefore, no constitutional grounds for the use of force.  (Doc. 12 at pp. 27-28.)  The Court allowed the Plaintiff to amend and the Amended Complaint contains an excessive force claim.  (Doc. 12 at p. 38, Doc. 16 at ¶¶ 58-64.)  As demonstrated above, the stop was lawful.  Therefore, taking the lawfulness of the traffic stop, the Court's earlier reasoning, and the Plaintiff's Amended Complaint into account, Lt. West proffers the following arguments out of an abundance of caution as to why he is entitled to summary judgment on any excessive force claims that may exist.

The test for determining whether an officer has applied excessive force in the course of seizing a person is the "objective reasonableness" test.  Graham v. Connor, 490 U.S. 386, 395 (1989).  Whether a specific use of force is objectively reasonable turns on several factors including the severity of the crime, whether the suspect poses an immediate threat, and whether the suspect is resisting or fleeing.  Graham, 490 U.S. at 394; Post v. City of Fort Lauderdale, 7 F.3d 1552, 1559 (11th Cir.1993). In the Eleventh Circuit, the extent of the injury inflicted is another factor to consider.  Leslie v. Ingram, 786 F.2d 1533, 1536 (11th Cir.1986).

28

Generally, the actions of the officer must be reasonable in light of the facts and circumstances confronting the officer, without regard to his underlying intent or motivation. Graham, 490 U.S. at 397. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 396. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Id. at 396-97. The Eleventh Circuit has added "[w]e must see the situation through the eyes of the officer on the scene who is hampered by incomplete information and forced to make a split-second decision between action and inaction in circumstances where inaction would prove fatal." Crosby v. Monroe County, 394 F.3d 1328, 1333-34 (11th Cir. 2004).

"In analyzing whether excessive force was used, courts must look at the totality of the circumstances." Garrett v. Athens-Clarke County, 378 F.3d 1274, 1280 (11th Cir. 2004). "We must look at the situation not with hindsight, but with the eye of the objectively reasonable officer on the scene." Garrett, 378 F.3d at 1281. "Graham requires an evaluation of the officers' reasonable apprehension to assess their responses to the circumstances confronting them, particularly in a rapidly evolving situation." Carr v. Tatangelo, 338 F.3d 1259, 1268 n.17 (11th Cir. 2003).

"Government officials are not required to err on the side of caution." Marsh v. Butler County, 268 F.3d 1014, 1030 n.8 (11th Cir. 2001) (en banc). "We must see the situation through the eyes of the officer on the scene who is hampered by incomplete information and forced to make a split-second decision between action and inaction in circumstances where inaction would prove fatal." Crosby, 394 F.3d at 1333-34.

"Reconsideration will nearly always reveal that something different could have been done if the officer knew the future before it occurred. This is what we mean when we say we refuse to second-guess the officer." Carr v. Tatangelo, 338 F.3d 1259, 1270 (11th Cir. 2003) (citation omitted). "We must avoid substituting our personal notions of proper police procedure for the instantaneous decision of the officer at the scene. We must never allow the theoretical, sanitized world of our imagination to replace the dangerous and complex world that policemen face every day." Smith v. Freland, 954 F.2d 343, 347 (6th Cir. 1992). "The Constitution simply does not require police to gamble with their lives in the face of a serious threat of harm." Elliott v. Leavitt, 99 F.3d 640, 641 (4th Cir. 1996).

As a final general matter, the Court should be mindful of Lt. West's belief that the situation confronting him involved possession of narcotics. He had information that the Plaintiff was selling drugs, the Plaintiff fled his attempt to conduct a traffic stop, and a baggy with a white powdery substance hit his windshield during the chase. The United States Supreme Court has held that when narcotics transactions "*may give rise to sudden violence or frantic efforts to conceal or destroy evidence.*" Michigan v. Summers, 452 U.S. 692, 703 (1981) (emphasis added).

There were three discrete uses of force by Lt. West in the instant case and each was objectively reasonable. The first use of force was the PIT that brought the Plaintiff's headlong flight to an end. The second purported use of force was the warning shot fired by Lt. West following the PIT. Finally, Lt. West used force when he brought the Plaintiff under control and secured him in the back of his car.

1.      **The use of the PIT maneuver to end the Plaintiff's flight was reasonable.**

The first use of force by Lt. West was the bumping and eventual PIT maneuver that brought the chase to an end.  The question of the constitutionality of the PIT maneuver does not turn, as the Plaintiff has alleged, on whether or not it constituted deadly force, but whether its use was reasonable under the circumstances.  Scott, 127 S.Ct. at 1777-78 (noting that "in the end we must still slosh our way through the fact-bound morass of 'reasonableness.'").  Analyzed under Graham, this use of force was clearly reasonable under the circumstances.

