**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **RICHARD MARSHALL,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **CIVIL ACTION NO. 2:06-cv-701-ID-CSC** |
| | ) |
| **CHRIS WEST, in his individual capacity,** | ) |
| **LASHUN HUTSON, in his individual** | ) |
| **capacity,** | ) |
| | ) |
| **Defendants.** | ) |

**REPLY BRIEF IN SUPPORT OF DEFENDANT CHRIS WEST'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

COMES NOW Lowndes County, Alabama, Deputy Sheriff Chris West, a Defendant in the above-referenced matter, and submits this Reply Brief in support of his Motion for Summary Judgment.

## TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................2

TABLE OF AUTHORITIES .............................................................................4

INTRODUCTION..............................................................................................6

REPLY FACTS ..................................................................................................6

I.     LT. WEST'S ALLEGED "MISREPRESENTATIONS".......................7

       A.    The Gun Is Relevant. ...................................................................7

       B.    Lt. West Has Not Claimed That The Plaintiff Threw A Baggy
             Containing Drugs Out Of The Window Of His Car...................7

       C.    The Plaintiff's Remaining "Misrepresentations" Are Really
             Distinctions With No Difference. ..............................................10

II.    REPLY TO THE PLAINTIFF'S STATEMENT OF FACTS.............13

       A.    The Plaintiff Has No Personal Knowledge Regarding the
             Initial Activation of the Defendant's Portable Blue Light. ......13

       B.    Neither the Plaintiff Nor His Passenger Were Wearing Their
             Seatbelts. ....................................................................................15

       C.    The Plaintiff's Labeling the Seatbelt Violation as a "Pretext" is
             Irrelevant. ...................................................................................16

ARGUMENT....................................................................................................16

I.     THE PLAINTIFF HAS FAILED TO MEET HIS BURDEN OF
       SHOWING THAT LT. WEST USED EXCESSIVE FORCE IN
       VIOLATION OF THE FOURTH AMENDMENT. ............................17

       A.    The Force Used by Lt. West Was Reasonable Under Graham
             and Its Progeny. .........................................................................17

             1.    The Crime the Plaintiff Was Suspected of Committing
                   Was Severe. .......................................................................18

             2.    The Threat Posed by the Plaintiff Was Severe. ...............19

             3.    The Plaintiff Fled and Resisted. .......................................21

2

**B.**     **The Plaintiff's Arguments Fails to Show Lt. West Used Excessive Force**......................................................................**21**

      **1.**     **The Agents Identified Themselves.** ....................................21

      **2.**     **Warning Shots Do Not Constitute Deadly Force.**............22

      **3.**     **The PIT Maneuver Was Reasonable Under the Circumstances.**......................................................................24

      **4.**     **The Alleged "Choke Hold" Was Reasonable.**..................26

**C.**     **The Force Used by Lt. West Was *De Minimis*.** .........................**26**

**II.**     **THE PLAINTIFF HAS FAILED TO PROVIDE THE COURT WITH CLEARLY ESTABLISHED LAW THAT PROVIDED LT. WEST WITH "FAIR WARNING" THAT HIS CONDUCT WAS UNLAWFUL.** ................................................................................**27**

**CONCLUSION** ........................................................................................**28**

**CERTIFICATE OF SERVICE** ..........................................................**29**

# <u>TABLE OF AUTHORITIES</u>

*Cases*

Atwater v. City of Lago Vista, 532 U.S. 318 (2001) ................................................................ 19

Evans v. Stephens, 407 F.3d 1272 (11th Cir. 2005) ................................................................ 16

Graham v. Connor, 490 U.S. 386 (1989) ................................................................................ 17

Greason v Kemp, 891 F.2d 829 (11th Cir. 1990) .................................................................... 15

Jenkins v. Talladega Bd. of Educ., 115 F.3d 821 (11th Cir. 1997) ............................................ 28

Leslie v. Ingram, 786 F.2d 1533 (11th Cir. 1986) .............................................................. 18, 27

Madrid v. Gomez, 889 F.Supp. 1146 (N.D. Cal. 1995) ............................................................ 23

Michigan v. Summers, 452 U.S. 692 (1981) ...................................................................... 20, 25

Nolin v. Isbell, 207 F.3d 1253 (11th Cir. 2000) ................................................................ 26, 27

Otey v. Marshall, 121 F.3d 1150 (8th Cir. 1997) .................................................................... 23

Pace v. Capobianco, 283 F.3d 1275 (11th Cir. 2002) ............................................................. 14

Scott v. Harris, 127 S.Ct. 1769 (2007) ...................................................................... 22, 25, 27

Storck v. City of Coral Springs, 354 F.3d 1307 (11th Cir. 2003) ............................................. 28

U.S. v. Blake, 888 F.2d 795 (11th Cir. 1989) ......................................................................... 22

U.S. v. Jones, 239 F.3d 716 (5th Cir. 2001) ........................................................................... 12

U.S. v. Taylor, 458 F.3d 1201 (11th Cir. 2006) ...................................................................... 11

U.S. v. Tobin, 923 F.2d 1506 (11th Cir. 1991) ....................................................................... 12

Vinyard v. Wilson, 311 F.3d 1340 (11th Cir. 2002) ................................................................ 26

Whren v. U.S., 517 U.S. 806 (1996) ..................................................................................... 16

*Statutes*

Ala. Code § 13A-12-212 ...................................................................................................... 19

Ala. Code § 13A-12-231 ............................................................................................... 19

Ala. Code § 32-5A-192 ............................................................................................... 19

## INTRODUCTION

The Plaintiff has filed an opposition to Lt. West's Motion for Summary Judgment. (Doc. 38.) The Plaintiff's Opposition fails to take issue with any of the Defendant's arguments regarding his illegal traffic stop, false arrest, unlawful search, and malicious prosecution claims. (See generally Doc. 38.) Instead the Plaintiff focuses almost exclusively on alleged factual "misrepresentations" in Lt. West's Motion for Summary Judgment and his excessive force claim. Id. With the Plaintiff apparently conceding his other claims and the legal arguments in his Opposition failing to save his excessive force claim, Lt. West is entitled to judgment in his favor as a matter of law.