The crime at issue was severe – at minimum, a Class C felony, and arguably a Class A felony under Alabama law.  As the undisputed facts show, Lt. West did not execute the PIT maneuver until *after* a baggy containing a white powdery substance hit his windshield.  This, combined with the information in Lt. West's possession that the Plaintiff was selling drugs and was actively engaged in flight, would lead a reasonable officer to believe that the substance in the baggy (1) came from the Plaintiff's car; and (2) contained illicit drugs.[11]  Therefore, at the time he executed the maneuver, the crime the Plaintiff was suspected of committing was possession of a controlled substance – a Class C felony under Alabama law.  Ala. Code 13A-12-212.  As there was no way of knowing how much powder would still be in the baggy when it was retrieved, at the time the PIT was executed, Lt. West could have justifiably believed the Plaintiff was guilty of trafficking – a Class A felony under Alabama law.  Ala. Code § 13A-12-231.  Consequently, the potential crimes involved were severe.

---

[11] Both Agents testified that they saw the Plaintiff throw the baggy.  (West dep. at 24:1-5; Hutson dep. at 22:20-23:5.)  However, because the Plaintiff testified that all he threw out the window was a cigarette butt, Lt. West assumes for purposes of summary judgment only that he did not see the Plaintiff throw the baggy.  Nonetheless, it remains undisputed that a baggy with a white powdery substance hit the agents' windshield and that a baggy with some type of residue was later recovered near the area.

The Plaintiff was a potential threat. The Plaintiff was in the process of fleeing from law enforcement officers in a vehicle. Upon questioning by Plaintiff's counsel, Lt. West conceded that it was a "high speed chase". (West dep. at 48:11-22.) Agent Hutson likewise testified that the pursuit may have reached speeds of 70 mph in a 55 mph zone. (Hutson dep. at 23:10-19.) In his headlong flight from law enforcement, the Plaintiff was a danger to anyone he encountered. While there is no evidence in the record of any bystanders or innocent motorists, there was no way for Lt. West to know that the situation would remain static.

Of course, the Plaintiff's admitted flight demonstrates conclusively that the Plaintiff was actively fleeing at the time Lt. West executed the PIT maneuver. In his deposition testimony, the Plaintiff proffered a number of excuses for his flight. Assuming all of them to be true, however, none of those excuses were known to Lt. West. There is no evidence that Lt. West knew the Plaintiff had been robbed on a previous occasion. There is no evidence that Lt. West knew the Plaintiff could not see his blue and white strobe. In short, there is no evidence that Lt. West knew the Plaintiff did not know he was a law enforcement officer. The evidence does show Lt. West knew the Plaintiff was fleeing.

The final factor also weighs in Lt. West's favor. There was no injury to the Plaintiff. The PIT occurred at 35 mph. A review of the photographs shows that the Plaintiff's car suffered nothing more than a dented left rear fender. The Plaintiff claims that he suffered a "knot" on his head when his left temple hit the steering wheel. However, the picture of the Plaintiff – clearly showing the left temple area – belies the Plaintiff's testimony. No reasonable jury would credit his testimony over the pictures. Scott, 127 S. Ct. at 1776. However, even if such testimony was credited, a mere bump on the head which required no medical treatment is *de minimis*.

The Plaintiff's dangerous headlong flight to avoid what Lt. West believed was at least a Class C felony was brought to a conclusion at the cost of nothing more than a dented fender and a "knot" on the Plaintiff's head. Under Graham, therefore, the PIT was not excessive.

### 2.    Firing a warning shot is not excessive force.

The undersigned has conducted a diligent review of the relevant law and cannot find a single case in which a warning shot has been deemed to constitute excessive force. To the contrary, the Eighth Circuit has expressly held that firing multiple warning shots into the air near a crowd of people "did not violate anyone's constitutional rights". Otey v. Marshall, 121 F.3d 1150, 1156 (8th Cir. 1997).

Unlike Otey, the single warning shot fired here went directly into the ground. Its use was intended to obtain the compliance of an uncooperative and belligerent narcotics subject. The area in which the shot was fired was a rural area so there was minimal danger to innocent bystanders. Moreover, Lt. West had no other alternative force options available.