## REPLY FACTS

The Plaintiff's first line of attack in his Opposition is to accuse Lt. West of "misrepresentations of fact" and a "lack of candor". (Doc. 38 at pp. 11, 12.) The alleged "misrepresentations" can be grouped into three areas. First, the Plaintiff amazingly asserts that the presence of a loaded gun in his car is irrelevant. Second, the Plaintiff falsely claims that Lt. West asserted as fact that he threw a baggie containing drugs out of his car during the chase. Third, the Plaintiff attempts to label a series of factual statements as "misrepresentations" based upon irrelevant "distinctions". As will be made clear below, if there is a lack of candor regarding the facts in this case, it belongs to the Plaintiff and not Lt. West.[1]

---

[1] There is one factual issue that Lt. West concedes, albeit one that was not specifically addressed as a "misrepresentation" by the Plaintiff. In his brief, Lt. West stated there was a stop sign at the intersection of County Road 7 and Highway 21. (Doc. 32 at p. 10.) However, the Plaintiff did testify in his deposition that there was a yield sign at the intersection. (Marshall dep. at 51:12-17.) Accordingly, Lt. West withdraws, for purposes of summary judgment only, his argument that the Plaintiff ran a stop sign.

I.      **LT. WEST'S ALLEGED "MISREPRESENTATIONS".**

     A.      **The Gun Is Relevant.**

In what is probably the most baseless argument the Plaintiff makes in his brief, he claims that the loaded gun found in his car is not relevant. (Doc. 38 at p. 9.) Apparently, the Plaintiff has forgotten that he has made false arrest and malicious prosecution claims. (Doc. 16 at pp. 6-7, 9-10.) More specifically, the Plaintiff appears to have forgotten that one of the charges he was allegedly illegally arrested and prosecuted for was "carrying a pistol without a license." Id. at ¶ 36. It is axiomatic that whether a gun was in the Plaintiff's car is relevant, if not essential, in determining whether Lt. West had arguable probable cause to arrest the Plaintiff for and charge him with the crime of carrying a pistol without a license. Looked at from the perspective of the false arrest and malicious prosecution claims, the Plaintiff's relevance argument borders on the absurd.

More generally, the gun is relevant to every action taken by Lt. West after he became aware of its presence. The decision to search the Plaintiff, the decision to search the vehicle, the force used on the Plaintiff when he failed to comply with Lt. West's commands *after* Lt. West saw the gun, are all directly impacted by the presence of the gun. Clearly, the Plaintiff would like to render the fact that he was illegally carrying a firearm under both state and federal law meaningless. However, in making the claims that he has made, the Plaintiff has given the gun particular relevance. He should not be allowed to sweep this inconvenient fact under the rug.

     B.      **Lt. West Has Not Claimed That The Plaintiff Threw A Baggy Containing Drugs Out Of The Window Of His Car.**

In his Opposition, the Plaintiff argues that the "Defendants' allegations about Marshall throwing drug evidence out of his car window is not merely a disputed fact; it is a nonexistent

fact." (Doc. 38 at p. 10.) The Plaintiff's argument is correct in one respect, it is a "nonexistent fact" that Lt. West's summary judgment facts include an averment that the Plaintiff threw drug evidence out of his car. Lt. West's summary judgment submissions contain no such claim.

The Plaintiff's strawman argument is demonstrably false in two respects. First, Lt. West assumed for purposes of summary judgment that the Plaintiff did not throw a baggy out of the window. Second, Lt. West specifically informed the Court that there were no drugs in the baggy that was recovered after the pursuit.

Lt. West expressly assumed, for purposes of summary judgment only, the truth of the Plaintiff's testimony that he did not throw a baggy out of his car during the chase. Lt. West specifically informed the Court:

> Both Agents testified that they saw the Plaintiff throw the baggy. (West dep. at 24:1-5; Hutson dep. at 22:20-23:5.) However, because the Plaintiff testified that all he threw out the window was a cigarette butt, *Lt. West assumes for purposes of summary judgment only that he did not see the Plaintiff throw the baggy. Nonetheless, it remains undisputed that a baggy with a white powdery substance hit the agents' windshield and that a baggy with some type of residue was later recovered near the area*.

(Doc. 32 at p. 31 n.11 (emphasis added).) Consequently, the Plaintiff's claim that Lt. West's summary judgment facts include his throwing a baggy out of the window is false.

The Plaintiff also falsely claims that Lt. West asserted in his argument that the baggy contained illicit drugs. In fact, Lt. West specifically informed the Court:

> Approximately 50 to 75 yards out on Highway 21, *a plastic baggy containing a white powder hit the Town Car's windshield*. (West dep. at 24:1-6; Hutson dep. at 22:20-23:5.) *The Plaintiff testified that he did not throw a baggy out of his car, but may have thrown a cigarette out of his window*. (Marshall dep. at 74:15-75:2.) Lt. West made a mental note of the location because in his experience, drugs were kept in baggies like the one that hit his windshield and he believed that the baggy came from the Plaintiff's car. (West dep. 24:4-9, 31:8-17; West dec. at ¶¶ 6-8.)

> ***Lt. West later recovered a baggy containing residue near where his car was hit***.
> Id. at 40:15-22.  He submitted the baggy to the Department of Public Safety
> (hereinafter "DPS") for fingerprint testing and later to the Department of Forensic
> Sciences (hereinafter "DFS") for drug testing.  Id. at 40:23-41:12, Ex. 1.
> However, on August 25, 2005, DPS returned the evidence with a letter indicating
> that no fingerprints were found.  Id. at 41:4-8, Ex. 1, 8/25/05 Letter from DPS.
> ***DFS subsequently returned the evidence with a letter dated February 2, 2006,
> indicating that the baggy did not contain a controlled substance***.  Id. at 41:9-12,
> Ex. 1, 2/2/06 Certificate of Analysis from DFS.

(Doc. 32 at pp. 10-11 (emphasis added).)