In terms of Graham, the Plaintiff was suspected of, at minimum, a Class C felony. He was belligerent and refusing to obey commands to get on the ground – even with Lt. West's gun pointed at him. The situation was one in which the Supreme Court has found inherent danger to officers, flight risks, and efforts to destroy evidence. Summers, 452 U.S. 692, 703. There was no injury whatsoever to the Plaintiff resulting from the warning shot. Consequently, even if firing a warning shot could be deemed a use of force, it was not excessive.

### 3.    Lt. West used only the force necessary to secure the Plaintiff and overcome his refusal to obey the Agents' instructions.

There are two separate physical uses of force that Lt. West engaged in with respect to the Plaintiff. First, Lt. West put the Plaintiff on the ground with a "foot sweep" and placed him in handcuffs to initially bring the Plaintiff under control. Second, Lt. West purportedly used a "full

nelson choke" on the Plaintiff when he refused to sit in the car.  Both of these uses of force were objectively reasonable.

In both instances, the Plaintiff was suspected of committing a felony.  Both instances involved the inherently dangerous situation described by the Supreme Court in Summers.  In both instances the Plaintiff was resisting by refusing to obey commands.  In both instances, the use of force terminated immediately upon the Plaintiff's compliance with the command.  In both instances the Plaintiff was not injured.  Compliance with commands in an inherently dangerous situation in which the Plaintiff was refusing commands was obtained with absolutely no injury to the Plaintiff. Consequently, under Graham, the force used by Lt. West was not excessive.

### E.    The Plaintiff Was Lawfully Prosecuted.

At the outset, it is interesting to note that just a year ago, the United States Supreme Court stated that:

> We have never explored the contours of a Fourth Amendment malicious-prosecution suit under § 1983 , see Albright v. Oliver, 510 U.S. 266, 270-271, 275, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (plurality opinion), and we do not do so here. See generally 1 M. Schwartz, Section 1983 Litigation § 3.18[C], pp. 3-605 to 3-629 (4th ed.2004) (noting a range of approaches in the lower courts).

Wallace v. Kato, 127 S.Ct. 1091, 1096 n.2 (2007).  In Albright, the Supreme Court noted an "embarrassing diversity" of judicial opinions as to whether a malicious prosecution claim was available under 42 U.S.C. § 1983.   510 U.S. at 270 n.4.   However, in examining the "embarrassing diversity" of opinions, the Albright Court cited Eleventh Circuit authority recognizing that a malicious prosecution claim was available.  Id. citing Strength v. Hubert, 854 F.2d 421, 426, and n.5 (11th Cir. 1988).

In 1996, the Eleventh Circuit reexamined its position on the existence of a malicious prosecution action under § 1983.   Whiting v. Traylor, 85 F.3d 581 (11th Cir. 1996).   The

Whiting Court indicated that there was no separate constitutional tort of "malicious prosecution", but that it was rather "a description of the right to be free from an unlawful seizure which is part of a prosecution." 85 F.3d at 584 n.4. However, in 2003, the Eleventh Circuit seemed to have reversed its ground again and, while recognizing Whiting's characterization of what a malicious prosecution claim actually was, nonetheless recognized the existence of the claim. Wood v. Kesler, 323 F.3d 872, 881 (11th Cir. 2003).

It therefore appears that the controlling authority in the Eleventh Circuit recognizes the existence of a malicious prosecution claim under 42 U.S.C. § 1983. However, given the United States Supreme Court's pronouncement in Wallace, and the apparent shifting of position in the Eleventh Circuit, Lt. West asserts as his first line of defense that no such constitutional tort as "malicious prosecution" exists.[12] In so doing, he adopts the Eleventh Circuit's reasoning in Whiting that "malicious prosecution" is not a separate claim but rather part or an unlawful seizure claim. Lt. West alternatively asserts that malicious prosecution under 42 U.S.C § 1983 should be a separate claim only where state law does not provide an analogue. See Usher v. Los Angeles, 828 F.2d 556, 561-62 (9th Cir. 1987).

However, even if the current state of the law in the Eleventh Circuit is ultimately upheld by the United States Supreme Court, Lt. West is still entitled to qualified immunity. As set forth previously by this Court, in order to prevail on his malicious prosecution claim, the Plaintiff must point the Court to evidence in the record showing (1) institution of a prior judicial proceeding started by Lt. West; (2) a lack of probable cause to institute the proceeding; (3) malice on the part of Lt. West in instituting the proceeding; (4) a favorable resolution to the prior proceeding; and (5) damages. (Doc. 12 at pp. 30-31 citing U.S. Steel, L.L.C. v. Tieco, Inc., 261 F.3d 1275, 1289-90

---

[12] Lt. West is aware that this Court must follow the Eleventh Circuit's current law. The argument is made solely to preserve the issue for appeal.