What Lt. West stated as fact – and this is completely undisputed by any other facts in the record – is that a baggy containing a white powder hit his windshield during the chase.  A baggy was later recovered near the same area where the baggy struck his car.  The baggy was submitted to the Alabama Department of Forensic Sciences (hereinafter "DFS") for testing.  Testing revealed that the white powder in the baggy was not a controlled substance.  All of these statements of fact are fully supported by the evidence in the record without contradiction.  Tellingly, the Plaintiff has not cited the Court to any part of the record that would cast any doubt as to the existence of these facts.

Also undisputed is Lt. West's testimony regarding his ***belief*** – during the time of the chase – that the baggy came from the car and contained drug evidence.  The Plaintiff may be entirely correct in his supposition (based on absolutely no evidence in the record) that the baggy was litter left over from someone's lunch.  However, given the information Lt. West had regarding the Plaintiff's alleged drug activities, his years of experience as a narcotics agent, the Plaintiff's (at the time) inexplicable flight, and the timing of the events, a reasonable officer

could reach the same conclusions Lt. West reached.  A reasonable officer would not necessarily need to see the baggy thrown from the car he was chasing.[2]

### C.    The Plaintiff's Remaining "Misrepresentations" Are Really Distinctions With No Difference.

The Plaintiff has labeled six additional factual statements in Lt. West's brief as "misrepresentations".  Each alleged "misrepresentation" will be addressed in its turn.

> **1.    Defendant West erroneously informs this Court that there is no evidence in the record that Marshall ever tried to tell Defendants he did not know they were police officers.  (West Mem. Supp. Summ. J. 10 footnote 4.)  Marshall stated in his deposition, however, that he tried to tell West he thought they were trying to rob him.  (Marshall Dep. 97:1-4.)**

The Plaintiff's citation to his testimony does nothing to refute Lt. West's statement.  It is difficult to understand how the Plaintiff telling Lt. West that he thought he was trying to rob him equates to telling him, "I did not know you were a police officer."  This is particularly true given the Plaintiff's claim that Lt. West took money from him.  Despite knowing that Lt. West was a police officer at the time, the Plaintiff has, and continues, to claim that Lt. West robbed him. (Doc. 38 at pp. 6-7.)

Even if "I thought you were trying to rob me" was synonymous with "I did not know you were a police officer", the Plaintiff's distinction is still irrelevant.  The point at which the Plaintiff claims to have made this statement to Lt. West was *after* the pursuit was terminated, *after* the warning shot was fired, *after* the Plaintiff was put on the ground, *after* he was placed in handcuffs, and while he was being searched.  The context of the statement in Lt. West's brief

---

[2] In his argument, the Plaintiff claims that Lt. West "testified that at the point the [alleged] baggie was thrown out the window there was no evidence that Marshall threw drugs out of his window or possessed drugs." (Doc. 38 at p. 10 citing West dep. 49:18-22.)  Put in context, this is not what Lt. West said.  The Plaintiff's attorney had just finished questioning Lt. West about the lab results and was asking him about statements contained in the warrant deposition.  (West dep. 44:11-49:16.)  Put in context, "at this point" was clearly a reference to the time Lt. West submitted the deposition and not the time of the chase.

was the period of time encompassing the car chase.  (Doc. 32 at p. 10.)  There is no evidence in the record that the Plaintiff ever communicated any statement, no matter how tortured or remote, *during the car chase*, that he did not believe the Defendants were police officers.

> **2.    Defendant West incorrectly cites to his deposition as stating that both Marshall and Carmichael were not wearing seatbelts when the deposition only mentions Marshall.  (West Mem. Supp. Summ. J. 8) (*citing* West Dep. 19:20.)**

The Plaintiff has provided the Court with only *half* of Lt. West's citation to the record.  The actual citation was "West dep. 19:20*; Ex. 6 at p.1*."  (Doc. 32 at p. 8 (emphasis added).  As the Plaintiff well knows, Exhibit 6 to Lt. West's deposition was his Statement Form (which was also attached as Exhibit G to Lt. West's Evidentiary Materials).   At page one, Lt. West's statement reads "As we caught up with the vehicle *I observed neither the driver or [sic] passenger were wearing seatbelts*".   (West stmt. at p. 1 (emphasis added).)  It is, to say the least, disingenuous for the Plaintiff to cite this as an example of a "misrepresentation" when he, in fact, knows it is not and has ignored half of the supporting citation.

> **3.    Defendant West states they received information that Marshall was selling drugs but avoids bringing a crucial fact to this Court's attention.  (West Mem. Supp. Summ. J. 8)  West testified that the tip did not come from a reliable source and was insufficient to show probable cause.  (West Dep. 17:20-23.)**

The Plaintiff's "crucial fact" is irrelevant.  Lt. West has never claimed he had a warrant.  To the contrary, he expressly testified and noted in his summary judgment motion, that the information was used for purposes of deciding to do a "knock and talk".  (West dep. 14:1-20.)  "Knock and talk" is a recognized exception to the warrant requirement that allows officers to walk up and knock on the door of "any man's castle", with the intent of asking him questions just like any other citizen may do.  U.S. v. Taylor, 458 F.3d 1201, 1204 (11th Cir. 2006).  An

11

officer does not need probable cause or information from a reliable source to do a knock and talk. U.S. v. Jones, 239 F.3d 716, 720 (5th Cir. 2001) ("Federal courts have recognized the 'knock and talk' strategy as a reasonable investigative tool when officers seek to gain an occupant's consent to search or when officers reasonably suspect criminal activity.") (citing U.S. v. Tobin, 923 F.2d 1506, 1511 (11th Cir. 1991) (en banc)). Consequently, the reliability of Lt. West's source is irrelevant.

> **4.      Despite forensic tests and West's testimony to the contrary, Defendant West erroneously states that a baggie with residue was subsequently found by Defendants.  (West Mem. Supp. Summ. J. 26.)  West testified that the lab tests prove there were neither drugs nor residue found in the baggie.  (West Dep. 58:2-7.)**

Lt. West's statement is neither "erroneous" nor a "misrepresentation".  The words used were chosen carefully.  Lt. West did *not* say the baggy contained "***drug*** residue", as the Plaintiff implies.  (Doc. 32 at p. 26.)