(11th Cir. 2001).)  Where the Court summarily rejected the Defendants' argument with respect to the second and third elements at the motion to dismiss stage, the posture of the case on summary judgment mandates a reversal of the Court's opinion.

As discussed extensively above, the evidence demonstrates ample evidence of probable cause to support instituting the weapons and drug charges against the Plaintiff.  It bears repeating that the Plaintiff has confessed to the elements of the gun charge.  While the drug charge was ultimately terminated, *at the request of Lt. West*, because the baggy did not contain drugs, the information related to the Plaintiff's drug-selling activities, flight from the Agents, baggy with white powder striking the windshield during the pursuit, and subsequent recovery of the baggy provided Lt. West with more than ample probable cause to bring the drug charge against the Plaintiff.

Moreover, it was only the allegation that there was no probable cause that caused the Court to infer malice in its earlier decision.  (Doc. 12 at p. 31.)  Now, on summary judgment, the record is absolutely devoid of any ill-intent on the part of Lt. West.  In fact, it was Lt. West who took steps to terminate the drug charge as soon as he learned of the lab results.  The only evidence, therefore, is the evidence supporting probable cause and Lt. West's separate action in bringing about an end to the proceedings as soon as the exculpatory evidence came into his hands.

With respect to the firearms charge, Lt. West dismissed his state case and turned the matter over to federal prosecutors.  (West dec. at ¶ 14.)  Lt. West gave the evidence to the Bureau of Alcohol Tobacco and Firearms.  Id.  The U.S. Attorney's office is now making decisions on whether the Plaintiff will face prosecution for the gun charges.  Id.  Consequently, Lt. West cannot be held liable for malicious prosecution related to the gun charges.  See Eubanks v. Gerwen, 40 F.3d 1157, 1160-61 (11th Cir. 1994) (intervening acts of prosecutor eliminate officers as "proper targets of a malicious prosecution claim); Barts v. Joyner, 865 F.2d 1187, 1195 (11th Cir. 1989) (absent

36

deception the subsequent decisions of prosecutors, judges and juries "break the chain of causation" for a malicious prosecution claim against the arresting officer).  Here, there is absolutely no evidence in the record of deception – all Lt. West did was turn the matter over to federal law enforcement authorities.

## III.    NO CLEARLY ESTABLISHED LAW PROVIDED LT. WEST WITH "FAIR WARNING" THAT HIS CONDUCT WAS UNLAWFUL.

The Plaintiff's final burden under the qualified immunity analysis is to show that clearly established law provided Lt. West with fair warning that his conduct was unlawful by either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or federal constitutional provision is specific enough to demonstrate conduct was illegal, even in the total absence of case law.  Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted).  The Eleventh Circuit has identified the latter method as an "obvious clarity" case.  Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted).   In order to show that the conduct of Lt. West was unconstitutional with "obvious clarity," "the unlawfulness must have been apparent."  Willingham, 321 F.3d at 1301.  "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit."  Storck, 354 F.3d at 1318 (quoting 28 F.3d at 1149).

As the foregoing arguments and recitation of law show, the Plaintiff will not be able to provide the Court with a materially similar case.  Likewise, the same case law prevents the Plaintiff from showing that any of his alleged constitutional violations fit he mold of "obvious clarity" claims.  Consequently, as no clearly established law provided Lt. West with "fair warning" that his

conduct was illegal, he is entitled to judgment in his favor as a matter of law on the Plaintiff's claims.

## CONCLUSION

Based on the foregoing, Defendant Chris West requests that this Honorable Court enter an Order granting him judgment in his favor as a matter of law.

Respectfully submitted this the 12th day of February, 2008.

s/Gary L. Willford, Jr.
DARYL L. MASTERS Bar No.  MAS018
GARY L. WILLFORD, JR. – Bar No. WIL198
Attorneys for Defendant Chris West
WEBB & ELEY, P.C.
7475 Halcyon Pointe Drive (36117)
P.O. Box 240909
Montgomery, Alabama  36124
Telephone:  (334) 262-1850
Fax:  (334) 262-1889
E-mail:  gwillford@webbeley.com

## CERTIFICATE OF SERVICE

I hereby certify that on **February 12, 2008**, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:  **Jay Lewis, Esq., Rick Howard, Esq.**

s/Gary L. Willford, Jr.
OF COUNSEL

38