> **5.      Defendant West improperly states that Marshall admitted to fleeing from Defendants.  (West Mem. Supp. Summ. J. 32).  Marshall has not admitted to fleeing from Defendants; rather, he has admitted to not pulling over at the demand of two unknown and unidentified persons.**

The Plaintiff's distinction here would be laughable were the situation not so serious.  It is beyond dispute that the Defendants were the two "unknown and unidentified persons", so that portion of the Plaintiff's distinction is mere semantics.[3]  Also semantical is the distinction the Plaintiff tries to make between "fleeing" and "not pulling over".  In the context of an automobile chase, the two are synonymous.

---

[3] In addition, the portion of Lt. West's brief cited by the Plaintiff does not state that the Plaintiff admitted fleeing from the Defendants, instead it specifically refers to the Plaintiff's "admitted flight", without referencing the Defendants at all.  (Doc. 32 at p. 32.)

**6.    Defendant West states that West "conceded" there was a high speed chase when clearly this point is not his to concede. (West Mem. Supp. Summ. J. 32.)  However, Defendant avoids mentioning that West testified that Marshall's 1973 Nova could not run very fast. (West Dep. 21:22-23.)**

Lt. West actually testified that the Plaintiff's car "doesn't run that fast". (West dep. 21:22-23.)  Later in his deposition, Plaintiff's counsel specifically asked Lt. West if he had a sense that he was in a high speed chase and Lt. West responded in the affirmative. Id. at 48:20-22.  In fact, Plaintiff's counsel specified that he wanted to "clarify" Lt. West's testimony regarding the speed of the vehicles. Id. at 48:11-21.  It is therefore difficult to see either how this statement is a "misrepresentation" or the point the Plaintiff is attempting to make in highlighting it for the Court.

## II.    REPLY TO THE PLAINTIFF'S STATEMENT OF FACTS.

### A.    The Plaintiff Has No Personal Knowledge Regarding the Initial Activation of the Defendant's Portable Blue Light.

Without any evidence, the Plaintiff claims the Defendants did not activate their blue light until after the PIT.  (Doc. 38 at p. 3 citing Marshall dep. 49:1-9.)  The cited passage does not support the Plaintiff's claim as it refers to the period of time after the Defendants had already pulled up alongside of the Plaintiff's car and dropped back.  (Marshall dep. 48:8-49:9.)  The Plaintiff has no personal knowledge of what the Defendants did from the time they initially slammed on the brakes until they came up alongside his car on County Road 7.

Q.    Other than slamming on the brakes and veering off the road, did they do anything else unusual?

A.    That's all I know is right then.

Q.    You say right then.  Did they do anything else after that?

13

A.    Yeah.  Next thing I know is they were upside my car.

Q.    So from the time – Let me make sure I got your testimony right.  From the
      time you saw them slam on brakes and veer off the road until they were
      next to you, you didn't see them.  Is that what you're telling me?

A.    Yes, sir.

(Marshall dep. 43:5-19.)  The Plaintiff did not see what the Defendants were doing, and cannot

tell this Court that the Defendants did not activate their portable blue light.  Pace v. Capobianco,

283 F.3d 1275, 1280-81 (11th Cir. 2002) (rejecting affidavit testimony that was not based upon

personal knowledge and holding that such testimony could not establish a genuine issue of

material fact on summary judgment).  Consequently, all that remains is the Defendants'

testimony that they activated their light at the beginning of the pursuit.  (West dep. 19:20-20:10;

Hutson dep. 17:22-18:16.)

Moreover, the Plaintiff testified that at other points during the pursuit, he never did more

than "glance" at the Defendants' and/or their car.  (Marshall dep. 43:5-19 (initial encounter),

44:3-46:11("brief glance" the first time the Defendants' car pulled alongside), 48:21-49:14

(another "quick glance" when the Defendants pulled back behind the Plaintiff up to Highway

21), 54:6-11 (another "glance" when the Defendants pulled up alongside the Plaintiff on

Highway 21), 59:23-60:14 (did not see the Defendants at all between the second time they fell

behind the Plaintiff until the ramming began – the Plaintiff admitted he did not know what the

Defendants were doing), 66:8-14 (another "glance" after the first ram, but could not see what the

Defendants were doing).)  By his own testimony, the Plaintiff does not have the requisite

personal knowledge to testify that the Defendants did not activate their blue light.  He is certainly

entitled to an inference that he did not see it or, at best that it was simply not working.  He is not,

14

however, entitled to an inference that the Defendants did not take the actions necessary to activate the light.

**B.       Neither the Plaintiff Nor His Passenger Were Wearing Their Seatbelts.**

The Plaintiff initially asserts that it was "unclear" whether he and his passenger were wearing their seatbelts.  (Doc. 38 at p. 3 n. 3.)  He goes on to state that he does not recall wearing his seatbelt, but his passenger recalls that both of them were wearing their seatbelts.  Id. at n. 4 citing Carmichael dep. 27:18-28:5.)  The record is quite clear.  By the Plaintiff's own admission, neither he nor his passenger were wearing their seatbelts.  The Plaintiff has specifically admitted in response to a request for production that he was not wearing his seatbelt.  (RFA at ¶ 6.)  The Plaintiff testified in his deposition that neither he nor his passenger were wearing their seatbelts that day.  (Marshall dep. 28:22-29:2.)

The Plaintiff's citation to Mr. Carmichael's contrary testimony does not, even on summary judgment, entitle the Plaintiff to adopt Mr. Carmichael's version of the facts.  In short, the Plaintiff is not entitled to have this Court believe that he lied in his deposition.  The Plaintiff is entitled to have the evidence construed to his benefit.  Greason v Kemp, 891 F.2d 829, 831 (11th Cir. 1990).  However, the Eleventh Circuit has held that this standard does not mean the Plaintiff's testimony can be discounted if it hurts him on summary judgment:

> As we said in Draper v. Reynolds, 369 F.3d 1270, 1272 (11th Cir.2004), and Rowe v. Ft. Lauderdale, 279 F.3d 1271, 1279 n.9 (11th Cir. 2002), we accept the nonmovant's version of the events when reviewing a decision on summary judgment. ***When the nonmovant has testified to events, we do not (as urged by Plaintiffs' counsel) pick and choose bits from other witnesses' essentially incompatible accounts (in effect, declining to credit some of the nonmovant's own testimony) and then string together those portions of the record to form the story that we deem most helpful to the nonmovant***. Instead, when conflicts arise between the facts evidenced by the parties, we credit the nonmoving party's version. ***Our duty to read the record in the nonmovant's favor stops short of not crediting the nonmovant's testimony in whole or part: the courts owe a***

15

> *nonmovant no duty to disbelieve his sworn testimony which he chooses to submit for use in the case to be decided.*

Evans v. Stephens, 407 F.3d 1272, 1278 (11th Cir. 2005) (footnote omitted, emphasis added). The Plaintiff testified that neither he nor Mr. Carmichael wore their seatbelts, therefore neither the Plaintiff nor Mr. Carmichael were wearing their seatbelts.

### C.     The Plaintiff's Labeling the Seatbelt Violation as a "Pretext" is Irrelevant.

The Plaintiff asserts that the seatbelt violation observed by Lt. West was a pretext for questioning the Plaintiff about drugs.  (Doc. 38 at p. 15.)  The Plaintiff points to Lt. West's testimony where he admitted this fact.  Id. at n. 12 citing West dep. 56:17-57:2.  However, the United States Supreme Court has held that whatever emotional value the Plaintiff may believe the word "pretext" has, it simply has no constitutional significance.  Whren v. U.S., 517 U.S. 806, 813 (1996) (unanimously holding ""[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.")

### ARGUMENT

As noted previously, the Plaintiff's legal argument in his brief appears to be solely oriented towards the excessive force claim.  The Plaintiff likewise has not taken issue with Lt. West's assertion that he acted within his discretionary authority for purposes of qualified immunity.  (See generally Doc. 38.)  It therefore appears that the Plaintiff has abandoned all of his claims except those for excessive force and has conceded that Lt. West was acting within his discretionary authority.  Accordingly, the remainder of this brief will address the Plaintiff's failure to meet his two burdens under the qualified immunity analysis.

I.    **THE PLAINTIFF HAS FAILED TO MEET HIS BURDEN OF SHOWING THAT LT. WEST USED EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AMENDMENT.**

The Plaintiff cast his excessive force argument as a comparison between his "reasonable" actions, the purportedly "unreasonable" actions of the Defendants. (Doc. 38 at pp. 12-21.) The problem for the Plaintiff is that half of his argument is irrelevant. For purposes of determining whether Lt. West used excessive force, the analysis turns not on whether the Plaintiff's actions were reasonable, but whether Lt. West's actions were reasonable. Graham v. Connor, 490 U.S. 386, 395 (1989).[4] The parties appear to be in agreement that there are four discrete uses of force which must be analyzed: (1) the PIT maneuver; (2) the warning shot; (3) the foot sweep; and (4) the "full nelson choke".

The record does not support a finding that any of these uses of force were constitutionally excessive. First, all of the Graham factors weigh in Lt. West's favor. Second, none of the arguments contained in the Plaintiff's Opposition support a finding of excessive force. Third, the lack of any injury whatsoever to the Plaintiff entitles Lt. West to judgment in his favor as a matter of law.

A.    **The Force Used by Lt. West Was Reasonable Under Graham and Its Progeny.**

As noted in Lt. West's principle brief, the United States Supreme Court has established a non-exhaustive list of factors for courts to use in analyzing excessive force claims. The Supreme Court identified three common factors in Graham: (1) the severity of the crime involved; (2) the threat posed by the subject to the officers and others; and (3) whether the subject is resisting or fleeing. 490 U.S. at 394. The extent of any injury inflicted is another factor commonly

---

[4] By this argument, Lt. West is by no means conceding the Plaintiff's actions were reasonable. In the unlikely event this matter goes to trial, Lt. West reserves the right to challenge the reasonableness of the Plaintiff's actions.

considered in the Eleventh Circuit.  Leslie v. Ingram, 786 F.2d 1533, 1536 (11th Cir. 1986).  The

force used by Lt. West was objectively reasonable when viewed through the lens of Graham and

Leslie.

<strong>1.    The Crime the Plaintiff Was Suspected of Committing Was Severe.</strong>

As an initial matter, the aim of the Plaintiff's attack on the "misrepresentations" in Lt.

West's summary judgment materials seems to be a desperate attempt to avoid the obvious

conclusion that the Plaintiff was suspected of committing a serious crime at the time of his

encounter with Lt. West.  The Plaintiff wants to cast this as no more than a mere seatbelt

violation.  (Doc. 38 at p. 15.)  However, the aspersions of the Plaintiff notwithstanding, the

uncontroverted facts in the evidence show that:

1.    The DTF had received information that the Plaintiff was selling drugs.

2.    The Plaintiff fled (or, in the Plaintiff's parlance, "failed to pull over") when the Agents attempted to stop them.

3.    During the chase, a baggy with a white powdery substance struck the Agents' windshield.

4.    A baggy with residue was subsequently found near the location where the baggy hit the Agents' windshield.

5.    In Lt. West's experience, drug sellers and users carried drugs in baggies like the one that was recovered.

The Plaintiff has, in essence, admitted 1 and 2 (although he would word the factual

statements differently).   (Doc. 38 at pp. 11-12.)   However, the arguments in his brief

notwithstanding, the Plaintiff has not cited the Court to any evidence in the record that refutes 3-

5.  (See generally Doc. 38.) These facts exist irrespective of whether the Court credits the

Plaintiff's testimony that he did not throw the baggy out of the window.  Accordingly, for

purposes of analyzing each use of force, the facts known to Lt. West include those that would

18

lead a reasonable officer to suspect that he was dealing with a felony drug suspect.  Ala. Code §§ 13A-12-212, 13A-12-231.

Additionally, no matter how fine a hair the Plaintiff seeks to split, his failure to "pull over", when viewed from the perspective of what the Defendants knew at the time, constituted "Fleeing or Attempting to Elude a Police Officer."  Ala. Code § 32-5A-192.  Section 192 provides:

> Any driver of a motor vehicle who willfully fails or refuses *to bring his vehicle to a stop*, or who otherwise flees or attempts to elude a pursuing police vehicle, when given a *visual or audible signal* to bring the vehicle to a stop, shall be guilty of a misdemeanor. *The signal given by the police officer may be by hand, voice, emergency light or siren*.

(emphasis added).  Although a misdemeanor, the crime of Fleeing or Attempting to Elude a Police Officer is punishable by up to six months in jail.  Id.

As a final note on the crimes involved, the Plaintiff has made an incorrect statement of law in his brief.  Specifically, he asserts that a seatbelt violation is "a non-arrest matter for which only a traffic ticket could be issued."  (Doc. 38 at p. 15.)  While this may be true as a matter of state law (assuming the Plaintiff signed his ticket), it is *not* true as a matter of federal law.  Atwater v. City of Lago Vista, 532 U.S. 318, 323 (2001) (holding that it was not a violation of the Fourth Amendment to arrest motorist for a seat belt violation).

## 2.    The Threat Posed by the Plaintiff Was Severe.

There can be little doubt that the Plaintiff presented a threat at varying levels throughout his encounter with the Defendants.  The Plaintiff has attempted to minimize the threat he posed.  In fact, he incredibly claims that he "did not pose a threat to anyone's safety".  (Doc. 38 at p. 15.)  At various times during his encounter with the Defendants, the Plaintiff posed a threat to the officers, the general public, Mr. Carmichael, and himself.

19

There is no dispute that the Plaintiff failed to pull over for the Defendants at any time. Regardless of whether he saw a blue light or was able to identify the Defendants as law enforcement officers, he was still driving a two-ton vehicle at speeds that, by his own admission, reached somewhere around 55 miles per hour. (Marshall dep. 53:6-7) Practically, the Plaintiff's flight was a danger to himself, his passenger, and anyone that he happened to encounter on the road. As a matter of law, taking into account the evidence of a possible drug felony, the Plaintiff was an obvious risk to engage in sudden violence against the officers. Michigan v. Summers, 452 U.S. 692, 703 (1981).

The risk posed by the Plaintiff was increased exponentially by the Plaintiff's behavior after the PIT. The Plaintiff has *admitted* that when he exited his car after the PIT, he *knew* the Defendants were law enforcement officers. Nonetheless, he refused to obey Lt. West's commands even with guns pointed at him. This level of near suicidal refusal under the circumstances increased the danger to both his passenger and himself. Having had to PIT the Plaintiff to stop him, and now confronting a belligerent and uncooperative narcotics suspect, a reasonable officer would have perceived the Plaintiff to be a grave threat.

After the Plaintiff was taken down, Lt. West saw the gun. Now, in addition to a belligerent and uncooperative narcotics suspect, Lt. West had to deal with the possibility that the Plaintiff was armed. Even with handcuffs on, the Plaintiff could have attempted to obtain another weapon that Lt. West had not yet discovered. Given the Plaintiff's continued belligerence and uncooperative attitude, a reasonable officer could have continued viewing the Plaintiff as a threat.

### 3.     The Plaintiff Fled and Resisted.

This case involved an automobile pursuit.  There is simply no way for the Plaintiff to deny the fact that from the Defendants' perspective – the only perspective that is relevant for purposes of <u>Graham</u> – they were pursuing a fleeing suspect.  The Plaintiff also refused verbal commands from Lt. West and refused to get in his vehicle when ordered to do so.  The evidence, therefore, indisputably shows that the Plaintiff fled and resisted.

### B.     The Plaintiff's Arguments Fails to Show Lt. West Used Excessive Force.

In his Opposition, the Plaintiff has proffered four arguments as to why the force used by Lt. West was excessive.  First, he claims that the Defendants did not do anything to identify themselves as police officers.  (Doc. 38 at p. 15.)  Second, the Plaintiff argues that firing a warning shot is deadly force.  Id. at pp. 16-17.  Third, the Plaintiff asserts that the PIT was inappropriate for a mere seat belt violation.  Finally, using a wholly inapplicable case, the Plaintiff argues that the force used by Lt. West to get the Plaintiff into the back of the car was excessive.  None of these arguments save the Plaintiff's excessive force claims.

### 1.     The Agents Identified Themselves.

The Plaintiff's initial argument is that the Defendants did not "adequately identify themselves" as police officers.  (Doc. 38 at p. 15.)  As noted in the statement of facts, the Defendants did activate their blue light, and the Plaintiff does not have the requisite personal knowledge to claim otherwise.  However, there is another crucial fact left out of the Plaintiff's analysis – both Lt. West and Agent Hutson tried to show the Plaintiff their badges during the pursuit.  (West dep. 21:21-22:9 (describing badge as "a pretty good size badge"), 23:19-24:15; Hutson dep. 19:1-9, 19:22-20:13.)  The Plaintiff has never testified that the Defendants did not

show him their badges during the pursuit.  (<u>See generally</u> Marshall dep.)  This is no doubt due to his only casting "glances" at the Defendants.  (Marshall dep. at 43:11-46:11 (first attempt to get the Plaintiff to pull over), 52:23-56:23 (second attempt).)    Consequently, the undisputed evidence in the record shows that the Agents showed the Plaintiff their badges but, for whatever reason, the Plaintiff did not see them.

The Eleventh Circuit has noted that officers can identify themselves by showing their badges.  <u>U.S. v. Blake</u>, 888 F.2d 795, 797 (11th Cir. 1989) ("The officers, dressed in plain-clothes, identified themselves as deputy sheriffs to Blake and Eason by showing their badges").  Therefore, either alone or with the additional evidence of the portable blue light, the Agents more than adequately to steps to identify themselves as police officers.

## 2.    Warning Shots Do Not Constitute Deadly Force.

Second, the Plaintiff attempts to show that firing a warning shot is deadly force by citing inapplicable law and ineffectively distinguishing the law cited by Lt. West in his principle brief.  The Plaintiff begins his attack by citing Tennessee v. Garner, 471 U.S. 1, 11-12 (1985) for the proposition that Lt. West's firing a warning shot was excessive force.  The Plaintiff's argument fails ab initio because it assumes, arguendo, that a warning shot is deadly force.  (Doc. 38 at pp. 16-17.)  This argument puts the proverbial cart before the horse.  Furthermore, <u>Garner</u> is no longer the standard for when deadly force may be used – Graham is the standard.  <u>Scott v. Harris</u>, 127 S.Ct. 1769, 1777 (2007).  In <u>Scott</u>, the Supreme Court relegated <u>Garner</u> to its facts stating:

> <u>Garner</u> did not establish a magical on/off switch that triggers rigid preconditions whenever an officer's actions constitute "deadly force." <u>Garner</u> was simply an application of the Fourth Amendment's "reasonableness" test, <u>Graham</u>, supra, at 388, 109 S.Ct. 1865, to the use of a particular type of force in a particular situation.

127 S.Ct. at 1777.  Accordingly, the Plaintiff's <u>Garner</u> argument fails because (1) it presupposes a warning shot is deadly force; and (2) <u>Garner</u> is no longer the standard under which deadly force applications are analyzed.

The Plaintiff next claims that "at least one court has acknowledged that firing a warning shot *could possibly* constitute a use of deadly force".  (Doc. 38 at p. 17 citing <u>Madrid v. Gomez</u>, 889 F.Supp. 1146, 1184 (N.D. Cal. 1995).)  Leaving for a later portion of this brief the question of whether a California District Court case can clearly establish the law in the Eleventh Circuit, <u>Madrid</u> does not say what the Plaintiff wants the Court to infer that it says.  <u>Madrid</u> does *not* say that warning shots could be deadly force *under the Fourth Amendment*, but rather as the term was defined by the prison regulations at issue in the case.  <u>Id.</u> ("the intentional firing of a gun, even as a warning shot, appears to constitute a use of "deadly force," <u>see</u> DOM § 55050.3").  The reference "DOM" is to the "Department Operations Manual", and not the Fourth Amendment. <u>Id.</u>, 889 F.Supp. at 1283.  Consequently, <u>Madrid</u> is of no utility whatsoever in determining whether a warning shot is deadly force for purposes of the Fourth Amendment.

The Plaintiff's third line of attack is a futile attempt to distinguish the one case that has passed on whether the firing of warning shots can be violative of constitutional rights.  (Doc. 38 at p. 17 citing <u>Otey v. Marshall</u>, 121 F.3d 1150, 1156 (8th Cir. 1997).)  The Plaintiff asserts that Lt. West made up the quoted statement in <u>Otey</u> "out of whole cloth".  <u>Id.</u>  In full relevant part, the Eighth Circuit stated:

> In this case, the appellee has pointed to two pieces of evidence that Chief Smith had received notice that Officer Marshall was prone to using excessive force. Officer Marshall had once fired warning shots to quell a disturbance at a dance hall, an action that directly violated Elaine Police Department procedure. In addition, Rosie Cooper alleged in an affidavit that her two children had complained of Officer Marshall using excessive force and that Chief Smith knew

23

of these complaints. The appellee alleges that in neither of these cases did Chief Smith discipline or counsel Officer Marshall.

Assuming that these allegations are true, we conclude that they fail to state a violation by Chief Smith of Otey's constitutional rights. ***Officer Marshall's use of warning shots did not put Chief Smith on notice that Officer Marshal engaged in a pattern of unconstitutional acts. While prohibited by Elaine Police Department policy, Officer Marshall's use of warning shots simply did not violate anyone's constitutional rights***. Although it may be an unwise practice to fire gunshots into the air to quell an unruly crowd, there is no evidence that Officer Marshall seized anyone-unconstitutionally or otherwise-when he fired warning shots at the dance hall.

121 F.3d 1155-56 (emphasis added).

While <u>Otey</u> is not in the same type of case as the one at bar, it nonetheless necessarily reached the issue of whether warning shots violate the Constitution. In order to prevail on the question of whether the police chief had notice that his officer needed training, the plaintiff had to identify prior unconstitutional acts. The plaintiff tried to do so by, *inter alia*, citing the quoted example of the officer firing warning shots. A necessary part of the <u>Otey</u> Court's holding that the chief did not have notice of prior unconstitutional acts is the finding that firing warning shots did not violate the Constitution. <u>Otey</u> then is on point and is not distinguishable in any important way from the case at bar.

### 3.    The PIT Maneuver Was Reasonable Under the Circumstances.

The Plaintiff's argument with respect to the PIT maneuver is based entirely upon <u>Scott</u>. (Doc. 38 at p. 18.) Like the plaintiff in <u>Scott</u> attempted to do, the Plaintiff seeks to minimize his egregious conduct to nothing more than a mere minor traffic violation. <u>Id.</u> As in <u>Scott</u>, neither the facts nor the law support the Plaintiff's argument.

<u>Scott</u> does not stand for the proposition that a PIT maneuver is acceptable only under the conditions it describes. To the contrary, the Supreme Court took great pains to point out that "in

24

the end we must still slosh our way through the factbound morass of 'reasonableness.'" 127 S.Ct. at 1778. Under the facts of the case, the Supreme Court had little trouble, however, discounting the plaintiff's claims of a peaceable chase through the countryside and finding the defendant's actions reasonable. Id. at 1778-79.

Similarly, the uncontroverted evidence in the record shows that the Plaintiff was not simply engaged in a casual drive. Viewed from the perspective of the Agents, the Plaintiff was behaving like the drug dealer their information indicated he was. He refused to pull over despite their display of a blue light and badges. He turned away from a built-up area and took them out into the rural area of Lowndes County when he got on Highway 21. A baggy containing a white powdery substance exploded on their windshield during the chase. Lt. West's extensive experience had taught him that drugs were often kept in baggies like the one that struck his windshield. Under these facts, *any* reasonable officer would have concluded that the Plaintiff was fleeing and attempting to destroy evidence. Summers, 452 U.S. at 703.

It should also not escape the Court's notice that Lt. West tried to avoid having to PIT the Plaintiff. It is undisputed that Lt. West pulled up alongside the Plaintiff's car *twice* in an attempt to allow Officer Hutson to identify them as police officers and get the Plaintiff to stop. He also tried bumping the Plaintiff's car twice. Only when all of this proved futile did he initiate the PIT maneuver.

Slogging through the morass of reasonableness, and examining the uncontroverted, admitted, and undisputed facts in the record leads to only one conclusion – the PIT maneuver executed by Lt. West was reasonable under the circumstances.

25

### 4.     The Alleged "Choke Hold" Was Reasonable.

The Plaintiff's attack on the alleged "choking" of the Plaintiff is based exclusively on Vinyard v. Wilson, 311 F.3d 1340 (11th Cir. 2002). (Doc. 38 at p. 18.) However, the facts of Vinyard are clearly distinguishable. Vinyard involved minor crimes – disorderly conduct and obstruction. 311 F.3d at 1347. The instant Plaintiff was reasonably suspected of committing a narcotics felony. The plaintiff in Vinyard was already *secured in the back of the patrol car* when the defendant officer assaulted her. Id. at 1343-44. Mr. Marshall was actively resisting being placed into the back of the car. (Marshall dep. 101:15-102:21.) Ms. Vinyard never resisted arrest or fled. 311 F.3d at 1347-48. Mr. Marshall both fled and resisted. By his own admission he was resisting immediately prior to being placed in the back of his car. (Marshall dep. 101:15-102:21 (stating "I wouldn't get in the car", "I wouldn't obey what he was doing").) Consequently, as Vinyard is clearly distinguishable, the Plaintiff has failed to establish the alleged "choke hold" violated his federally protected rights.

### C.     The Force Used by Lt. West Was *De Minimis*.

The *de minimis* nature of the Plaintiff's alleged injuries also mandates judgment in Lt. West's favor as a matter of law. Nolin v. Isbell, 207 F.3d 1253, 1257 (11th Cir. 2000) (holding that the application of *de minimis* force will not support a claim for excessive force in violation of the Fourth Amendment.) In Nolin, the defendant officer grabbed the plaintiff from behind by the shoulder and wrist, threw him against a van three or four feet away, kneed him in the back, pushed his head into the side of the van, searched his groin area in an uncomfortable manner, and placed the plaintiff in handcuffs. 207 F.3d at 1255. The plaintiff allegedly suffered bruising to his forehead, chest, and wrists. Id.

Conspicuously absent from the Plaintiff's statement of facts is any reference whatsoever to any injury he suffered. (Doc. 38 at pp. 1-7.) To be sure, he claims he was "dazed from hitting his head" during the PIT. Id. at p. 7. However, neither the Plaintiff's brief nor any evidence in the record even suggests that the Plaintiff was injured, received medical treatment, or suffered any adverse affect whatsoever from any of the various applications of force he received. Even the Plaintiff's claim of bumping his head is belied by the pictures taken immediately after the incident which clearly show no injury to the Plaintiff's head. (Marshall dep. Exs. 10, 11.)

The extent of any injury is, of course, a factor for the Court to take into account in making its reasonableness analysis under Graham. Leslie, 786 F.2d at 1536. However, in cases such as the case at bar where there is absolutely no injury whatsoever, judgment in the Defendants' favor is appropriate. Nolin, 207 F.3d at 1257.

## II. THE PLAINTIFF HAS FAILED TO PROVIDE THE COURT WITH CLEARLY ESTABLISHED LAW THAT PROVIDED LT. WEST WITH "FAIR WARNING" THAT HIS CONDUCT WAS UNLAWFUL.

The Plaintiff's Opposition fails to specifically address this prong of the qualified analysis. The Plaintiff has failed to provide the Court with any authority whatsoever regarding any claim other than his excessive force claim. The authority he has offered with respect to the excessive force claim, however, does not satisfy his qualified immunity burden. This is especially fatal to an excessive force claim where the fact intensive nature of the analysis makes it difficult if not impossible to show an officer's actions were unconstitutional with "obvious clarity". See, e.g., Scott, 127 S.Ct. at 1778.

This is perhaps no more clear than in the context of the warning shot Lt. West fired. While the Plaintiff takes issue with Lt. West's characterization of the Eighth Circuit's Otey decision, the Plaintiff proffers no case law from the United States Supreme Court, Eleventh

Circuit Court of Appeals, or the Alabama Supreme Court holding that warning shots are unconstitutional.  (See generally Doc. 38; see also Jenkins v. Talladega Bd. of Educ., 115 F.3d 821, 827 (11th Cir. 1997) (en banc) (holding "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose."))  Consequently, even if this Court were to be the first one in the nation to explicitly hold that firing a warning shot can be violative of the Fourth Amendment, Lt. West would nonetheless be entitled to qualified immunity.  Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003)

The Plaintiff's other excessive force claims suffer the same fate.  It was by no means clear on the day of the underlying incident that a PIT under the conditions perceived by Lt. West was unconstitutional.  The Plaintiff has failed to provide the Court with any case law that putting a belligerent and uncooperative narcotics suspect on the ground with a foot sweep following a vehicle pursuit was excessive.  Finally, as noted previously, the only case law provided by the Plaintiff regarding the "choking" claim is so factually distinguishable that it could not have provided Lt. West with any guidance.

Accordingly, as the Plaintiff has failed to meet his second burden under the qualified immunity analysis, Lt. West is entitled to judgment in his favor as a matter of law.

## CONCLUSION

Based on the foregoing and the materials previously submitted, Defendant Chris West requests that this Honorable Court enter an Order granting him judgment in his favor as a matter of law.

Respectfully submitted this the 19th day of March, 2008.

s/Gary L. Willford, Jr.
DARYL L. MASTERS Bar No.  MAS018
GARY L. WILLFORD, JR. – Bar No. WIL198
Attorneys for Defendant Chris West
WEBB & ELEY, P.C.
7475 Halcyon Pointe Drive (36117)
P.O. Box 240909
Montgomery, Alabama  36124
Telephone:  (334) 262-1850
Fax:  (334) 262-1889
E-mail:  gwillford@webbeley.com

## CERTIFICATE OF SERVICE

I hereby certify that on **March 19, 2008**, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:  **Jay Lewis, Esq., Rick Howard, Esq.**

s/Gary L. Willford, Jr.
OF COUNSEL

29